# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SUSAN WOERTH MILLER, FAURUM SANKARI, ANGELA HEIMGARTNER, MICHAEL WACHALA, MARY BETH PREUSS, ERIC TERHAERDT, PATRICIA WALSH, AND SHEILA EARLY, individually and as representatives of classes of participants and beneficiaries on behalf of the Astellas US Retirement and Savings Plan, | |
| Plaintiffs, | Civil Action No. 1:20-cv-03882 |
| v. | Honorable Ronald A. Guzman |
| ASTELLAS US LLC, THE BOARD OF DIRECTORS OF ASTELLAS US LLC, THE ASTELLAS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE, AON HEWITT INVESTMENT CONSULTING, INC. (NKA AON INVESTMENTS USA, INC.), AND JOHN DOES 1–14, | CLASS ACTION |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF AON HEWITT INVESTMENT CONSULTING, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Brian D. Boyle
Shannon M. Barrett
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel: (202) 383-5300

John R. Landis
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Tel: (312) 832-4539

*Attorneys for Aon Hewitt Investment Consulting, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................... 3

LEGAL STANDARD ................................................................................................. 5

ARGUMENT .............................................................................................................. 5

    I.      PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR
           IMPRUDENCE IN COUNT I. ................................................................. 5

          A.    Plaintiffs' Comparisons of the Plan's Aon Trusts to Funds Offering
               Less Diversified Strategies Cannot Support an Inference of
               Imprudence. ............................................................................... 5

          B.    Plaintiffs' Comparisons to Vanguard Index Funds Are Likewise
               Inapt. ....................................................................................... 11

          C.    Plaintiffs' Allegation That Certain Aon Trusts Underperformed
               Their Benchmarks Is Contradicted by Materials Incorporated in the
               Complaint and Similarly Cannot Carry Their Claim of
               Imprudence. ............................................................................. 14

          D.    Far From Lacking a Sufficient Performance History, the Plan's
               Aon Trusts Were Managed by Experienced, Best-of-Breed Asset
               Managers. ................................................................................. 16

    II.     PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT AHIC ADOPTED
           THE AON TRUSTS FOR DISLOYAL REASONS. .......................................... 18

    III.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A PROHIBITED
           TRANSACTION IN COUNT III. ....................................................................... 21

-i-

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Abcarian v. McDonald*,
617 F.3d 931 (7th Cir. 2010) .................................................. 16

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
464 F.3d 338 (2d Cir. 2006) .................................................. 14

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
446 F.3d 728 (7th Cir. 2006) .................................................. 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................. 5, 21

*Bekker v. Neuberger Berman Grp. LLC*,
2018 WL 4636841 (S.D.N.Y. Sep. 27, 2018).................................................. 14

*Boeckman v. A.G. Edwards, Inc.*,
461 F. Supp. 2d 801 (S.D. Ill. 2006).................................................. 6

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009).................................................. 14

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018).................................................. 20

*Burke v. 401 N. Wabash Venture*,
714 F.3d 501 (7th Cir. 2013) .................................................. 19

*Cervantes v. Invesco Holding Co. (US), Inc.*,
2019 WL 5067202 (N.D. Ga. Sept. 25, 2019).................................................. 16

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) .................................................. 22

*Davis v. Washington Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) .................................................. 8, 11

*Divane v. Northwestern Univ.*,
953 F.3d 980 (7th Cir. 2020), *petition for cert. filed*, (June 19, 2020) .................................................. 5, 11, 15

*Donovan v. Walton*,
609 F. Supp. 1221 (S.D. Fla. 1985).................................................. 20

*Dorman v. Charles Schwab Corp.*,
2019 WL 580785 (N.D. Cal. Feb. 8, 2019) .................................................. 17

**TABLE OF AUTHORITIES**

*(continued)*

**Pages**

*Dupree v. Prudential Ins. Co. of Am.*,
2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ............................................................. 13, 14, 19

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ........................................................... 16

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ................................................................................................... 5

*Fish v. Greatbanc Trust Co.*,
2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ............................................................. 22

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) ................................................................................................... 22

*Harris v. D.A. McCosker Const. Co.*,
2012 WL 5411970 (N.D. Cal. Nov. 6, 2012) ............................................................ 23

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ............................................................................... passim

*In re Disney ERISA Litig.*,
2017 WL 1505129 (C.D. Cal. Apr. 21, 2017) .......................................................... 7

*In re Honeywell Int'l ERISA Litig.*,
2004 WL 3245931 (D.N.J. Sept. 14, 2004) .............................................................. 23

*Jenkins v. Yager*,
444 F.3d 916 (7th Cir. 2006) ..................................................................................... 17

*Kalish v. Franklin Advisers, Inc.*,
742 F. Supp. 1222 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991) ................ 14, 15

*Kenny v. Pac. Inv. Mgmt. Co. LLC*,
2015 WL 10635505 (W.D. Wash. Aug. 26, 2015) .................................................... 7

*Kling v. Fidelity Mgmt. Trust Co.*,
270 F. Supp. 2d 121 (D. Mass. 2003) ....................................................................... 4

*Leber v. Citigroup 401k Plan Inv. Comm.*,
129 F. Supp. 3d 4 (S.D.N.Y. 2015) .......................................................................... 19

*Leber v. Citigroup Inc.*,
2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ............................................................ 23

*Loomis v. Exelon Corp.*,
658 F.3d 667 (7th Cir. 2001) ..................................................................................... 3, 15

# TABLE OF AUTHORITIES
*(continued)*

**Pages**

*Martin v. CareerBuilder, LLC*,
  2020 WL 3578022 (N.D. Ill. July 1, 2020) .......................................................................... 6, 14

*Mehling v. N.Y. Life Ins. Co.*,
  163 F. Supp. 2d 502 (E.D. Pa. 2001) .................................... 23

*Meiners v. Wells Fargo*,
  2017 WL 2303968 (D. Minn. 2017) .................................... 8

*Meiners v. Wells Fargo*,
  898 F.3d 820 (8th Cir. 2018) .................................... 6, 7, 11

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .................................... 14, 16

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) .................................... 22

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) .................................... 5

*Pledger v. Reliance Trust. Co.*,
  1:15-cv-04444-MHC, Am. Compl., Dkt. 37 (N.D. Ga Apr. 15, 2016) ............................ 18, 19

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) .................................... 7, 18

*Ramos v. Banner Health*,
  2020 WL 2553705 (D. Colo. May 20, 2020) .................................... 13

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011) .................................... 23

*Reso Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*,
  2011 WL 5826034 (E.D. Wis. Nov. 18, 2011) .................................... 14

*Rhoades v. Walsh*,
  2009 WL 2600094 (D. Me. Aug. 19, 2009) .................................... 18

*Schulist v. Blue Cross of Iowa & Blue Shield of Iowa*,
  717 F.2d 1127 (7th Cir. 1983) .................................... 22

*Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*,
  27 F. Supp. 3d 371 (S.D.N.Y. 2014) .................................... 23

*Spano v. The Boeing Co.*,
  Second Am. Compl. ¶ 134, 2008 WL 3925047 (S.D. Ill Aug. 25, 2008) ................................ 9

**TABLE OF AUTHORITIES**

*(continued)*

**Pages**

*Terraza v. Safeway Inc.*,
  241 F. Supp. 3d 1057 (N.D. Cal. 2017) ................................................................. 18

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2013) .............................................................................. 15

*Tibble v. Edison Int'l*,
  843 F.3d 1187 (9th Cir. 2016) .............................................................................. 11

*Turner v. Davis Select Advisers LP*,
  2013 WL 11311737 (D. Ariz. Mar. 19, 2013) ....................................................... 7

*Vander Luitgaren v. Sun Life Assurance Co. of Can.*,
  765 F.3d 59 (1st Cir. 2014) ................................................................................... 20

*White v. Chevron Corp.*,
  16-cv-793, Compl., Dkt. No. 1 (N.D. Ca. Feb. 17, 2016) .................................... 18

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ...................................................... 17

*White v. Marshall & Ilsley Corp.*,
  714 F.3d 980 (7th Cir. 2013) .................................................................................. 4

*Wilcox v. Georgetown Univ.*,
  2019 WL 132281 (D.D.C. Jan. 8, 2019) ................................................................. 7

*Wildman v. Am. Century Servs., LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019) ................................................................. 19

*Wright v. Associated Ins. Cos.*,
  29 F.3d 1244 (7th Cir. 1994) .................................................................................. 4

*188 LLC v. Trinity Indus. Inc.*,
  300 F.3d 730 (7th Cir. 2002)………………………………………………………………..7

**Statutes**

29 U.S.C. § 1002(21)(A)........................................................................................ 22

29 U.S.C. § 1104(a)(1)(B) ....................................................................................... 5

29 U.S.C. § 1104(a)(1)(C) ........................................................................... 2, 8, 13

29 U.S.C. § 1106(a)................................................................................................ 22

29 U.S.C. § 1106(b)................................................................................................ 22

## TABLE OF AUTHORITIES
*(continued)*

**Pages**

29 U.S.C. § 1108(b)(8) ................................................................................................ 22


**Treatises**

Restatement (Third) of Trusts § 88 cmt a ..................................................................... 11

Restatement (Third) of Trusts § 90, cmt. b ................................................................... 11

## INTRODUCTION[1]

For over a decade, lawsuit after lawsuit (including actions by Plaintiffs' counsel here) has complained that large 401(k) plans have failed to use their buying power to arrange low-cost institutional products for their participants and instead have offered participants the same mutual funds that are available to ordinary investors outside of 401(k) plans. Here, however, the Astellas US LLC ("Astellas") 401(k) plan ("Plan") took exactly that step: it delegated fiduciary responsibility for selecting investments to Aon Hewitt Investment Consulting ("AHIC"), which in turn consolidated eight of the Plan's already low-cost institutional investment vehicles into five low-cost collective investment trusts. As a result, the Plan now offers, among other things, four "asset-class-based" trusts (the Aon Large Cap Equity trust, the Aon Small & Mid Cap Equity trust, the Aon Non-U.S. Equity trust, and the Aon Core Plus Bond trust) and an objectives-based trust (the Aon Inflation Strategy trust) (collectively, the "Aon Trusts"). By making these changes, AHIC further reduced the already low investment costs for Plan participants—in some cases, cutting those costs by more than half.

Against this backdrop, Plaintiffs improbably contend that AHIC, and the Plan's sponsor, breached their fiduciary duties by securing this low-cost, streamlined institutional structure. But the Complaint is utterly devoid of the factual allegations necessary to sustain the lawsuit. To proceed against AHIC, Plaintiffs must allege facts that, if true, would be sufficient to prove that AHIC's decision-making process for selecting the Aon Trusts for the Plan was flawed. But Plaintiffs do not address that decision-making process at all and instead contend that the Court may infer a deficient process based on their rank conjecture that the Aon Trusts are so unsuitable for retirement investing that no prudent fiduciary could have opted for them. Under established

---

[1] Unless indicated otherwise, all emphasis is added and all internal citations and quotations are omitted.

1

ERISA jurisprudence, Plaintiffs have not come close to providing plausible support for any such inference. As the Complaint concedes, the Aon Trusts were diversified, multi-strategy funds that were offered through a low-cost institutional structure and whose portfolio sub-advisers consisted exclusively of experienced blue-chip investment managers unaffiliated with AHIC.

Plaintiffs allege that the Aon Trusts underperformed some of the Plan's prior investment options and certain cherry-picked Vanguard mutual funds, but those comparisons cannot carry Plaintiffs' claims. Plaintiffs erroneously compare three of the five challenged Aon Trusts to funds with different investment styles—mismatching the Aon Trusts whose assets are diversified across both "growth" and "value" equities with investment options concentrated in growth stocks. This apples-to-oranges comparison may create the illusion that the growth fund comparators are superior when one focuses, in hindsight, on recent periods when the markets favored growth stocks, but it ignores the vulnerabilities of growth funds when the markets shift in favor of value. Plaintiffs likewise compare the two remaining Aon Trusts to funds that invested in a much narrower set of assets. Plaintiffs' attempt to fault AHIC for selecting Aon Trusts with greater diversification than the funds they replaced (and the Vanguard alternatives hand-selected by Plaintiffs) finds no purchase in ERISA, which does not merely permit fiduciaries to favor diversification but affirmatively requires that fiduciaries "diversify[] the investments of the plan so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C).[2]

Plaintiffs' charge that the Aon Trusts are so expensive as to be inherently unsuitable for retirement investors is similarly unsupported by pleaded facts. Plaintiffs ignore that the Aon Trusts were significantly cheaper than the Plan's prior investment options that Plaintiffs tout.

---

[2] Plaintiffs also attempt to bolster their performance-based challenge by alleging that the Aon Trusts underperformed their own benchmarks, but they rely primarily on erroneous benchmarks. Nor do they point to the persistent, substantial underperformance necessary to suggest AHIC acted imprudently.

And the cost comparison to some of Vanguard's index funds is again apples to oranges. The Aon Trusts not only offer more diverse exposure to multiple strategies and managers within each asset class, they also deliver active management of the underlying portfolios, while Vanguard simply tracks an index. Plaintiffs' criticism is also pure pretense, as the Plan did offer five low-cost State Street index funds that were nearly identical to Vanguard's index funds. Plaintiffs' charge is thus the familiar, but legally groundless, critique that they were afforded a choice between actively-managed options and index funds. As the Seventh Circuit has explained, the fiduciary "left choice to the people who have the most interest in the outcome, and it cannot be faulted for doing this." *Loomis v. Exelon Corp.*, 658 F.3d 667, 673–74 (7th Cir. 2001).

Plaintiffs' breach of loyalty claim similarly cannot survive its incorporated documents. Plaintiffs assert that AHIC managed to increase its compensation by selecting the Aon Trusts, but the governing Plan documents on which Plaintiffs rely make clear that AHIC's sole compensation was its fee for serving as the delegated fiduciary and that it received no additional compensation from selecting the Aon Trusts. And Plaintiffs' claim that AHIC engaged in self-dealing prohibited transactions ignores that AHIC did not make the fiduciary decision to hire itself as delegated fiduciary, the only service for which it received compensation. While an AHIC banking affiliate receives a small fee for serving as trustee to the Aon Trusts, ERISA exempts plan investments in bank-administered trusts where, as the Complaint does not contest here, the governing plan documents allow it, and the compensation is no more than "reasonable."

## FACTUAL BACKGROUND

Astellas sponsors a 401(k) plan that allows employees to invest pre-tax contributions. Compl. ¶¶ 7–9. AHIC is a registered investment advisor that provides investment advisory services. *Id.* ¶ 25. Prior to August 26, 2016, AHIC provided investment consulting services to the Astellas Administrative Committee (the "Committee"), the named Plan fiduciary. *Id.* ¶¶ 22,

3

25, 41.  On August 31, 2016, Astellas entered into an Investment Management Agreement ("IMA") appointing AHIC as the delegated fiduciary for the Plan and later approved the Investment Policy Statement ("IPS") for the Plan's investment lineup.  *Id.* ¶¶ 22, 41–42; *see also* Ex. 1, IMA; Ex. 2, 2016 IPS[3] at 4.  Among other things, the IPS specifies that the Plan shall offer "asset class funds," "a series of diversified investment funds, each of which is designed to correspond to a particular asset class."  Ex. 2 at 5.

The IMA further recites that the Committee had reviewed the Offering Statement for the Aon Trusts, Ex. 1, IMA, Sch. A, at §2(c),[4] and agreed that AHIC could select Aon Trusts for the Plan.  Compl. ¶ 42.  The IMA also specifies that AHIC is entitled to its fee for its delegated fiduciary services— ███████████████████████████████████████ ███████████████████████████████████████ —regardless of which funds it selects.  Ex. 1, IMA, Sch. C.  Moreover, the IMA provides that if AHIC invests the Plan in the Aon Trusts, then "the fee payable to AHIC hereunder shall be offset by any fees that AHIC receives for the consulting services [to those Trusts]."  *Id.*  On October 3, 2016, AHIC exercised its delegated fiduciary discretion to restructure the Plan's lineup, removing eight single-strategy mutual funds and replacing them with four diversified Aon asset-class-based trusts and one objectives-based trust.  Compl. ¶ 43.  AHIC also added five low-cost State Street collective trusts to the Plan designed to track various market indices.  *Id.*

---

[3] Exs. 1–3, 5–6 are among the governing Plan documents that the Court is free to consider on a Rule 12(b)(6) motion.  *See, e.g.*, *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013); *Kling v. Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 127–28 (D. Mass. 2003).

[4] Exs. 1–12 were "referred to in the plaintiff's complaint" and are "central to [plaintiff's] claim" and, therefore, may be considered on a motion to dismiss.  *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009) (same).

## LEGAL STANDARD

A complaint must be dismissed under F.R.C.P. 12(b)(6) if it does not "contain sufficient factual matter [] to state a claim to relief that is plausible on its face."[5]  An imprudence claim requires allegations establishing the fiduciary did not act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."[6]  A fiduciary's decisions are reviewed "deferentially" for an "abuse of discretion."[7]  Where, as here, the complaint lacks any "allegations relating directly to the methods employed by the ERISA fiduciary," it cannot survive a motion to dismiss unless the court "may reasonably 'infer from what is alleged that the process was flawed.'"[8]  If a complaint raises no more than "the *mere possibility* of misconduct," it must be dismissed.[9]

## ARGUMENT

## I.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR IMPRUDENCE IN COUNT I.

### A.  Plaintiffs' Comparisons of the Plan's Aon Trusts to Funds Offering Less Diversified Strategies Cannot Support an Inference of Imprudence.

Plaintiffs assert in Count I that AHIC breached its fiduciary duty of prudence by selecting the Aon Trusts.  Yet, despite the process-focused nature of ERISA's prudence inquiry,[10] Plaintiffs do not even address AHIC's process.  Rather, Plaintiffs seek to infer that AHIC's process was deficient merely from the investment selections themselves.  Plaintiffs reason that

---

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (Motions to dismiss are "an important mechanism for weeding out meritless claims.").
[6] 29 U.S.C. § 1104(a)(1)(B); *see also Divane v. Northwestern Univ.*, 953 F.3d 980, 992 (7th Cir. 2020) (dismissing imprudence claim), *petition for cert. filed*, (June 19, 2020).
[7] *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006).
[8] *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718–19 (2d Cir. 2013).
[9] *Id.*
[10] *See Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) ("ERISA's prudence standard is objective, focusing on the *process* by which decisions are made, rather than their results."); *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 814 (S.D. Ill. 2006) (same).

the Aon Trusts are so inferior to the Plan's prior investments, and to certain Vanguard mutual funds, that no prudent fiduciary could have selected them.

Plaintiffs are wrong.  As the Eighth Circuit has recognized in similar circumstances, merely comparing in hindsight the performance of two investment options that follow different investment strategies is no basis for a claim of imprudence:

> The fact that one fund **with a different investment strategy** ultimately performed better does not establish anything about whether the [funds] were an imprudent choice at the outset.[11]

Plaintiffs offer this same flawed critique here.  For three of the five trusts, Plaintiffs erroneously compare the performance of the diversified, multi-strategy Aon Trusts to single-asset funds that invest solely in growth stocks.  For example, Plaintiffs compare the Aon Large Cap Equity trust to the T. Rowe Price Large Cap Growth fund, which, as its name suggests, is a growth fund managed by a single manager, T. Rowe Price.[12]  Compl. ¶ 63.  But the Aon Large Cap Equity trust is neither a pure growth fund nor an offering from a single manager.  Instead, the Aon Large Cap Equity trust "uses a 'multi-manager' approach" and invests "in a **diversified blend** of U.S. large capitalization **value and growth oriented** investment strategies."  Ex. 4, Transition Guide at 18.[13]  Likewise, Plaintiffs compare the Aon Small & Mid Cap Equity trust and the Aon Non-U.S. Equity trust to growth funds, Compl. ¶¶ 67, 74, even though both trusts allocate assets to a number of underlying funds, each with its own strategy and manager.  Ex. 5 at 10; Ex. 4 at 18.

---

[11] *Meiners v. Wells Fargo*, 898 F.3d 820, 823–24 (8th Cir. 2018).

[12] Ex. 13, T. Rowe Price Growth Fund Prospectus at 1 (the fund "follows a growth-oriented approach to stock selection"); *Id.* at 7 ("T. Rowe Price is the fund's investment advisor").  The Court may consider prospectuses (Exs. 13–25) on a motion to dismiss.  *See, e.g.*, *Meiners*, 898 F. 3d at 823 (proper to consider prospectus); *Hecker*, 556 F.3d at 582–83 (same); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) (same).

[13] *See, e.g.*, *In re Disney ERISA Litig.*, 2017 WL 1505129, at *5 (C.D. Cal. Apr. 21, 2017) ("There is no authority to support the proposition that the "growth" or "value" styles of portfolio management are preferable to one another, or . . . [selection of one] would constitute a breach of fiduciary duty.").

6

Plaintiffs try to justify their inapt comparisons by alleging that a third-party rating agency (Morningstar) has classified these three Aon Trusts as "growth" funds. Compl. ¶¶ 52, 65, 72. But Morningstar's more precise "strategic holding analysis" correctly classifies all three of the Aon Trusts as "blend[ed]" offerings of growth and value strategies.[14] In any event, the asset allocations speak for themselves. As Morningstar's "Style Breakdown" reports, the Aon Large Cap Equity trust allocated only 26% of its assets to a growth strategy comparable to that of the T. Rowe Price Large Cap Growth fund; the Aon Small & Mid Cap Equity trust allocated only 11% of its assets to a mid-cap growth strategy comparable to the TimesSquare Mid Cap Growth Fund; and the Aon Non-U.S. Equity trust allocated only 30% of its assets to a growth strategy comparable to the EuroPacific Growth Fund. Exs. 7–9, Morningstar Reports at 6.[15] Plaintiffs have offered no basis for the Court to defer to Morningstar's surface-level impressions over its more specific classifications of the Aon Trusts' strategies (that match the Aon Trusts' own descriptions of their investment strategies and asset allocations). Ex. 4 at 17–28; Ex. 5 at 4, 10.[16]

---

[14] Exs. 7–9, Morningstar Separate Account Comprehensive Reports ("Morningstar Report(s)") at 2. *See also id.* at 6 ("Style Breakdown"). The Court may take judicial notice of these reports because they are specifically referenced and relied upon in Plaintiffs' Complaint. *See* n. 4, *supra; see, e.g.,* Compl. ¶¶ 52, 61, 65, 68, 72, 79, 81, 83, 85, 87 and nn. 11, 16, 21–22, 26, 30; *see also Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *4 n.5 (D.D.C. Jan. 8, 2019) (taking judicial notice of information on "the various funds available through Morningstar, a well-respected investment research firm"); *Turner v. Davis Select Advisers LP*, 2013 WL 11311737, at *3 (D. Ariz. Mar. 19, 2013) (same); *Kenny v. Pac. Inv. Mgmt. Co. LLC*, 2015 WL 10635505, *3 (W.D. Wash. Aug. 26, 2015) (same). Plaintiffs' decision not to attach the Morningstar reports on which they rely is immaterial because the incorporation by reference exception "prevent[s] parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

[15] The target allocations in the Offering Statement are similar: the Aon Large Cap Equity trust allocates 22.5% of its assets to a large-cap growth fund, the Aon Small & Mid Cap allocates 19% to a mid-cap growth fund, and the Aon Non-U.S. Equity trust allocates 46% to a growth fund. Ex. 5 at 10, 23–33.

[16] The Complaint expressly incorporates both the Offering Statement (Ex. 5) and the Transition Guide (Ex. 4) by reference. *See, e.g.*, Compl. ¶¶ 46, 59, 61, 66, 68, 73, 75, 99 (Ex. 5); *Id.* ¶¶ 74, 87, 98 (Ex. 4).

These fundamental differences in strategy and approach render Plaintiffs' comparisons meaningless.[17]  It is unexceptionable, for example, that growth funds would slightly outperform the more diversified, multi-strategy Aon Trusts over recent periods when growth stocks have driven the extended bull market.  *See, e.g.*, Compl. ¶¶ 59, 63.  But history suggests that there will also be periods in which value funds outperform growth funds.  More diversified strategies like the Aon Trusts provide the opportunity for strong performance while limiting downside risk in precisely the fashion that ERISA expressly requires of fiduciaries.  29 U.S.C. § 1104(a)(1)(C).

Indeed, that is exactly what happened here—in 2016, both the Aon Large Cap and Aon Small & Mid Cap trusts outperformed the growth funds that Plaintiffs inaptly use as comparators.[18]  Instead of acknowledging the additional risk of concentrating investments in growth stocks,[19] Plaintiffs try to plead around it by simply omitting 2016 from their comparisons. Compl. ¶¶ 59, 67, 74.  Plaintiffs also ignore the flip side of the same coin:  the Aon Large Cap and Aon Small & Mid Cap trusts have outperformed the value-oriented funds that they replaced.[20]  And while Plaintiffs emphasize the Aon Non-U.S. Equity trust's performance in 2014–2015, they ignore the fact that the Non-U.S. Equity Trust has matched or outperformed the

---

[17] *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *see also Meiners v. Wells Fargo*, 2017 WL 2303968, at *2–3 (D. Minn. 2017) ("[A] comparison of the returns for two different funds is insufficient because funds . . . designed for different purposes . . . choose their investments differently, so there is no reason to expect them to make similar returns. . . .").

[18] The Aon Non-U.S. Equity Fund also had similar returns in 2016 to the growth fund it replaced. *Compare* Exs. 7–9, Morningstar Reports (Aon Large Cap, Small & Mid Cap, Non-U.S. Equity trusts) at 4, *with* Ex. 13, T. Rowe Price Growth Fund Prospectus at 4; Ex. 14, TimesSquare Mid Cap Growth Fund Prospectus at 7; Ex. 15, EuroPacific Growth Fund Prospectus at 6.

[19] Plaintiffs' counsel has previously brought claims alleging that defendants breached their fiduciary duty by failing to diversify and offering a fund that was too concentrated in one investment. *See, e.g.*, *Spano v. The Boeing Co.*, Second Am. Compl. ¶ 134, 2008 WL 3925047 (S.D. Ill Aug. 25, 2008).

[20] *Compare* Ex. 8, Morningstar Report (Aon Small & Mid Cap trust) at 4, *with* Ex. 16, Touchstone Mid Cap Value Fund Prospectus at 47; Ex. 17, DFA Group Small Cap Fund Prospectus at 47; *compare* Ex. 7 Morningstar Report (Aon Large Cap) at 4, *with* Ex. 18, MFS Large Cap Value Fund Prospectus at 4.

fund it replaced every year since being included in the Plan.[21]  Plaintiffs' performance comparisons therefore simply underscore the advantages of the Aon Trusts' diversification in reducing risk and variability.

Plaintiffs' comparisons for the final two Aon Trusts are similarly flawed.  First, Plaintiffs compare the Aon Inflation Strategy trust to the PIMCO Real Return fund, Compl. ¶¶ 80, 83, while ignoring that the PIMCO Real Return fund invests exclusively in fixed-income instruments (with 80% inflation indexed bonds), whereas the Inflation Strategy trust invests in a more diverse range of assets, including real estate, commercial property, and commodities.[22]  While the diversification of the Inflation Strategy trust caused it to slightly underperform the PIMCO Real Return fund during the rally in Treasuries in 2014–2015, in later periods (*e.g.*, 2016–2019) the Inflation Strategy trust slightly outperformed the single-asset strategy of the PIMCO Real Return fund.[23]  And, with its increased diversification, the Inflation Strategy has delivered lower volatility.[24]  Second, Plaintiffs' comparison of the Aon Core Plus Bond trust to the PIMCO Total Return Fund ignores that the Aon Core Plus Bond trust invested approximately 40.5% of its assets in that same PIMCO Total Return strategy while also providing Plan participants with additional diversification by investing with other managers and by investing in high-yield bonds, emerging market debt, and certain out-of-benchmark bonds.[25]  And the more diverse multi-

---

[21] *Compare* Ex. 9, Morningstar Report (Aon Non-U.S. Equity Trust) at 4, *with* Ex. 15, EuroPacific Growth Fund Prospectus at 6.

[22] *Compare* Ex. 19, PIMCO Real Return Fund Prospectus at 22–23, *with* Ex. 5, Offering Stmt. at 10–11, 23–32; Ex. 4, Transition Guide at 17.

[23] *Compare* Ex. 19, PIMCO Real Return Prospectus at 25, *with* Ex. 10, Morningstar Report (Aon Inflation Strat. trust) at 4.

[24] Indeed, the Inflation Strategy's "Beta"—a measure of the portfolio's volatility—of 0.65 is low, indicating that it is less volatile than the market average.  Ex. 10, Morningstar Report (Inflation Strat. trust) at 5.

[25] Ex. 4, Transition Guide at 17; Ex. 5, Offering Stmt. at 10, 23–24, 32.

manager Aon Core Plus Bond trust outperformed the PIMCO Total Return Fund touted by Plaintiffs between 2016 and 2019.[26]

Crucially, Plaintiffs identify nothing about the Aon Trusts or their more diverse mix of assets that a prudent fiduciary should have avoided, *ex ante*. They do not allege that the Aon Trusts' allocation to any particular strategy or asset class was too high. Nor do they allege that the unaffiliated asset managers AHIC chose to manage the underlying funds were unskilled or inexperienced. Plaintiffs also ignore the significant cost savings—in some cases, a reduction of nearly half—that the Aon Trusts delivered to Plan participants.[27] For example, by adopting the Aon Trusts, AHIC was able to invest in the very same PIMCO Total Return strategy that had previously been in the Plan at an expense ratio of 25–34 basis points ("bps") per year instead of 46–70 bps.[28] As Plaintiffs themselves repeatedly emphasize, even a small reduction in fees has "the potential to dramatically affect the amount of money that participants are able to save for retirement." Compl. ¶¶ 34–39.[29] Alone, these significant cost savings, by Plaintiffs' own logic, strongly support the prudence of AHIC's decision to adopt the Aon Trusts.

---

[26] *Compare* Ex. 11, Morningstar Report (Aon Core Bond trust) at 4, *with* Ex. 20, PIMCO Total Return Prospectus at 47.

[27] Replacing the PIMCO Real Return Fund with the Aon Inflation Strategy trust, for example, reduced the Plan's expenses by approximately 50% from 45–53 bps to 20–26 bps per annum. *Compare* Compl. ¶ 81; Ex. 5, Offering Stmt. at 58, *with* Ex. 19, PIMCO Real Return Prospectus at 22. The remainder of the Aon Trusts likewise resulted in cost savings—for example, the replacement of the T. Rowe Growth Fund with the Aon Large Cap Equity trust reduced the expense ratio from 56 bps to 44–47 bps. *Compare* Compl. ¶ 61; Ex. 5 at 58, *with* Ex. 13, T. Rowe Price Prospectus at 1.

[28] *Compare* Compl. ¶ 87; Ex. 5, Offering Stmt. at 58, *with* Ex. 20, PIMCO Total Return Prospectus at 44. Likewise, the Aon Small & Mid Cap Equity trust continued to invest a portion of its assets in the same TimesSquare Mid Cap Growth Fund that it had replaced but at an expense ratio of only 70–73 bps instead of 79–98 bps. *Compare* Compl. ¶ 68; Ex. 5, Offering Stmt. at 58, *with* Ex. 14, TimesSquare Mid Cap Growth Fund Prospectus at 6.

[29] *See, e.g.*, *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–98 (9th Cir. 2016) ("'[C]ost-conscious management is fundamental to prudence') (quoting Restatement (Third) of Trusts §§ 90, cmt. b, 88 cmt a).

### B. Plaintiffs' Comparisons to Vanguard Index Funds Are Likewise Inapt.

Plaintiffs' comparisons to certain cherry-picked Vanguard index funds are similarly flawed—and also suffer from other infirmities. The Vanguard index funds that Plaintiffs tout are designed merely to track a single index and, therefore, employ a fundamentally different strategy from the multi-manager, actively-managed, far more diversified Aon Trusts. Compl. ¶ 53. As the Eighth Circuit has explained, Vanguard index funds do not provide an appropriate benchmark for actively-managed funds because they "have different aims, different risks, and different potential rewards that cater to different investors. Comparing apples and oranges is not a way to show that one is better or worse than the other."[30]

In addition, Plaintiffs again ignore important differences in strategy and asset allocation between the Aon Trusts and the Vanguard index funds. Plaintiffs improperly compare the multi-strategy, blended Aon Large Cap Equity and Aon Small & Mid Cap Equity trusts to pure "growth" strategies, namely the Vanguard Large Cap Growth Index Fund and Vanguard Mid Cap Growth Index Fund, despite the fact that the more diversified Aon Trusts contain only small investments in growth strategies.[31] Compl. ¶¶ 61, 68. And that is not the only important difference in asset allocation. Whereas the Aon Small & Mid Cap Equity trust allocates roughly 61% of its assets to small capitalization stocks, Plaintiffs' comparator, the Vanguard Mid Cap Growth Index Fund, allocates none.[32] The Aon Non-U.S. Equity trust invests almost entirely (~98%) in non-U.S. equities, but Plaintiffs compare it to the Vanguard Total World Index Fund,

---

[30] *Davis*, 960 F.3d at 485; *Meiners*, 898 F.3d at 823; *Divane*, 953 F.3d at 989 ("That plaintiffs prefer low-cost index funds to the Stock Account does not make its inclusion in the plans a fiduciary breach.").
[31] *See* p. 7 n. 15, *supra*; *compare* Ex. 5, Offering Stmt. at 10; Exs. 7–8, Morningstar Reports (Aon Large Cap Equity, Small & Mid Cap trusts) at 6 ("Style Breakdown"), *with* Ex. 21, Vanguard Growth Index (VIGIX) Prospectus at 16–17; Ex. 22, Vanguard Mid Cap Growth Index (VMGMX) Prospectus at 17–18.
[32] *Compare* Ex. 8, Morningstar Report (Aon Small & Mid Cap trust) at 6 ("Style Breakdown"), *with* Ex. 22, Vanguard Mid Cap Growth Index Prospectus at 17–18.

which invests more than 50% in U.S. equities.[33]  Plaintiffs' effort, in turn, to match the Aon

Inflation Strategy trust with the Vanguard Inflation Protected Securities Index Fund overlooks

the former's far more diverse group of asset classes, including real estate, commercial property,

and commodities, none of which are in the Vanguard Inflation Protected Securities Fund, which

invests most of its assets (approximately 80%) in inflation-indexed bonds.[34]  And the Aon Core

Plus Bond trust contains more diverse investments than the Vanguard Intermediate-Term Bond

Index Fund, with allocations to high-yield bonds and emerging market debt.[35]

Even if Plaintiffs' chosen comparisons were apt (and they are not), the performance

differences they cite are small and isolated—(i) the Aon Large Cap Equity trust slightly

outperformed the more comparable Vanguard Large Cap Index over the 2017–2019 period;[36]

(ii) the Aon Non-U.S. Equity trust slightly outperformed the Vanguard Total Stock World Fund

during the 2017–2019 period;[37] and (iii) both the Inflation Strategy and Core Plus Bond trusts

slightly outperformed the Vanguard funds touted by Plaintiffs during the 2016–2019 period.[38]

These periods in which the diversified Aon Trusts outperformed narrower strategies demonstrate

the crucial point that Plaintiffs try to obscure:  more diversified funds like the Aon Trusts will

both under- and over-perform single-asset-class, single-strategy funds like the Vanguard funds

---

[33] *Compare* Ex. 9, Morningstar Report (Aon Non-U.S. Equity trust) at 2 ("Asset Allocation") 7, *with* Ex. 23, Vanguard Total World Index Fund (VTWIX) Prospectus at 2.

[34] *Compare* Ex. 5, Offering Stmt. at 10–11, 23–32, *with* Ex. 25, Vanguard Inflation Protected Securities Fund (VIPIX) Prospectus at 2.

[35] *Compare* Ex. 11, Morningstar Report (Aon Core Bond trust) at 7; Ex. 5 at 10, *with* Ex. 24, Vanguard Intermediate-Term Bond Index Fund (VBIUX) Prospectus at 13.

[36] *Compare* Ex. 7, Morningstar Report (Aon Large Cap Equity trust) at 4, *with* Ex. 21, Vanguard Large Cap Index (VLISX) Prospectus at 8.

[37] *Compare* Ex. 9, Morningstar Report (Aon Non-U.S. Equity trust) at 4, *with* Ex. 23, Vanguard Total World Index Fund Prospectus at 4; Ex. 12, Morningstar Report (Vanguard Total World fund) at 1.

[38] *Compare* Exs. 10–11, Morningstar Reports (Aon Inflation Strategy trust, Aon Core Bond trust) at 4, *with* Ex. 25, Vanguard Inflation Protected Securities Fund Prospectus at 3; Ex. 24, Vanguard Intermediate-Term Bond Index Fund Prospectus at 15.

over narrow periods as markets gyrate, but, over the long term, diversified funds tend to reduce risk and volatility. This is the advantage of diversification and the precise reason that ERISA expressly requires it. *See* 29 U.S.C. § 1104(a)(1)(C).

Nor can imprudence be inferred from Plaintiffs' comparisons of the costs of the Aon Trusts relative to Vanguard's products. Compl. ¶¶ 61, 68, 75, 81, 87. It is axiomatic that costs can only be assessed in light of the services provided,[39] and the materials on which Plaintiffs rely establish that in two separate respects the fees charged for the Aon Trusts cover a much broader range of investment services than the Vanguard funds. The Complaint itself acknowledges that active management—offered through the Aon Trusts but none of the Vanguard products—entails a higher, more costly level of service than passive management, and, as a result, "passively managed investments charge significantly lower fees for investment management services." Compl. ¶ 53. Court after court has thus recognized that the expenses of passive funds do not provide a meaningful basis for judging the reasonableness of the fees of actively-managed funds.[40] Moreover, the Aon Trusts' expense ratios encompass AHIC's ▮▮▮▮ of compensation for acting as the delegated fiduciary and taking on the additional fiduciary responsibility for the Plan's menu. Ex. 1, IMA, Sch. C. Astellas chose to embed AHIC's compensation in the expense ratio for the Aon Trusts, while no such expense provision (and no such fiduciary

---

[39] *See, e.g., Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *20 (S.D. Fla. Aug. 7, 2007) (recognizing some accounts "require more intensive attention" and will have higher fees); *Ramos v. Banner Health*, 2020 WL 2553705, at *29 (D. Colo. May 20, 2020) (recognizing that the reasonableness of fees depends on "the level and scope of the services provided").

[40] *See, e.g., Patterson v. Morgan Stanley*, 2019 WL 4934834, at *11–12 (S.D.N.Y. Oct. 7, 2019) ("[C]onclusory assertion that the Vanguard Mid Cap Fund is a lower-cost comparator is not enough to state a claim of imprudence" because fees charged by a passive index fund "cannot be meaningfully compared" to fees charged by an actively-managed fund.); *Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *7 (S.D.N.Y. Sep. 27, 2018) (holding actively-managed funds and passive index funds "employ[ed] distinct investment methodologies and strategies" so comparison of their fees is not "meaningful [or] plausibly suggestive of a fiduciary breach"); *Dupree*, 2007 WL 2263892 at *20 (same).

service) is reflected in the Vanguard expense ratios.[41]   And even if Plaintiffs' Vanguard expense comparators offered a meaningful pricing benchmark for the Aon Trusts (they do not), the Seventh Circuit has recognized that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."[42]

Finally, Plaintiffs' expense criticisms ring especially hollow given that the Plan has offered a selection of State Street institutional index funds as investment alternatives throughout this period.  Those funds had similar strategies, comparable performance, and expense ratios similar to (and in some cases lower than) the Vanguard funds Plaintiffs cite.  *See* Compl. ¶ 43; Ex. 4 at 19–29.  Plaintiffs may begrudge that they were offered a choice between passive and active strategies, but that is no basis for a claim of imprudence.  *Loomis*, 658 F.3d at 673–74.[43]

### C.     Plaintiffs' Allegation That Certain Aon Trusts Underperformed Their Benchmarks Is Contradicted by Materials Incorporated in the Complaint and Similarly Cannot Carry Their Claim of Imprudence.

Plaintiffs also incorrectly allege that the Aon Trusts underperformed their own benchmarks both in the two years prior to their selection and after they were made available to participants.  *See, e.g.*, Compl. ¶¶ 59, 63, 66, 70.  This is because Plaintiffs misconstrue the offering materials on which they rely.  For three of the trusts (the Aon Large Cap, Small & Mid

---

[41] Ex. 5, Offering Stmt. at 54.

[42] *Hecker,* 556 F.3d at 586; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 n.7 (8th Cir. 2009) (Plaintiffs cannot state a claim with the "bare allegation that cheaper alternative investments exist in the marketplace."); *Martin*, 2020 WL 3578022, at *16; *see also Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345–46 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion."); *Reso Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, 2011 WL 5826034, at *8 (E.D. Wis. Nov. 18, 2011) (same); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1231 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991).

[43] *See id.* (ERISA "encourages sponsors to allow more choice to participants" and a fiduciary "cannot be faulted" for "offer[ing] participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market."); *Divane*, 953 F.3d at 986 (same); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1134–1135 (9th Cir. 2013) (same).

Cap, and Non-U.S. Equity trusts), Plaintiffs make the same mismatched analogy discussed above—they compare the performance of the Aon Trusts to *growth* indices even though these Aon Trusts employed a more diversified strategy blending growth and value securities and *never used growth indices as their benchmarks*.[44]  Compl. ¶¶ 59, 65, 72.  Similarly, Plaintiffs compare the performance of the Aon Core Plus Bond trust and the Aon Inflation Strategy trust to the Barclays U.S. Aggregate Bond Index and the Barclays TIPS Index respectively, but the Plan documents cited by Plaintiffs indicate that neither of these indices were used as benchmarks.  Ex. 5, Offering Stmt. at 61; Ex. 3, 2020 IPS, Appx.[45]  Instead, both trusts used custom benchmarks that more accurately reflected the trusts' far more diversified investment portfolios.

When Plaintiffs compare the Aon Trusts to the correct benchmarks, their allegations are frequently contradicted by the documents on which they rely.  For example, Plaintiffs allege that "[a]s of June 30, 2016, the [Inflation Strategy trust] underperformed its custom benchmark . . . over all reporting periods."  Compl. ¶ 80.  But the Offering Statement they cite indicates that the Aon Inflation Strategy trust *outperformed* its benchmark over the trailing one-year period, the two-year period, and since inception.  Ex. 5 at 61.  In other instances, Plaintiffs cherry-pick brief windows of underperformance.  For example, Plaintiffs claim that the Aon Non-U.S. Equity trust underperformed the MSCI ACWI EX-US Index for the "year to date and one-year" period prior

---

[44] Ex. 5, Offering Stmt. at 61.  The Offering Statement and IPS indicate that the benchmark for the Aon Large Cap Equity trust was the Russell 1000 Index (not the Russell 1000 *Growth* Index as Plaintiffs claim), the benchmark for the Aon Small & Mid Cap trust was the Russell 2500 Index (not the Russell Mid Cap *Growth* Index), and the benchmark for the Aon Non-U.S. Equity trust was the MSCI All Country World ex-U.S. Index (not the MSCI All Country World ex-U.S. *Growth* Index).  Ex. 3, 2020 IPS, Appx.; Ex. 5, Offering Stmt. at 61–67.

[45] It is a well-settled rule that when a written instrument contradicts allegations in the complaint, "the exhibit[] trump[s] the allegations."  *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *9 (S.D.N.Y. Sept. 18, 2019) (considering fund's performance data on a motion to dismiss because it contradicted allegation in the complaint that the funds had underperformed their benchmarks).

to selection, Compl. ¶ 73, while ignoring that the Aon Non-U.S. Equity trust had outperformed its benchmark over the broader two-year period and since inception.  Ex. 5 at 61.

To be sure, some of the Aon Trusts underperformed their benchmarks for narrow periods of time prior to selection in 2016.  But, as a legal matter, it is only when a fund *persistently* falls short of its benchmark by *substantial* margins that courts have been willing to consider inferring (from that fact alone) that a fiduciary's process was defective.[46]  Here, the differences Plaintiffs cite are too small[47] and too fleeting to support the inference they seek.[48]  ERISA does not require fiduciaries to react in kneejerk fashion to limited periods of modest underperformance.[49]  And the Aon Trusts here show why:  for 2016–2019 three of the Aon Trusts *outperformed* even Plaintiffs' mismatched benchmarks.[50]

### D.  Far From Lacking a Sufficient Performance History, the Plan's Aon Trusts Were Managed by Experienced, Best-of-Breed Asset Managers.

Plaintiffs' final criticism of the Aon Trusts is that they lacked "a sufficient performance record."  Compl. ¶¶ 59, 62, 66, 69, 73, 80, 86.  However, Plaintiffs confuse two things—the

---

[46] *See, e.g.*, *Patterson*, 2019 WL 4934834, at *10–11 ("[A] small disparity in performance relative to its benchmark does not support the inference that [investments] were imprudent."); *Ferguson*, 2019 WL 4466714, at *9 (same); *see also Cervantes v. Invesco Holding Co. (US), Inc.*, 2019 WL 5067202, at *6 (N.D. Ga. Sept. 25, 2019) (Cherry-picked underperformance against benchmark does not state a claim.).

[47] *See* Ex. 5 at 61; Compl. ¶¶ 59, 66.  During other periods, the Aon trusts outperformed their benchmarks.  For example, the Aon Core Plus Bond trust underperformed its benchmark over a 3-year period by only 0.36%, Ex. 5 at 62, but outperformed even Plaintiffs' mismatched benchmark from 2016–2019.  *See* Ex. 11, Morningstar Report (Core Bond Trust) at 4.

[48] Unlike the returns for the Aon Trusts, the benchmark performance does not reflect the fees and expenses associated with investing in an actual fund.  Ex. 5, Offering Stmt. at 60.

[49] *See Jenkins v. Yager*, 444 F.3d 916, 925–26 (7th Cir. 2006) (Defendant did not breach fiduciary duties by retaining funds that underperformed for three years because "investment strategy . . . to find long-term, conservative, reliable investments that would do well during market fluctuations" was not imprudent.); *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (Three to five years "are still considered relatively short periods of underperformance."); *White v. Chevron Corp.*, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) ("Indeed, a fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy.").

[50] Exs. 7–11, Morningstar Reports (Aon Trusts) at 4.

investment ***strategies/managers*** and the investment ***vehicles*** for offering them.  There is no legal basis for complaining about the adoption of new investment vehicles for established managers or strategies.  For instance, the Department of Labor ("DOL"), which has enforcement responsibility for ERISA, has expressly encouraged large 401(k) plans to consider adopting "custom" TDFs to benefit participants, even though the use of custom funds necessarily requires investment in a newly-formed vehicle without a performance history of its own.[51]  Likewise, the DOL suggests that large plans consider separate accounts[52] and hire established managers to run them, despite the fact that separate accounts are newly-formed vehicles with no performance history when they are created.[53]  That the Aon Trusts, as investment vehicles, were of relatively recent vintage when they were added to the Plan is thus inconsequential under ERISA.

The tenure of the underlying investment strategies and managers is what matters.  As the Complaint acknowledges, all of the Aon Trusts at issue here are custom "funds-of-funds," meaning that AHIC selects exclusively unaffiliated investment managers to run the trusts' portfolios.  Compl. ¶ 47.  Because they cannot, Plaintiffs do not allege that these underlying managers—including the likes of State Street, PIMCO, and Dodge & Cox[54]—lacked experience

---

[51] *See* U.S. Dept. of Labor Employee Benefits Security Admin., *Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries* (Feb. 2013), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/target-date-retirement-funds.pdf.  DOL reports (*see* nn. 51–52) are public documents subject to judicial notice. *Rhoades v. Walsh*, 2009 WL 2600094, at *11 n. 24 (D. Me. Aug. 19, 2009); *Pugh*, 521 F.3d at 691 n.2 (same).

[52] *See* U.S. Dep't of Labor, *Study of 401(k) Plan Fees and Expenses*, at 17 (April 13, 1998), *available at* https://www.dol.gov/sites/dolgov/files/EBSA/researchers/analysis/retirement/study-of-401k-plan-fees-and-expenses.pdf.  Indeed, Plaintiffs' counsel has argued in other lawsuits that plan fiduciaries acted imprudently by failing to adopt separate accounts or collective trusts (even though those funds lack track records).  *E.g., Pledger v. Reliance Trust. Co.*, 1:15-cv-04444-MHC, Am. Compl., Dkt. 37 at ¶¶ 92, 108–11 (N.D. Ga Apr. 15, 2016) ("Separate accounts have a number of advantages over mutual funds . . . ."); *White v. Chevron Corp.*, 16-cv-793, Compl., Dkt. No. 1 at ¶¶ 60–63 (N.D. Ca. Feb. 17, 2016) (same).

[53] *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1064 (N.D. Cal. 2017) (noting that separate accounts "offer a portfolio of assets that is unique to the individual investor").

[54] Ex. 5, Offering Stmt. at 4, 10, 23–32.

17

with respect to their particular investment mandates. Nor do Plaintiffs challenge AHIC's experience in evaluating managers and allocating assets among them.

Even if the longevity of the overall Aon Trust strategy (the precise allocation of assets across the unaffiliated investment managers AHIC has selected) were independently significant under ERISA,[55] Plaintiffs' attempt to cast the Aon Trust strategies as "new" is contradicted by their own factual allegations. The Complaint concedes that the Aon Trusts went live in October 2013 and therefore had *a three-year track record* when they were introduced to the Plan in October 2016. Compl. ¶¶ 43, 59, 66, 73, 80, 86. Plaintiffs' assertion that "prudent fiduciaries require a five-year performance history for an investment option prior to its inclusion in a 401(k) plan," Compl. ¶ 58, simply has no basis in law, and they know it.[56]

## II. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT AHIC ADOPTED THE AON TRUSTS FOR DISLOYAL REASONS.

The Complaint sets forth no plausible basis for claiming that AHIC's decision to include the Aon Trusts in the Plan's lineup was motivated by anything other than the interests of the Plan. Plaintiffs' principal allegation is that AHIC earned additional compensation by selecting the Aon Trusts, Compl. ¶¶ 49–50, but that notion is directly contradicted by the materials cited in the Complaint. Under the terms of the IMA,[57] AHIC is entitled to no more and no less than its negotiated fee for acting as the delegated fiduciary whether the Plan invests in the Aon Trusts or

---

[55] It is not. *See, e.g.*, *Leber v. Citigroup 401k Plan Inv. Comm.*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015) (Lack of performance history "do[es] not raise a plausible inference that a prudent fiduciary would have found those Funds to be so plainly risky as to render the investments in them imprudent."); *Dupree*, 2007 WL 2263892 at *15, *45 (holding "new strategies" with no performance history not imprudent); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 705 (W.D. Mo. 2019) (noting absence of "authority holding that the implementation of a fund without a long performance history is [] imprudent").
[56] In similar ERISA cases, Plaintiffs' counsel has argued that "prudent fiduciaries require a *three-year* performance history for an investment option prior to its inclusion in a 401(k) plan." *Pledger v. Reliance Trust Co.*, 1:15-cv-04444-MHC, Am. Compl., Dkt. 37 at ¶ 63 (N.D. Ga Apr. 15, 2016).
[57] As noted above, n. 4 *supra*, the IMA is relied upon in Complaint ¶¶ 22, 42 and, therefore, can be considered on a motion to dismiss. *Burke v. 401 N. Wabash Venture*, 714 F.3d 501, 505 (7th Cir. 2013).

18

some other funds.  Ex. 1, IMA, Sch. C.  Indeed, the IMA expressly provides that, if AHIC chooses to include an Aon Trust in the Plan's lineup, AHIC's fee for acting as a delegated fiduciary "shall be offset by any fees that AHIC receives for the consulting services that it performs for an Affiliated Collective Trust."  *Id*.  Accordingly, AHIC's decision to offer the Aon Trusts could not have resulted in a penny of additional compensation for AHIC beyond its contractually determined delegated fiduciary fee.  To the contrary, by selecting the Aon Trusts, AHIC committed to providing an additional layer of investment service and responsibility for the benefit of Plan participants without any incremental compensation.

To be sure, ATC, a banking affiliate of AHIC, receives a small amount of compensation for its distinct service as the trustee for the Aon Trusts.  *See* Compl. ¶ 47; Ex. 5, Offering Stmt. at 53.  But to state a claim for a breach of the duty of loyalty, Plaintiffs must show that a fiduciary's "operative" motive "was to further its own interests."[58]  The critical question is thus not whether AHIC's banking affiliate may have also benefited in some way from the selection of the Aon Trusts, but whether AHIC put "its own interests ahead of those of the Plan beneficiar[ies]."[59]  Despite this well-established standard, Plaintiffs make no allegations allowing a plausible inference that the generation of trustee fees for AHIC's banking affiliate was the primary motive in AHIC's decision to select the Aon Trusts.

Nor do the circumstances surrounding the Plan's arrangement support any such disloyal inference.  As discussed above, *supra* at 6, 9–10, the Aon Trusts had multiple features that differentiated them from other options on the market, including a low-cost CIT structure that

---

[58] *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 40 (1st Cir. 2018); *see also Donovan v. Walton*, 609 F. Supp. 1221, 1245 (S.D. Fla. 1985) ("[T]rustee[s] may make management decisions that incidentally benefit . . . the trustees provided the judgment is prudent and primarily promotes the interest of plan participants and beneficiaries."); *see also Martin*, 2020 WL 3578022, at *17–*18.

[59] *Vander Luitgaren v. Sun Life Assurance Co. of Can.*, 765 F.3d 59, 65 (1st Cir. 2014) (ERISA "does not require a fiduciary to don the commercial equivalent of sackcloth and ashes.").

enabled diversified investments with multiple top-tier sub-advisors.  As such, the trustee fees cannot be said to have been the only possible motivation for selecting the Aon Trusts.  Nor have Plaintiffs shown that the trustee fees are a particularly compelling incentive.  While Plaintiffs assert that the trustee fees existed, they do not address the magnitude of those fees, or allege that they were excessive.  And, as reflected in the Offering Statement on which Plaintiffs rely, the trustee fees were tiny—a fraction of AHIC's fee for delegated fiduciary services.  Ex. 5 at 53.  Any supposed benefit to its affiliate from those modest fees was counterbalanced by ATC's obligation to provide trustee services and by the fact that AHIC assumed the burden and additional costs of serving as investment manager for the Aon Trusts for no additional compensation.  Ex. 5 at 53–54.

Finally, Plaintiffs' suggestion of disloyalty ignores that AHIC affirmatively disclosed the trustee fees (and their amounts) in the Offering Statement, which Astellas expressly acknowledged reviewing in the IMA.  Ex. 5 at 53; Ex. 1, IMA, Sch. A, at §2(c), (e).  In other words, before being hired as delegated fiduciary, AHIC informed Astellas of the potential compensation to ATC at a point in time when Astellas could have negotiated other contractual terms or declined to hire AHIC at all.  Inviting such scrutiny from an appointing fiduciary cannot be squared with a self-dealing scheme.  Any suggestion that AHIC selected the Aon Trusts in an effort to secure a modest trustee fee for ATC, rather than to further the interests of Plan participants, is implausible speculation that cannot support a disloyalty claim.[60]

---

[60] *See Iqbal*, 556 U.S. at 679 (On a motion to dismiss, a court disregards any allegations that are "no more than conclusions" and thus "not entitled to the assumption of truth.").

## III. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A PROHIBITED TRANSACTION IN COUNT III.

Plaintiffs allege in Count III that AHIC engaged in prohibited transactions in violation of ERISA § 406 by causing the Plan to (i) pay Plan assets to AHIC and (ii) invest in the proprietary Aon Trusts. Compl. ¶¶ 120–21. Both of these theories fail. AHIC cannot be liable under ERISA § 406 because AHIC was not the fiduciary responsible for approving its compensation on the Plan's behalf. By its terms, ERISA § 406 prohibits only *fiduciaries* from engaging in certain transactions,[61] and, under ERISA, a person is a fiduciary only "to the extent" that person performs fiduciary functions.[62] As discussed above (*supra* 18–19), AHIC's sole compensation in connection with the Plan was specifically approved by the Astellas fiduciaries in the IMA. As the Seventh Circuit has held, a service provider to an ERISA plan does not act as a fiduciary when it conducts an arm's-length business negotiation over the terms by which it might provide services to the plan, including—as here—the terms of its fee for providing such services.[63]

Plaintiffs' latter theory also fails because AHIC's decision to invest Plan assets in the Aon Trusts, and the resulting fees paid to ATC, were expressly permitted by the exemption in ERISA § 408(b)(8). Under that exemption, (i) a trust company may earn a fee provided (ii) it is permitted by the Plan documents and (iii) the trust company receives "not more than reasonable compensation." 29 U.S.C. § 1108(b)(8). The first two criteria are satisfied by allegations that

---

[61] *See* 29 U.S.C. § 1106(a) ("*A fiduciary* with respect to a plan shall not . . ."); 29 U.S.C. § 1106(b) ("*A fiduciary* with respect to a plan shall not . . ."); *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245 (2000) ("§ 406(a) imposes a duty only on the fiduciary that causes the plan to engage in the transaction."); *see also Fish v. Greatbanc Trust Co.*, 2016 WL 5923448 at *60 (N.D. Ill. Sept. 1, 2016) ("A person cannot 'cause' a prohibited transaction unless he or she 'exercise[s] discretionary authority or control' over whether the plan enters into the transaction.").

[62] 29 U.S.C. § 1002(21)(A); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (In a breach of duty case, the "threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

[63] *See Hecker*, 556 F.3d at 583; *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473–75 (7th Cir. 2007); *Schulist v. Blue Cross of Iowa & Blue Shield of Iowa*, 717 F.2d 1127, 1131 (7th Cir. 1983).

ATC was "a non-depository bank" and Astellas "expressly agreed to allow Aon to select investments for the Plan exclusively from its proprietary Aon [] CITs."  Compl. ¶¶ 42, 45.

With respect to the third criterion, there is no allegation that ATC received more than reasonable compensation.  Indeed, the Complaint does not allege the amount of ATC's trustee compensation or attempt to compare it to the amount charged by other trust companies for similar services.  Plaintiffs have thus failed to "allege any basis for presuming that [ATC's] conduct fell outside [this] statutory exemption . . . [and therefore Plaintiffs' claim] is deficient."[64]

Finally, the materials incorporated in the Complaint establish that the trustee fees were reasonable according to market standards.  First, the small trustee fees received by ATC were disclosed to an independent fiduciary, Astellas, before Astellas retained AHIC as delegated fiduciary and authorized AHIC's use of the Aon Trusts.[65]  Second, in becoming trustee to the Aon Trusts, ATC merely retained the same fee rates that had been negotiated in the market with the Aon Trusts' prior outside trustee, Reliance Trust Company.[66]  In short, the allegations in Plaintiffs' Complaint do not support their prohibited transaction theories.[67]

---

[64] *Leber v. Citigroup Inc.*, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010); *see also Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510–11 (E.D. Pa. 2001) (dismissing a challenge to plan investment in proprietary mutual funds where plaintiffs failed to allege facts establishing that fees paid and terms applied to the plan were not in compliance with exemption); *Skin Pathology Assocs., Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 374–78 (S.D.N.Y. 2014) (same); *In re Honeywell Int'l ERISA Litig.*, 2004 WL 3245931, *14 (D.N.J. Sept. 14, 2004) (same).

[65] *Compare* Ex. 1, IMA, Sch. A at 2(c), *with* Ex. 5, Offering Stmt. at 54.

[66] Ex. 6, 2013 Offering Statement at 43–44, 51.  Plaintiffs repeatedly cite the 2016 and 2019 offering statements throughout their Complaint and courts have held that it is appropriate to consider earlier versions and amendments of documents cited in the Complaint.  *See, e.g., Hecker*, 556 F. 3d at 583 (taking judicial notice of supplements to summary plan documents); *Harris v. D.A. McCosker Const. Co.*, 2012 WL 5411970, at *1 n.1 (N.D. Cal. Nov. 6, 2012) (taking judicial notice of an earlier version of an agreement cited in the complaint).

[67] Plaintiffs suggest in Counts I and III that AHIC is liable as a co-fiduciary for alleged breaches by the Astellas Defendants.  Such assertions fail because Plaintiffs have not adequately alleged a breach by anyone in those counts, and there are no allegations that plausibly suggest that AHIC had "actual knowledge" of any alleged breach.  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011).

Dated:  August 31, 2020

Respectfully Submitted,

*/s/ Brian D. Boyle*
O'MELVENY & MYERS LLP
Brian D. Boyle
Shannon M. Barrett
1625 Eye Street, N.W.
Washington, DC 20006-4001
Telephone:  (202) 383-5300
bboyle@omm.com
sbarrett@omm.com

Stuart M. Sarnoff (*pro hac vice*)
ssarnoff@omm.com
William Pollak (*pro hac vice*)
wpollak@omm.com
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
ssarnoff@omm.com
wpollak@omm.com

John R. Landis
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Tel:  (312) 832-4539

*Attorneys for Aon Hewitt Investment Consulting Inc. (NKA Aon Investments USA, Inc.)*

## CERTIFICATE OF SERVICE

I, Brian Boyle, hereby certify that on August 31, 2020, I electronically filed the foregoing *Motion to Dismiss* using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ Brian D. Boyle
Brian D. Boyle

*Attorney for Aon Hewitt Investment Consulting Inc.*
*(NKA Aon Investments USA, Inc.)*

## LOCAL RULE 37.2 CERTIFICATION

On August 31, 2020 at approximately 12:30 PM, Mr. William D. Pollak, on behalf of Aon Hewitt Investment Consulting Inc., and Mr. Kurt Struckhoff conferred by telephone to discuss Defendant Aon Hewitt Investment Consulting Inc.'s *Motion to Dismiss*. During this conference, counsel for Plaintiffs stated that Plaintiffs do not assent to such request for relief. Accordingly, after a telephone consultation and good faith attempts to resolve their differences, the parties are unable to reach an accord.

/s/ Brian D. Boyle
Brian D. Boyle

*Attorney for Aon Hewitt Investment Consulting Inc.*
*(NKA Aon Investments USA, Inc.)*