**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUSAN WOERTH MILLER, FAURUM SANKARI, ANGELA HEIMGARTNER, MICHAEL WACHALA, MARY BETH PREUSS, ERIC TERHAERDT, PATRICIA WALSH, and SHEILA EARLY, individually and as representatives of classes of participants and beneficiaries on behalf of the Astellas US Retirement and Savings Plan,<br><br>*Plaintiffs*,<br><br>v.<br><br>ASTELLAS US LLC, THE BOARD OF DIRECTORS OF ASTELLAS US LLC, THE ASTELLAS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE, AON HEWITT INVESTMENT CONSULTING, INC. (NKA AON INVESTMENTS USA, INC.), and JOHN DOES 1-14,<br><br>*Defendants*. | Case No. 1:20-cv-03882<br><br><br><br>Hon. Ronald A. Guzman |

**MEMORANDUM OF LAW IN SUPPORT OF THE ASTELLAS DEFENDANTS'
MOTION TO DISMISS**

Christopher Boran
Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Telephone:  312.324.1000
christopher.boran@morganlewis.com
matthew.russell@morganlewis.com

Jeremy P. Blumenfeld (*pro hac vice application forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  215.963.5000
jeremy.blumenfeld@morganlewis.com

*Attorneys for Defendants Astellas US LLC, its Board of Directors, and the Astellas Retirement Plan Administrative Committee*

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**......................................................................................................... 1

**BACKGROUND** ........................................................................................................... 3

I.      **The Astellas US Retirement and Savings Plan**............................................... 3

II.     **The Plan's Menu of Investment Options** ....................................................... 3

III.    **Plan Improvements in 2016**............................................................................. 4

       A.     The Committee Oversaw the Investment Menu Until August 2016..................... 4

       B.     AHIC Has Been Responsible for the Investment Menu Since August 2016......... 5

**ARGUMENT** ................................................................................................................. 7

I.      **Seventh Circuit Precedent Precludes Plaintiffs' "Share-Class" Claim in Count II** ............................................................................................ 8

II.     **Count I Does Not State a Plausible Claim That the Astellas Defendants Breached Any Fiduciary Duty with Respect to the Aon Hewitt CIT Funds Offered Through the Plan** .................................................................. 10

       A.     The Astellas Defendants Did Not Select or Retain the CIT Funds.................... 10

       B.     Count I Also Fails Against the Astellas Defendants Because Plaintiffs Do Not State a Plausible Underlying Fiduciary Breach Against AHIC .................. 12

III.    **Counts III and IV Are Duplicative of Counts I and II and Fail for the Same Reasons** ......................................................................................... 15

**CONCLUSION** ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Burke v. 401 N. Wabash Venture LLC*,
  714 F.3d 501 (7th Cir. 2013) ...................................................................3

*Catalfamo v. Sears Holding Corp.*,
  2018 WL 10560956 (N.D. Ill. Aug. 21, 2018) ..........................................11, 12, 15

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.*,
  920 F.3d 457 (7th Cir. 1990) .................................................................14

*Divane v. Northwestern Univ.*,
  2018 WL 2388118 (N.D. Ill. May 25, 2018), *aff'd* 953 F.3d 980 .........................15

*Divane v. Northwestern Univ.*,
  953 F.3d 980 (7th Cir. 2020) ....................................................... *passim*

*Ennenga v. Starns*,
  677 F.3d 766 (7th Cir. 2012) ...................................................................3

*Ferguson v. Ruane Cunnif & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)..........................................15

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ....................................................... *passim*

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ...................................................................2, 11

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) .................................................................14

*Johnson v. Evangelical Lutheran Church*,
  2012 WL 2370286 (D. Minn. Mar. 9, 2012) ..........................................12

*Leimkuehler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013) ...................................................................9, 10

*Loomis v. Exelon*,
  658 F.3d 667 (7th Cir. 2011) ....................................................... *passim*

*Martin v. CareerBuilder, LLC*,
  2020 WL 3578022 (N.D. Ill. July 1, 2020)..................................... *passim*

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...................................................................8, 14

*Neil v. Zell*,
    677 F. Supp. 2d 1010 (N.D. Ill. 2009) ..........................................................11, 12

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)........................................................................................10

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ...........................................................................3

*Ramos v. Banner Health*,
    2020 WL 2553705 (D. Colo. May 20, 2020)....................................................15

*Troudt v. Oracle Corp.*,
    No. 1:16-cv-00175, Dkt. 84 (D. Colo.).............................................................13

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd* 752 F. App'x 453 .......................9, 13, 15

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018) .....................................................................8

**Statutes**

29 U.S.C.
    § 1002(21)(A) .............................................................................................4, 10
    § 1002(34) ...................................................................................................3
    § 1002(38) ...................................................................................................2, 5, 11
    § 1104(a)(1)(B) ...........................................................................................7
    § 1105(c) .....................................................................................................2, 11
    § 1106(a) .....................................................................................................15
    § 1107(d)(3) ...............................................................................................3

## INTRODUCTION

This lawsuit is the latest in a recent deluge of complaints alleging that 401(k) plan fiduciaries violated ERISA because some plan investment options could have been cheaper or replaced with better performers. Most of these lawsuits contend that fiduciaries of large plans failed to leverage their size to secure lower-cost institutional funds, or stuffed the investment menus with dozens of options, overwhelming participants, increasing costs, and complicating fiduciary oversight.

This case is different. Plaintiffs criticize the Astellas Defendants[1] for taking the very same actions that other complaints (filed by Plaintiffs' same counsel) fault fiduciaries for *not* taking. Fiduciaries lose, in Plaintiffs' estimation, no matter what they do. For example, Plaintiffs do not dispute that the Astellas US Retirement and Savings Plan (the "Plan") has offered participants a diverse range of 13 to 16 investment options spanning the risk/return spectrum, made up almost exclusively of low-cost, institutional funds. Plaintiffs also concede that, in August 2016, the Astellas Defendants appointed a professional investment manager, Aon Hewitt Investment Consulting ("AHIC"), to assume fiduciary responsibility for selecting and monitoring the Plan's investments. Nevertheless, without alleging anything about the Astellas Defendants' actual decision-making process, Plaintiffs ask the Court to *infer* that they acted imprudently in violation of ERISA based on allegations that (1) the Plan has offered five Aon Hewitt-sponsored collective investment trusts since October 2016 (Count I), and (2) a handful of funds the Plan already offered in low-cost institutional vehicles could have been moved to even lower-cost share classes (Count II). Even if true, such allegations do not sustain a plausible breach of fiduciary duty claim under ERISA. The Complaint therefore should be dismissed for three primary reasons.

*First*, the "share-class" claim in Count II—the only challenge to decisions by the Astellas Defendants—is foreclosed by controlling Seventh Circuit precedent. *See Divane v. Northwestern*

---

[1] The Complaint ("Compl.") names Astellas US LLC ("Astellas"), its Board of Directors, and its Retirement Plan Administrative Committee ("Committee"), referred to collectively as the "Astellas Defendants."

*Univ.*, 953 F.3d 980 (7th Cir. 2020); *Loomis v. Exelon*, 658 F.3d 667 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). These cases hold that even when fiduciaries choose to offer predominately (higher cost) *retail*-class investment funds in a plan's investment menu, alongside some *institutional*-class funds and low-cost index funds, there can be no plausible inference that they breached their fiduciary duties by failing to offer reasonably priced options. These holdings are dispositive. Indeed, Plaintiffs' share-class allegations here are even more extreme than those the Seventh Circuit rejected in *Divane*, *Loomis*, and *Hecker*, because the Plan offered institutional-class funds for *all but one* investment option, *plus* low-cost index funds. The Court should reject Plaintiffs' invitation to disregard binding precedent and dismiss Count II.

*Second*, Count I's challenge to offering certain Aon Hewitt-sponsored funds concerns fiduciary decisions the Astellas Defendants did not make. As Plaintiffs concede, the Astellas Defendants delegated fiduciary responsibility for the selection and monitoring of all Plan investments to AHIC. The Astellas Defendants cannot be liable based solely on AHIC's actions. 29 U.S.C. § 1105(c). And even assuming Plaintiffs could state a viable claim against AHIC (which they cannot), the Complaint is devoid of allegations plausibly showing that the Astellas Defendants breached their separate, far more limited responsibility to monitor AHIC's actions in furtherance of the fiduciary responsibilities the Astellas Defendants lawfully delegated to it. *See* 29 U.S.C. §§ 1002(38); 1105(c). Thus, here again, Seventh Circuit precedent requires dismissal of Count I as to the Astellas Defendants. *See Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011).

*Third*, Counts III and IV, which allege that the Astellas Defendants caused the Plan to engage in "prohibited transactions" and failed to monitor other fiduciaries, respectively, are wholly derivative of Plaintiffs' other claims. They should be dismissed for the same reasons.

As a result of these essential failures, discussed further below and in AHIC's motion to dismiss, the Court should dismiss the Complaint with prejudice.

## BACKGROUND[2]

### I.     The Astellas US Retirement and Savings Plan.

The Plan is a defined contribution, "eligible individual account plan" under ERISA, through which participants may contribute a portion of their pay to save for retirement. Compl. ¶¶ 7-9; *see* 29 U.S.C. §§ 1002(34), 1107(d)(3). Astellas also pays matching and discretionary contributions, having generously contributed over $200 million toward its employees' retirement savings from 2014 through 2018. Exs. A-E, Form 5500s, at Fin. Stmts, Changes in Net Assets.[3]

### II.     The Plan's Menu of Investment Options.

The Plan allows participants to choose from a menu of investment options spanning a range of risk/return profiles. Each participant is responsible for deciding in which options to invest and may change those investments at any time. Compl. ¶ 9; Ex. F, 2020 SPD at 5.

The Plan currently offers 13 investment options. These include: (1) a suite of target-date funds, the JPMorgan SmartRetirement Passive Blend series, that automatically adjust their risk profile and asset allocation as investors move closer to their chosen retirement date;[4] (2) five State Street-managed index funds covering various asset classes (S&P 500, small/mid cap, international, real estate, and bonds); (3) four actively-managed equity funds (large cap, small/mid cap, international, and a Health Sciences Fund); and (4) three actively-managed bond and fixed-income funds. Ex. G, 2020 Fee Discl. ("404a-5 Discl."); *see also* Ex. E, 2018 Form 5500, at 27.[5]

---

[2] In ruling on a Rule 12(b)(6) motion, the Court may consider documents "referred to in the plaintiff's complaint [that] are central to" the claims. *Burke v. 401 N. Wabash Venture LLC*, 714 F.3d 501, 505 (7th Cir. 2013). The Court also may take judicial notice of facts that "are not subject to reasonable dispute," *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012), including matters of public record such as governmental filings, *see, e.g.*, *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008). In ERISA lawsuits, courts routinely consider plan documents and summaries, DOL filings, statutorily required disclosures, and fund prospectuses. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009).

[3] To reduce length, the Form 5500 exhibits include the cover filing, Schedule H, and the Plan's independent auditor report and financial statements. Specific page citations refer to the number at the bottom right.

[4] This target-date series is a suite of 10 funds, each associated with a different anticipated retirement date (*e.g.*, 2030, 2035, and so on). This Motion treats these target-date funds as a single Plan investment option.

[5] The Plan also offers a "brokerage window" that allows participants wanting even greater choice to invest in thousands of options outside of those designated in the Plan. *See* Ex. E, 2018 Form 5500, at 27.

The Plan offers these investments at low costs. All but one of the Plan's funds are offered through collective investment trusts ("CITs"), an institutional vehicle available only to retirement plans and other large investors.[6] Ex. E, 2018 Form 5500, at 15 (at year-end 2018, CITs held around $859 million of the Plan's $932 million total assets). The Plan's investments charge expense ratios ranging from just 0.06% to 0.82%.[7] Ex. G, 2020 404a-5 Discl. This allows participants who prioritize cost to select low-cost index funds, charging just 0.06% to 0.11%, while those preferring different strategies can choose other, low-priced options ranging from 0.26% to 0.82%. *Id.*

## III. Plan Improvements in 2016.

### A. The Committee Oversaw the Investment Menu Until August 2016.

From July 1, 2014, the start of the alleged class period, until August 25, 2016, the Committee was responsible for the Plan's investment menu, including selecting the funds offered, monitoring their performance, and removing or replacing funds, as it deemed necessary. Compl. ¶¶ 22, 25-26, 41, 102. The Committee engaged AHIC as an investment-advice fiduciary consultant to assist it in carrying out this role. *Id.* ¶¶ 25-26 (citing 29 U.S.C. § 1002(21)(A)(ii)).

During this period, the Plan included a range of investment options, much as it does now, offering 16 choices plus a brokerage window.[8] Participants could choose from the same JPMorgan target-date funds; four index funds in major asset categories (equity, international, real estate, and bonds); an Invesco-managed stable value fund; and ten actively-managed options covering various asset classes and strategies (including large cap value, large cap core, mid cap value, mid cap growth, small cap, extended market, bonds, and the T. Rowe Price Health Sciences Fund). *Id.*

---

[6] A CIT is a group of pooled assets held by a trust company. Compl. ¶ 44; *see* Investopedia, *Collective Inv. Fund* (May 25, 2020), https://www.investopedia.com/terms/c/collective-investment-fund.asp. CITs allow the trust company to combine assets from multiple large investors, securing greater economies of scale and, in turn, lower operational and administrative costs than mutual funds. *Id.*; *see Loomis*, 658 F.3d at 671-73 (describing differences between mutual funds and institutional vehicles like CITs).

[7] An "expense ratio" is an annual charge expressed as a percentage of assets invested. *E.g.*, a participant who invests $1,000 in a fund with a 0.10% expense ratio would pay an annual fee of $1 ($1,000 x .0010).

[8] Ex. A, 2014 Form 5500, at 29; Ex. B, 2015 Form 5500, at 29.

Unlike the plans at issue in *Divane*, *Loomis*, and *Hecker*, the Plan offered *every one* of these funds in institutional (as opposed to "retail") vehicles, with the lone exception of the Health Sciences Fund, which Plaintiffs concede did not offer any institutional version until March 2016. Compl. ¶ 99. Six of the Plan's 16 options were CITs, which held more than half of its total assets: the JPMorgan target-date funds, four BlackRock index funds, and the Invesco Stable Value Fund.[9] The nine remaining options were mutual funds offered in lower-cost institutional shares. *Id.*

Plaintiffs' sole challenge to the pre-2016 menu is that three of the 16 options—all three of which were institutional CITs—might have been offered for even cheaper prices. *Id.* ¶¶ 97, 115.

### B. AHIC Has Been Responsible for the Investment Menu Since August 2016.

Effective August 26, 2016, the Committee appointed AHIC—a leading investment firm already familiar with the Plan—as the discretionary investment manager under ERISA § 3(38), 29 U.S.C. § 1002(38). Compl. ¶¶ 22, 25-26. As Plaintiffs concede, the Committee delegated to AHIC all fiduciary "discretion over the selection, retention and removal of Plan investments." *Id.* ¶ 41; AHIC Ex. 1, IMA, Sched. A; *see also id.* ¶¶ 1(b), 8(e) (AHIC became "solely responsible for selection, evaluation and replacement of the plan menu and investment options").[10] These services include identifying potential investment managers for Plan funds; evaluating candidates using the Plan's Investment Policy Statement ("IPS"); selecting managers for each asset class; ongoing monitoring; and replacing managers as AHIC deems appropriate. *Id.* Sched. A, ¶ 2(a).

AHIC also committed to keeping the Committee informed. It agreed to provide quarterly reports about the Plan's funds; present at Committee meetings "to analyze and review the Plan," including an "appraisal of the investment results" and "a review of any changes" to the menu; and remain "available to answer questions" or "discuss topics of interest." *Id.* Sched. A, ¶ 3; *id.* ¶¶ 8(i),

---

[9] Ex. B, 2015 Form 5500, at 15, 29 (these CITs held $415.5 million of $733.7 million in total assets).

[10] The Complaint expressly incorporates the IMA by reference. Compl. ¶¶ 22, 41-42. To avoid duplication, the Astellas Defendants refer to AHIC's exhibits, as attached to the Declaration of W. Pollak, Dkt. 37.

9(f). AHIC acknowledged that it performs all services as a fiduciary for the Plan. *Id.* ¶ 9(k).

In exchange, the Plan agreed to pay AHIC an annual fee charged as a percentage of Plan assets within its control. AHIC Ex. 1, IMA Sched. C. The IMA makes clear, however, that this is the only compensation AHIC will receive for its services to the Plan, regardless of the investments it selects. Thus, if AHIC decides to offer an Aon Hewitt CIT vehicle as an investment option in the Plan, then "the fee payable to AHIC [under the IMA] shall be offset by any fees that AHIC receives for the consulting services that it performs for" that CIT Fund. *Id.*

Nowhere does the Complaint question the Committee's decision to delegate fiduciary authority to AHIC, nor AHIC's qualifications or expertise. Neither do Plaintiffs claim AHIC's fees ever were unreasonable. Rather, Plaintiffs challenge investment-selection decisions AHIC made *after* the Committee properly appointed it as the Plan's investment manager with fiduciary authority over the investment options on the Plan's menu. Compl. ¶¶ 43, 51, 64, 71, 78, 84, 109.

In October 2016, AHIC decided to modify the Plan's investment offerings. Compl. ¶¶ 43, 99. First, AHIC chose to retain several funds already offered in the Plan, namely: the JPMorgan target-date funds, the Health Sciences Fund, and the Invesco Stable Value Fund. *Id.*; AHIC Ex. 4, Trans. Guide at 11-12, 28.[11] Second, AHIC selected five State Street CIT index funds to replace four BlackRock CITs and one Vanguard mutual fund. Compl. ¶¶ 43, 51, 64, 71, 78, 84; AHIC Ex. 4, Trans. Guide at 10-11, 19-20, 26-29. None of these funds are affiliated with AHIC.

Third, AHIC simplified the Plan's remaining options by replacing eight actively-managed mutual funds with five diversified, multi-manager CITs offered by Aon Hewitt (collectively, the "CIT Funds"). Compl. ¶¶ 43, 51, 61, 71, 78, 84; AHIC Ex. 4, Trans. Guide at 9-11. Plaintiffs' repeated characterization of the CIT Funds as "proprietary" is not accurate. As Plaintiffs concede, AHIC does not manage the underlying investments within each CIT Fund. Compl. ¶ 47.[12] Rather,

---

[11] The Complaint incorporates the Transition Guide by reference. Compl. ¶¶ 74, n.21, 87, n.30; 98, n.33.

[12] In fact, the IMA *precludes* AHIC from selecting an affiliated sub-advisor. AHIC Ex. 1, IMA, ¶ 8(g).

AHIC—acting as a Plan fiduciary—can select *unaffiliated*, best-in-class managers for specific asset categories or strategies underlying each CIT Fund ("sub-advisors"), determine an appropriate allocation to each, and combine them to offer a single CIT Fund option in the Plan. AHIC Ex. 4, Trans. Guide at 17-19 (describing CIT Funds' "multi-manager approach," by which "[e]ach Sub-Advisor acts independently from the others and uses its own distinct investment style in selecting securities"); AHIC Ex. 5, 2016 Off. Stmt., at 3-22 (describing CIT Funds' investment strategy).[13]

Take the Large Cap Equity Fund, for example. AHIC chose this CIT Fund to replace two mutual funds with two distinct strategies: the T. Rowe Price Large Cap Core Growth Fund (a growth strategy), and the MFS Large Cap Value Fund (a value strategy). Compl. ¶ 51. Before this change, participants desiring large-cap equity exposure had to decide for themselves how to allocate among these funds, each subject to risks of a single manager and strategy. The Large Cap Equity Fund, however, offers access to several sub-advisors in a single fund, each independently fulfilling a distinct role in the overall strategy.[14] The other CIT Funds operate similarly.

## ARGUMENT

To state a claim of imprudence, Plaintiffs must plead facts plausibly showing the Astellas Defendants did not exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). ERISA's prudence standard is objective, focusing on the *process* by which decisions are made, rather than their results. *See, e.g.*, *Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020) (dismissing similar allegations based on *Divane*, 953 F.3d at 988).

Where, as here, the Complaint includes no allegations about the fiduciaries' actual process

---

[13] The Complaint incorporates the Offering Statement by reference. *See, e.g.*, Compl. ¶¶ 46, n.5; 59, n.8.

[14] In 2016, the Large Cap Equity Fund used four sub-advisors: Dodge & Cox Large Cap *Value* (22.5%); Fred Alger Capital Appreciation (a large-cap *growth* strategy) (22.5%); Parnassus Core Equity (a large cap *core* strategy) (30%); and a State Street S&P 500 *index* fund (25%). AHIC Ex. 5, 2016 Off. Stmt. at 10.

for making the challenged decisions, Plaintiffs must allege sufficient facts from which the Court may reasonably *infer* this process was flawed. *Divane*, 953 F.3d 988; *Martin*, 2020 WL 3578022, at *4; *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (affirming dismissal of similar claims, noting this "challenging" burden requires "us[ing] data about the selected funds and some circumstantial allegations about methods to show that a prudent fiduciary in like circumstances would have acted differently") (quotations omitted); *White v. Chevron Corp.*, 752 F. App'x 453, 454 (9th Cir. 2018) (affirming dismissal of similar claims; "plaintiffs cannot offer allegations that are merely consistent with [their] favored explanation but are also consistent with the alternative explanation"). The Complaint falls far short of satisfying these pleading standards.

## I. Seventh Circuit Precedent Precludes Plaintiffs' "Share-Class" Claim in Count II.

The Court can quickly dispose of Count II, Plaintiffs' *only* challenge to decisions the Astellas Defendants actually made. Ignoring that *all but one* option in the Plan since 2014 have been low-cost institutional funds, and without any critique of their *absolute* level of fees, Plaintiffs claim only that the Astellas Defendants acted imprudently by not offering a handful of these funds in allegedly lower-cost versions. Compl. ¶¶ 97, 99, 115. Under controlling precedent, these allegations, even if true, do not create a plausible inference of fiduciary imprudence.

The Seventh Circuit is clear that offering some more expensive share-class mutual funds—even at retail fees charged to individual investors, which was not done here—does not suggest fiduciary neglect, particularly when part of a diversified range of choices that includes at least some institutional options and low-cost index funds. *Divane*, 953 F.3d at 988-92; *Loomis*, 658 F.3d at 671-73 (rejecting the "argument that flopped in *Hecker*: that Exelon should have offered only 'wholesale' or 'institutional' funds," such that "the number of 'retail' funds must be zero"); *Hecker*, 556 F.3d at 585-87 (affirming dismissal where 23 of the plan's 26 options were retail funds). As one district court explained recently, "the Seventh Circuit has repeatedly cautioned that plaintiffs and courts cannot use ERISA to paternalistically dictate" a plan's menu "where a range

of investment options are on offer," and "has accordingly affirmed dismissal of ERISA complaints alleging that some combination of high fees and underperforming funds signaled imprudence, where the plans in question offered some cheaper alternatives." *Martin*, 2020 WL 3578022, at *4.

The same result is warranted here. Plaintiffs do not challenge the Plan's mix and range of options. And Plaintiffs concede that, at all relevant times, the Plan offered almost entirely low-cost CITs and institutional mutual funds, unlike the "retail" funds at issue in the cases above. That Plaintiffs identify some options that supposedly could have been even cheaper is not enough to state a plausible claim, as the Seventh Circuit held in *Divane*, *Loomis*, and *Hecker*.[15]

There are good reasons for this. As the Seventh Circuit recognizes, a higher-cost share class often contributes a portion of the fund's expense ratio to a plan service provider (like AHIC), allowing the plan to cover costs through a single fee that it otherwise would have to pay separately, known as "revenue sharing." *Divane*, 953 F.3d at 989-992 (finding "nothing wrong" with "paying recordkeeper costs through expense ratios," and affirming dismissal where defendants "provided prudent explanations" for offering a mix of institutional and retail shares); *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 912 (7th Cir. 2013) (explaining that although "some share classes are more expensive than others, . . . the cheapest option may not inevitably be the best," in part because "cheaper share classes" provide less revenue sharing); *White*, 2017 WL 2352137, at *14 (dismissing claims where revenue sharing was the "'obvious, alternative explanation' for why the [plan] included retail share classes of certain funds") (citation omitted).

Plaintiffs' own Complaint acknowledges these principles. For example, they challenge the

---

[15] Indeed, Plaintiffs' same attorneys have alleged elsewhere, including in *Loomis*, that prudent fiduciaries *should* use CITs instead of mutual funds to reduce costs. There, the Seventh Circuit confirmed that ERISA does not force a fiduciary to offer CITs, given differences from mutual funds; both are permissible options for a prudent fiduciary. 658 F.3d at 671-73; *see also White v. Chevron Corp.*, 2017 WL 2352137, at *11-14 (N.D. Cal. May 31, 2017) (dismissing fiduciary breach allegations by Plaintiffs' attorneys for failure to offer collective trusts), *aff'd* 752 F. App'x 453. Proving the adage that no good deed goes unpunished, Plaintiffs now attack the Plan's use of CITs, alleging not that their absolute level of fees were excessive as compared to mutual funds or other alternatives, but that these CITs could have been even cheaper still.

inclusion of "Class 1" units of the Aon Hewitt CIT Funds after 2016 because "Class I shares were available for 10 bps [0.10%] less." Compl. ¶ 99. But the same documents they cite confirm this 0.10% difference is attributable entirely to AHIC's "advisory" fee. AHIC Ex. 5, 2016 Off. Stmt. at 53. As explained, this charge is credited against the service fee the Plan owes under the IMA. *Supra* at 6. If AHIC's service fee is not paid as part of the CIT Funds' expense ratios, it still must be paid separately. *Id.*; AHIC Ex. 5, 2016 Off. Stmt. at 53. Conversely, if AHIC receives *more* from the CIT Funds than is due under the IMA, the excess goes back to the Plan. *Id.* That is what the Seventh Circuit described in *Divane*, 953 F.3d at 989-992, and *Leimkuehler*, 713 F.3d at 912. *See also Martin*, 2020 WL 3578022, at *4-5 (dismissing share-class fiduciary breach claims for similar reasons). Plaintiffs' share-class allegations in Count II therefore fail as a matter of law.

## II. Count I Does Not State a Plausible Claim That the Astellas Defendants Breached Any Fiduciary Duty with Respect to the Aon Hewitt CIT Funds Offered Through the Plan.

The remainder of the Complaint (and Plaintiffs' primary focus) concerns the selection and retention of five Aon Hewitt CIT Funds for the Plan investment menu since October 2016. Compl. ¶¶ 106-12. However, Count I fails both because the Astellas Defendants did not make these decisions and because the Complaint fails to state an underlying breach against AHIC in any event.

### A. The Astellas Defendants Did Not Select or Retain the CIT Funds.

Count I fails at the threshold because Plaintiffs sue the Astellas Defendants for decisions they did not make. Under ERISA, one is a fiduciary only "to the extent" he or she performs fiduciary activities. 29 U.S.C. § 1002(21)(A). Plaintiffs must first establish the scope of the Astellas Defendants' fiduciary role with respect to the actions they challenge, which the Complaint largely ignores. *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) (the "threshold question" in all ERISA fiduciary breach cases is whether a defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"); *Leimkuehler*, 713 F.3d at 913; *Hecker*, 556 F.3d at 583 ("There is an important difference between

an assertion that a firm exercised 'final authority' over the choice of funds, on the one hand, and an assertion that a firm simply 'played a role' in the process, on the other hand.").

Plaintiffs concede that, as of August 2016, the Committee delegated "final authority" over the Plan's investment options to AHIC. *Supra* at 5. Thus, AHIC alone was responsible for selecting, monitoring, and replacing the Plan's investment options in accordance with ERISA's fiduciary duties. ERISA expressly permits delegation of fiduciary responsibilities, making clear that a delegating fiduciary "shall not be liable for an act or omission" by the appointee alone, absent some breach of an independent duty in overseeing or continuing the appointment. 29 U.S.C. § 1105(c). By delegating authority to AHIC, the Astellas Defendants thus became "appointing fiduciaries" under ERISA, meaning their *only* relevant fiduciary responsibility is to monitor AHIC's performance of its delegated services. *See, e.g.*, *Howell*, 633 F.3d at 573 (rejecting claims against directors, where only fiduciary role was to appoint committee); *Catalfamo v. Sears Holding Corp.*, 2018 WL 10560956, at *6-8 (N.D. Ill. Aug. 21, 2018) (same, as to claims against CEO); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023 (N.D. Ill. 2009) ("By appointing GreatBanc as fiduciary, the Board of Directors removed itself from direct responsibility for the [plan's] actions.").

This duty to monitor is much narrower than a fiduciary's primary duties in selecting or monitoring an investment. ERISA contemplates that a named fiduciary—often a committee of the plan sponsor's employees—may prudently rely on expert managers to make investment decisions. 29 U.S.C. § 1002(38). The statute does not require an appointing fiduciary to second-guess or reweigh every decision by the appointee. *See Howell*, 633 F.3d at 573. To the contrary, imposing "a duty to monitor that would require every appointing" fiduciary to be so heavily involved would entirely "defeat the purpose" of engaging (and paying) a delegated fiduciary in the first place. *Id.*

Nothing alleged in the Complaint permits a plausible inference that the Astellas Defendants breached the residual fiduciary obligations they retained after August 2016. Rather, Plaintiffs rely entirely on the same allegations supporting their claim against AHIC, but those facts shed no light

-11-

on the Astellas Defendants' process for monitoring AHIC.[16]  For example, Plaintiffs allege that *all*
"Defendants failed to conduct an independent investigation into the merits of the Aon Hewitt [CIT
Funds] prior to placing them in the Plan."  Compl. ¶ 48.  But even if this conclusory allegation
were true, the Astellas Defendants did not "place" the CIT Funds in the Plan, nor did they have
any fiduciary duty to "investigat[e]" the investments themselves; *that is what they appropriately
hired AHIC to do*.  And nowhere do Plaintiffs allege, for example, that the Astellas Defendants
failed to hold AHIC to its contractual promise to give the Committee quarterly updates and
otherwise keep it informed.  *Supra* at 5-6.  The Complaint is devoid of any well-pleaded facts
plausibly suggesting that the Astellas Defendants breached the limited responsibility they retained
after August 2016, and thus Count I must be dismissed with respect to the Astellas Defendants.

**B.     Count I Also Fails Against the Astellas Defendants Because Plaintiffs Do Not
State a Plausible Underlying Fiduciary Breach Against AHIC.**

Even if Plaintiffs could state a failure-to-monitor claim by simply repurposing the same
facts underpinning their claim against AHIC, Count I still fails because Plaintiffs do not plausibly
allege any fiduciary breach by AHIC with respect to the CIT Funds.  Absent an underlying breach,
there can be no derivative claim for the Astellas Defendants' alleged failure to monitor.  *See, e.g.*,
*Catalfamo*, 2018 WL 10560956, at *5 (collecting cases).  AHIC's Motion explains in more detail
why Count I does not allege a fiduciary breach, and the Astellas Defendants adopt these arguments.
The Astellas Defendants write further to reinforce certain points particularly relevant to them.

Count I contends that the CIT Funds are so inferior that no prudent fiduciary would have
offered them in the Plan.  This claim rests on three central "facts":  the CIT Funds (1) are affiliated
with AHIC;  (2) had fewer than five years of performance history;  and (3) "underperformed"
compared to cherry-picked alternative funds or benchmarks.  None of these "facts," even if proven,

---

[16] *See, e.g.*, *Johnson v. Evangelical Lutheran Church*, 2012 WL 2370286, at *9 (D. Minn. Mar. 9, 2012)
(dismissing failure-to-monitor claims where complaint did not allege *how* appointing fiduciary violated
duty to monitor); *Neil*, 677 F. Supp. 2d at 1023-24 (dismissing similar claims against plan committee that
alleged "only in the most general terms" that appointing fiduciaries breached a duty to monitor).

creates a plausible inference that AHIC or the Astellas Defendants acted imprudently.

*First*, Plaintiffs' attempt to label this as a "proprietary funds" lawsuit is misleading. For one, nothing requires AHIC to select only Aon Hewitt CIT Funds for the Plan, nor has it ever done so. As Plaintiffs concede, AHIC chose *unaffiliated* options for eight of the 13 funds it selected in 2016. *Supra* at 6.[17] In any event, AHIC does not manage the underlying investments in each CIT Fund. Rather, the CIT Funds merely provide the *vehicle* through which AHIC, acting as a Plan fiduciary, can select unaffiliated strategies for a single, diversified, low-cost option offered to Plan participants. *Id.* at 6-7. Using a CIT vehicle leverages AHIC's scale, allowing it to secure these unaffiliated funds for lower costs than if it offered them as independent options, and it simplifies the Plan lineup as explained above. *Id.* Nor does AHIC receive additional fees for offering an Aon CIT Fund in the Plan. The Plan pays AHIC the *same* service fee no matter what funds it selects, and Plaintiffs do not claim that fee is unreasonable. *Id.* Nothing about AHIC's selection of CIT Funds for some, but not nearly all, of the Plan's investment options supports a plausible claim for breach of fiduciary duty against AHIC, let alone the Astellas Defendants.

*Second*, Plaintiffs' criticism of the CIT Funds' performance history fails because it is rooted in the same mischaracterization of the CIT vehicle above. Plaintiffs focus only on the top-level CIT vehicles, ignoring the history of the underlying *strategies* and managers in which those CIT Funds invest. Plaintiffs do not—and cannot—challenge those performance histories, given that the sub-advisors include "blue chip" firms with established strategies, such as Dodge & Cox, Goldman Sachs, JPMorgan, State Street, PIMCO, and others.[18]

---

[17] Plaintiffs emphasize language in the IMA that could allow AHIC to offer only Aon Hewitt CIT Funds. Compl. ¶ 42. But this term is *permissive*, not restrictive—and AHIC is subject to ERISA's fiduciary duties in any event, meaning it may offer CIT Funds only if doing so is otherwise prudent. *Cf. White*, 2017 WL 2352137, at *4 (ERISA's duty of prudence trumps a fiduciary's duty to comply with plan documents). That AHIC never actually limited the Plan to CIT Funds only underscores the implausibility of Plaintiffs' claims.

[18] Plaintiffs' attorneys have maintained elsewhere that a fund needs only *three years* of history before being offered in a plan, but they do not make that allegation here because the CIT Funds met that standard when AHIC added them. *See, e.g.*, *Troudt v. Oracle Corp.*, No. 1:16-cv-00175, Dkt. 84, ¶ 65 (D. Colo.).

*Third*, Plaintiffs' allegations that the CIT Funds underperformed certain alternatives or benchmarks, even if true, do not state a claim. ERISA requires "prudence, not prescience," *DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.3d 457, 465 (7th Cir. 1990), and Plaintiffs cannot suggest imprudence by alleging, with hindsight, that returns could have been better, *see, e.g.*, *Jenkins v. Yager*, 444 F.3d 916, 924-26 (7th Cir. 2006) (even "investment *losses* are not proof" of a fiduciary breach) (emphasis added). At a minimum, Plaintiffs "must provide a sound basis for comparison—a meaningful benchmark." *Meiners*, 898 F.3d at 822-23. This standard demands scrutiny of a plaintiff's hand-picked comparators—even at the pleading stage—because the "fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether" the fiduciary process was flawed. *Id.* (affirming dismissal where comparator funds were inappropriate because they had a 10% different allocation to bonds).

Plaintiffs' "underperformance" allegations suffer from the same mischaracterization of the CIT Funds' structure. As AHIC's Motion explains further, Plaintiffs use inapt benchmarks and compare the diversified, multi-manager CIT Funds to single-manager alternatives with fundamentally different strategies. The CIT Funds are not expected to perform like those other funds, and thus no inference of imprudence can reasonably be drawn from the fact that they ultimately did perform differently. Regardless, the Astellas Defendants are appointing fiduciaries and are not responsible for the Plan's investment-monitoring process. Nothing Plaintiffs allege suggests the Astellas Defendants were unaware of the CIT Funds' performance generally or that those Funds' returns were so dismal or unexpected in light of their actual strategies that the Astellas Defendants should have intervened and removed AHIC as investment manager. *Supra* at 10-12.

Count I does not state a claim against the Astellas Defendants and should be dismissed.[19]

---

[19] While unclear, Count I may also claim the Astellas Defendants breached ERISA's duty of loyalty. Compl. ¶¶ 109, 115. Plaintiffs allege nothing to suggest the Astellas Defendants took any purposeful action to benefit itself, and they cannot state a plausible claim merely by "rid[ing] the coattails of [their] duty-of-

**III.    Counts III and IV Are Duplicative of Counts I and II and Fail for the Same Reasons.**

Piggybacking on their other allegations, Count III claims the Astellas Defendants "caused the Plan to use Aon Hewitt [CITs] and to pay Plan assets to Aon Hewitt," resulting in "prohibited transactions" with a "party in interest." Compl. ¶¶ 118-23 (citing 29 U.S.C. § 1106(a)).[20]  This claim is derivative of Count I and fails for similar reasons.  First, the Astellas Defendants did not "cause" the allegedly "prohibited" transactions, *i.e.*, offering the CIT Funds.  The only transaction the Astellas Defendants "caused" was AHIC's appointment as Plan investment manager—and the only Plan assets involved in that transaction pay AHIC's negotiated fee under the IMA.  Nowhere do Plaintiffs claim AHIC's service fee is unreasonable or prohibited by Section 406(a), nor can they.  AHIC was not yet a "party in interest" with respect to those services when entering the IMA, and "it would be nonsensical to let a party state a claim for a prohibited transaction in violation of ERISA merely by alleging a plan paid a person for a service." *Divane v. Northwestern Univ.*, 2018 WL 2388118, at *10 (N.D. Ill. May 25, 2018), *aff'd* 953 F.3d 980; *Ramos v. Banner Health*, 2020 WL 2553705, at *54 (D. Colo. May 20, 2020) (collecting cases).  Regardless, Count III falls along with Count I.  *See Divane*, 953 F.3d at 992-93 (rejecting plaintiffs' attempt to "repackage their imprudent fiduciary claims as prohibited transaction claims" based on the same underlying facts).

Likewise, Count IV's "failure to monitor" claim is not only derivative, but is wholly duplicative, of Counts I and II with respect to the Astellas Defendants, whose *only* fiduciary duty relevant to Count I was to monitor AHIC.  *Supra* 10-12.  Count IV therefore fails for the same reasons. *See, e.g.*, *Catalfamo*, 2018 WL 10560956, at *5; *White*, 2017 WL 2352137, at *22.

**CONCLUSION**

For all of these reasons, the Court should dismiss the Complaint with prejudice.

---

prudence allegations." *Ferguson v. Ruane Cunnif & Goldfarb Inc.*, 2019 WL 4466714, at *4 (S.D.N.Y. Sept. 18, 2019); *see also Martin*, 2020 WL 3578022, at *6; *Catalfamo*, 2018 WL 10560956, at *5-6.

[20] Count III also alleges a claim under ERISA § 406(b), but this claim is directed only at AHIC.

Dated:  August 31, 2020

  /s/  *Matthew A. Russell*          

Christopher Boran
Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Telephone:  312.324.1000
christopher.boran@morganlewis.com
matthew.russell@morganlewis.com

Jeremy P. Blumenfeld (*pro hac vice application forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  215.963.5000
jeremy.blumenfeld@morganlewis.com

*Attorneys for Defendants Astellas US LLC, its Board of Directors, and the Astellas Retirement Plan Administrative Committee*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 31st day of August, 2020, a true and correct copy of the

foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF, which

will send notification to all counsel of record.


<u>/s/  *Matthew A. Russell*</u>
Matthew A. Russell