IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN WOERTH MILLER, FAURUM SANKARI, ANGELA HEIMGARTNER, MICHAEL WACHALA, MARY BETH PREUSS, ERIC TERHAERDT, PATRICIA WALSH, and SHEILA EARLY, individually and as representatives of classes of participants and beneficiaries on behalf of the Astellas US Retirement and Savings Plan, <br><br> Plaintiffs, <br><br> v. <br><br> ASTELLAS US LLC, THE BOARD OF DIRECTORS OF ASTELLAS US LLC, THE ASTELLAS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE, AON HEWITT INVESTMENT CONSULTING, INC. (n/k/a AON INVESTMENTS USA, INC.), and JOHN DOES 1-14, <br><br> Defendants. | No. 20 C 3882 <br><br> Judge Ronald A. Guzmán |

**MEMORANDUM OPINION AND ORDER**

     For the reasons explained below, the motion of defendant Aon Hewitt Investment Consulting, Inc. to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part; the motion of defendants Astellas US LLC, the Board of Directors of Astellas US LLC, and the Astellas Retirement Plan Administrative Committee to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part; and the motion of defendant Aon Hewitt Investment Consulting, Inc. for leave to file certain materials under seal is denied.

**BACKGROUND**

     This is an ERISA action brought individually and on behalf of a putative class by Susan Woerth Miller, Faurum Sankari, Angela Heimgartner, Michael Wachala, Mary Beth Preuss, Eric Terhaerdt, Patricia Walsh, and Sheila Early, who are participants in the retirement plan (the "Plan") of Astellas US LLC ("Astellas"). Defendants are Astellas, its Retirement Plan Administrative Committee ("the "Committee"), and its Board of Directors (collectively, the "Astellas Defendants"), as well as Aon Hewitt Investment Consulting, Inc., now known as Aon

Investments USA, Inc. ("Aon" or "Aon Hewitt"), the Plan's investment manager. Plaintiffs allege that the defendants violated their fiduciary duties of prudence and loyalty by investing in and retaining five Aon collective investment trusts; that the Astellas Defendants caused the Plan to pay unreasonable investment management fees through the offering of higher-cost share classes for certain investments; and that the Astellas Defendants failed to properly monitor the fiduciaries. Plaintiffs claim that the defendants' actions caused Plan participants to suffer millions of dollars of losses in their retirement savings.

The primary allegations of the complaint are as follows. Astellas is a pharmaceutical product manufacturing company headquartered in Northbrook, Illinois. The Plan is a defined-contribution, individual-account, employee pension benefit plan in which certain employees of Astellas and its affiliates can participate. As of December 31, 2013, the Plan had 3,796 participants with account balances and $623 million in net assets. By December 31, 2018, the Plan had grown to 3,967 participants with account balances and $932 million in net assets. Its size gives it substantial bargaining power to command low investment-management fees. In 2010, Astellas hired Aon, then known as Hewitt EnnisKnupp, Inc., to provide fee-based investment advice to the Plan. Effective August 26, 2016, Astellas and the Committee expanded that responsibility and appointed Aon as the Plan's discretionary investment manager, with the power to select, manage, retain, and remove Plan investments. Astellas and the Committee agreed to allow Aon to select for the Plan exclusively from Aon's proprietary collective investment trusts ("CITs")[1] and that Aon had no obligation to consider non-proprietary investment vehicles for the Plan. Astellas did, however, retain the authority to request that Aon keep any Plan investment not recommended by Aon for inclusion in the Plan.

The Plan was restructured in October 2016. Defendants removed eight of the Plan's nine mutual funds and replaced them with six CITs, five of which were Aon's proprietary CITs: the Aon Hewitt Large Cap Equity Fund, the Aon Hewitt Small & Mid Cap Equity Fund, the Aon Hewitt Non-U.S. Equity Fund, the Aon Hewitt Inflation Strategy Fund, and the Aon Hewitt Core Plus Bond Fund (collectively, the "Aon CITs").[2] Five of the Plan's BlackRock CITs were also replaced by CITs managed by State Street Global Advisors Trust Company.

Aon Trust Company LLC ("Aon Trust") maintains and is the trustee of the Aon CITs. Aon Trust and Aon Hewitt are both wholly-owned subsidiaries of Aon Consulting, Inc. Aon Trust and Aon Hewitt did not offer CITs to investors until October 2013, and prior to that time, Aon Hewitt had not served as an investment manager of any CIT provided to defined contribution plans. Plaintiffs therefore allege that Aon Hewitt "had a limited track record as an investment manager prior to the inclusion of the Aon Hewitt funds in the Plan." (ECF No. 1, Compl. ¶ 46.) Aon Hewitt "does not actually manage the assets" of the Aon CITs. (*Id.* ¶ 47.)

---

[1] According to plaintiffs, collective investment trusts are "investment vehicles maintained by a bank that consist of pooled assets of 'retirement, pension, profit sharing, stock bonus or other trusts exempt from Federal income tax[,]' . . . similar to a mutual fund or other pooled investment vehicle" because they also invest "in a variety of securities to create a diversified investment portfolio." (ECF No. 1, Compl. ¶ 44 (citation omitted).)

[2] These funds no longer include the "Aon Hewitt" designation in their names.

Rather, Aon Hewitt hires one or more unaffiliated investment managers, also known as sub-advisors, to do the actual investing. Upon the hiring of the sub-advisor, the assets of the Aon CITs are invested in other vehicles, such as a mutual fund or a CIT, managed by the sub-advisor. Aon Hewitt collects an investment advisory fee from investors for its services in hiring the sub-advisor, and Aon Trust charges an additional trustee fee. Plaintiffs assert that "[t]his structure results in investors paying multiple layers of fees." (*Id.*)

Plaintiffs allege that it was imprudent and disloyal to select the Aon CITs and retain them in the Plan because, at the time they were added to the Plan, Aon had limited investment-management experience, the Aon CITs had a "limited performance history of less than three years," and during that limited history, they had underperformed their benchmarks and the comparable mutual funds that were replaced by the Aon CITs; after the Aon CITs were included in the Plan, they continued to substantially underperform comparable funds; and Aon had a conflict of interest because it had a duty to act in the exclusive best interest of Plan participants yet also sought to benefit itself by causing the Plan to invest in its own funds, thus increasing its business and revenues. (*Id.* ¶¶ 46-48.) Plaintiffs further allege that the Astellas Defendants breached their fiduciary duties by failing to monitor Aon and by causing the Plan to invest in and retain higher-cost share classes, when lower-cost shares were available, in certain Plan investment options.

The complaint contains claims against all defendants for breach of fiduciary duties in violation of 29 U.S.C. § 1104(a)(1) (Count I), and prohibited transactions, in violation of 29 U.S.C. § 1106 (Count III), based on the selection and retention of the Aon CITs in the Plan. The complaint also contains claims against the Astellas Defendants for breach of fiduciary duties in violation of 29 U.S.C. § 1104(a)(1), based on the selection and retention of investment options that caused the Plan to pay allegedly unreasonably high investment management fees (Count II) and the alleged failure to monitor their appointees (Count IV). Plaintiffs seek to represent and certify two classes: (1) the "Aon Hewitt Collective Investment Trust Class," which would consist of all participants in and beneficiaries of the Plan who from October 3, 2016 through the date of judgment invested in one or more of the Aon CITs and were injured by (a) the breaches of fiduciary duties alleged in Counts I and IV of the complaint, or (b) the prohibited transactions alleged in Count III of the complaint, excluding defendants and members of the Committee and the Board of Directors; and (2) the "Investment Management Fee Class," which would consist of all participants in and beneficiaries of the Plan from July 1, 2014 through the date of judgment who invested in one or more Plan investments for which a lower-cost share class was available and were injured by the breaches of fiduciary duties alleged in Counts II and IV of the complaint, excluding defendants and members of the Committee and the Board of Directors. (*Id.* ¶ 102.)

Aon moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The Astellas Defendants separately move to dismiss the complaint under the same rule.

## DISCUSSION

For purposes of a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiffs, accepts as true all well-pleaded facts therein, and draws all reasonable inferences in plaintiffs' favor. *See Bell v. City of Chi.*, 835 F.3d

736, 738 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A.    **Exhibits**

    1.    **Aon's Exhibits**

Aon submits twenty-five exhibits that it says the Court is able to consider, for various reasons, on its motion to dismiss. The Court disagrees as to all but two of the exhibits. When ruling on a motion to dismiss, the court may consider "documents attached to the complaint, documents central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (internal punctuation and citation omitted); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). None of the documents are attached to the complaint, so they must meet one of the other two criteria. Exhibits 1 through 6 are documents related to the Plan. Aon contends that the Court may consider them because they are central to the complaint and referred to in it. This is true only of Exhibit 1, the Investment Management Agreement (the "IMA") among Aon, Astellas, and the Committee (ECF No. 35), which is referenced in paragraph 22 of the complaint and is central to plaintiffs' claims, and Exhibit 5, an Aon CIT Offering Statement dated October 2016 (ECF No. 37-5), which is referenced in multiple paragraphs of the complaint and is central to plaintiffs' claims. Exhibit 6 is a similar Aon CIT Offering Statement, dated September 2013, but this particular document is not referenced in the complaint. Exhibits 2 and 3, which are Investment Policy Statements for the Plan dated October 2016 and March 2020, respectively, are not mentioned in the complaint, nor are they central to plaintiffs' claims. Exhibit 4, a Plan booklet titled "Your Guide to the Upcoming 401(k) Transition," which is undated but appears to be from 2016, is cited three times in the complaint but cannot be said to be "central" to plaintiffs' claims. Therefore, of the Plan-related documents, the Court will consider only Exhibits 1 and 5.

Exhibits 7 through 12 are reports published by Morningstar that provide information about and financial assessments of the Aon CITs and a Vanguard fund that is mentioned in the complaint. Aon contends that the Court may take "judicial notice" of the reports because they are "specifically referenced and relied upon" in the complaint. (ECF No. 33, Aon's Mem. Supp. Mot. at 7 n.14.) This argument seems to conflate the distinct concepts of incorporation by reference and judicial notice. Judicial notice can be taken of "historical documents, documents contained in the public record, and reports of administrative bodies." *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). The Morningstar reports fall into none of these categories. Furthermore, the reports are not "specifically referenced" in the complaint. While plaintiffs mention "Morningstar" classifications and "Morningstar" generally in their allegations that compare the performance and fees of the Aon CITs to those of other funds, plaintiffs do not refer to any of the reports, and the exact sources of plaintiffs' statements regarding Morningstar

are unclear. Aon contends that under the incorporation-by-reference exception to Rule 12(d), plaintiffs cannot survive a motion to dismiss by "failing to attach relevant documents" to their complaint, (Aon's Mem. Supp. Mot. at 7 n.14), but the Morningstar reports are not even mentioned in the complaint, nor are the allegations concerning the information from Morningstar central to plaintiffs' claims. Accordingly, the Court will not consider Exhibits 7 through 12 for purposes of the instant motions.

Exhibits 13 through 25 are prospectuses for various non-Aon funds that plaintiffs compare to the Aon CITs in the complaint. Aon asserts that the Court "may consider prospectuses . . . on a motion to dismiss," (Aon's Mem. Supp. Mot. at 6 n.12), citing three decisions: *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823-24 (8th Cir. 2018); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); and *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008). The Court is unpersuaded. *Meiners* is inapposite because the Eighth Circuit found in that case that the prospectuses at issue were "necessarily embraced by" the pleadings. 898 F.3d at 823. That is not the case here; the complaint does not refer to the prospectuses even in passing. *Hecker* does not support Aon's argument because the Seventh Circuit did not broadly hold that prospectuses can or must always be considered on a motion to dismiss. Rather, because the complaint in that case was based on the alleged inadequacy of disclosures to plan participants, the Seventh Circuit held that the district court did not abuse its discretion when it chose not to convert a motion to dismiss into a motion for summary judgment and considered prospectuses for the defendants' funds for the "limited purpose" of evaluating the disclosures. 556 F.3d at 582-83. And *Pugh* does not pertain to prospectuses; the Seventh Circuit merely said that courts may take judicial notice of publicly-reported stock prices. 521 F.3d at 691 n.2. The Court will not consider Exhibits 13 through 25 with respect to the instant motions.

### 2. Defendants' Motion to Seal

Defendants move for leave to file the Investment Management Agreement, Exhibit 1, under seal and for leave to redact from the publicly-available version of Aon's memorandum of law in support of its motion two brief references to confidential pricing terms contained in the IMA. Defendants say that they maintain the specific terms of the IMA as confidential in the regular course of business and that the terms are not available to competitors of Aon or other third parties, and therefore there is good cause for allowing the IMA and references to its pricing terms to be filed under seal.[3] In the Seventh Circuit, documents that are placed in the court record "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002). "It is not enough to simply assert that disclosure would place a party at a competitive disadvantage. A party seeking [to file a document under seal] must explain how disclosure would cause harm and why the harm predicted warrants secrecy." *Caprarola v. Helzberg's Diamond Shops, Inc.*, No. 13 C 6493, 2014 WL 12936983, at *3 (N.D. Ill. May 1, 2014) (internal punctuation and citation omitted).

---

[3] Defendants also note that the IMA requires the parties thereto to keep "all information supplied in connection" with that agreement as confidential, (ECF No. 36, Defs.' Mot. Seal at 2), but, as plaintiffs point out, that contention misses the mark because that language does not pertain to the terms of the IMA itself.

5

Plaintiffs object to defendants' motion primarily on the grounds that defendants have not shown that the IMA is a genuine trade secret; that Aon has already publicly disclosed its compensation in Exhibit 5, the Offering Statement, given its statement that its compensation is embedded in its expense ratio; and defendants have not shown that Aon would suffer competitive harm if the IMA is publicly disclosed. In reply, defendants argue, among other things, that courts in this circuit have previously found that the presence of confidential business information in a document constitutes good cause for sealing it, and that disclosing Aon's expense ratio is not the same as disclosing its fee for serving as a delegated fiduciary.

The Court agrees with plaintiffs that defendants have failed to demonstrate that the IMA is a genuine trade secret. Defendants do not attempt to show that the IMA contains "a trade secret or something comparable whose economic value depends on its secrecy," *Baxter*, 297 F.3d at 547, nor do they argue even in a conclusory fashion that disclosure would result in a competitive disadvantage. Moreover, Aon has cited the terms of the IMA as support for its motion, and the Court has considered that document in rendering its decision. The motion for leave to file the IMA under seal and to publicly redact portions of Aon's memorandum is denied.

**B.     Count I - Breach of Fiduciary Duties - Selection and Retention of Aon CITs**

Count I is a claim under § 1104(a)(1) against all defendants for breach of the fiduciary duties of prudence and loyalty, based on the selection and retention of the Aon CITs as investment options for the Plan. In relevant part, § 1104(a)(1) holds plan fiduciaries to a "prudent man standard of care":

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a)(1)(A), (B). "In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (internal punctuation and citation omitted). "When claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane v. Nw. Univ.*, 953 F.3d 980, 988 (7th Cir. 2020). Because ERISA plaintiffs generally have no access to the inside information regarding a fiduciary's decision-making process, they need not plead such details, as long as the facts alleged tell a plausible story. *Allen*, 835 F.3d at 678.

1.  **Aon's Motion**

Aon argues that plaintiffs fail to state a claim that Aon breached its fiduciary duties. Plaintiffs contend that the following combination of allegations allows for a plausible inference of imprudence and disloyalty: (1) the Aon CITs are affiliated with Aon, and thus Aon had a "significant conflict of interest" because it would benefit from having Plan assets as "seed money" for its investment-management business; (2) Aon was an inexperienced investment manager and the Aon CITs had less than five years of performance history; and (3) prior to their inclusion in the Plan, the Aon CITs underperformed the comparable mutual funds that they replaced. (ECF No. 55, Pls.' Mem. Opp'n Aon's Mot. at 9-14.) In the Court's view, these allegations, taken together, are sufficient to plausibly allege Aon's violation of the duties of prudence and loyalty. *See Turner v. Schneider Elec. Holdings, Inc.*, No. 20-11006-NMG, 2021 WL 1178308, at *3-4 (D. Mass. Mar. 26, 2021) (holding that plaintiffs with highly similar allegations stated a claim against Aon for breach of fiduciary duties); *Pledger v. Reliance Tr. Co.*, 240 F. Supp. 3d 1314, 1325-26 (N.D. Ga. 2017); *Krueger v. Ameriprise Fin., Inc.*, No. 11-CV-2781 (SRN/JSM), 2012 WL 5873825, at *10-11 (D. Minn. Nov. 20, 2012).

Aon devotes most of its opening brief to its primary contention that plaintiffs fail to state a claim for imprudence. The duty of prudence "includes choosing wise investments and monitoring investments to remove imprudent ones." *Allen*, 835 F.3d at 678. The prudence standard is process-based, not outcome-based. *Martin v. CareerBuilder, LLC*, No. 19 C 6463, 2020 WL 3578022, at *4 (N.D. Ill. July 1, 2020). Aon presents an extensive argument that plaintiffs' comparisons of the Aon CITs to other funds for purposes of alleging underperformance are flawed because the funds that plaintiffs chose as comparators have different investment strategies and asset allocations. Aon says that because plaintiffs compare apples and oranges, they have failed to plead facts from which it can be reasonably inferred that Aon's choice to offer its own funds was objectively unreasonable and thus a breach of the fiduciary duty of prudence. The problem with this line of reasoning, however, is that Aon relies heavily on exhibits that are outside the pleadings and have been excluded from consideration. As plaintiffs note, Aon raises myriad factual disputes regarding the aptness of the comparisons. These are inquiries that are inappropriate to resolve at this stage of the case. *See Brown-Davis v. Walgreen Co.*, No. 19 C 5392, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020) (citing *Diebold ex rel. ExxonMobil Sav. Plan v. N. Tr. Invs., N.A.*, No. 09 C 1934, 2010 WL 3700387, at *3 (N.D. Ill. Sept. 7, 2010) ("[W]hether a particular investment choice was imprudent is a particularly fact-sensitive inquiry that would not be appropriate to resolve on a motion to dismiss.")). The issues, as framed and briefed by Aon, might be appropriately addressed on a summary judgment motion, but the Court will not entertain such a motion until discovery has been completed.

Aon further asserts that plaintiffs' allegations that the Aon CITs underperformed their benchmarks for two or three years prior to their selection in 2016 cannot support an inference of imprudence because, "as a legal matter, it is only when a fund persistently falls short of its benchmark by substantial margins that courts have been willing to consider inferring (from that fact alone) that a fiduciary's process was defective." (Aon's Mem. Supp. Mot. at 16 (emphasis omitted).) But Count I is not premised on underperformance alone, and the three out-of-circuit district-court decisions cited by Aon do not stand for the proposition that there is any particular durational threshold required for underperformance allegations to contribute to an inference of

imprudence. Perhaps this short window of alleged underperformance ultimately may not be of much help to plaintiffs in proving their claim, but it is not, as a matter of law, too fleeting to support the inference at all. The Court also rejects Aon's contention that the Aon CITs were "managed by experienced, best-of-breed asset managers" and that there is "no legal basis for complaining about the adoption of new investment vehicles for established managers or strategies." (*Id.* at 16-17.) The Court cannot determine on a motion to dismiss that the managers Aon chose were "best of breed," and Aon cites no authority for the proposition that as a matter of law, the "relatively recent vintage" of the Aon CITs is "inconsequential under ERISA," (*id.* at 17). Like Aon's primary argument, the argument that the presence of an "established" investment manager counterbalances the fledgling nature of a fund is beyond the scope of a motion to dismiss.

Aon's next argument is that plaintiffs fail to plausibly allege a breach of the duty of loyalty because the allegation that Aon derived a benefit from selecting the Aon CITs for the Plan is "directly contradicted by" the IMA (an exhibit that the Court has determined that it can consider on the instant motion, see *supra*). (*Id.* at 18.) The IMA provides in pertinent part:

> Fees payable by [Astellas] hereunder do not include or cover the fees payable in connection with the operation of any Collective Trust or investment fund thereunder. [Astellas] shall be exclusively responsible for compensating the trustee of any Collective Trust in addition to compensating [Aon Hewitt] hereunder; provided, however, the fee payable to [Aon Hewitt] hereunder shall be offset by any fees that [Aon Hewitt] receives for the consulting services that it performs for an Affiliated Collective Trust.

(ECF No. 35, IMA, Schedule C.) According to Aon, this provision means that its decision to offer its own CITs "could not have resulted in a penny of additional compensation" beyond its contractual fiduciary fee. (Aon's Mem. Supp. Mot. at 19.) Plaintiffs do not dispute that this is the upshot of the IMA's terms, but they respond that even if it is true that Aon did not derive "a *direct* increase in its compensation" from placing its CITs in the Plan, their allegations that Aon received other benefits are sufficient to render this claim plausible. (Pls.' Mem. Opp'n Aon's Mot. at 20.) The Court agrees. Plaintiffs allege that the inclusion of the Aon CITs in the Plan benefited Aon's affiliate, Aon Trust, by virtue of its trustee fees, and benefited Aon by "dramatically increas[ing] its assets under management" for the CITs, through the receipt of hundreds of millions of dollars in Plan assets as "seed money" for Aon's investment management business. (Compl. ¶¶ 47, 50, 109.) These allegations suffice to state a claim for breach of the duty of loyalty. *See Turner*, 2021 WL 1178308, at *4 (holding that plaintiffs with identical allegations of breach of the duty of loyalty with respect to Aon and the Aon CITs stated a claim). Aon maintains that, in order to state a claim for breach of the duty of loyalty, plaintiffs must "show" that a fiduciary's "primary" motive was to further its own interests. (Aon's Mem. Supp. Mot. at 19.) The Court does not see it that way. Aon cites only two out-of-circuit decisions for this proposition, which does not follow from the relevant statutory language. Moreover, plaintiffs need not "show" anything for purposes of a motion to dismiss; they need only plausibly allege that Aon put its own interests ahead of those of Plan beneficiaries, which plaintiffs have done.

8

Aon's motion to dismiss will be denied as to Count I.

### 2. The Astellas Defendants' Motion

The Astellas Defendants contend that they cannot be liable for the selection and retention of the Aon CITs because the Committee delegated these responsibilities to Aon alone, and ERISA provides that a delegating fiduciary shall not be liable for an act or omission by the appointee. Therefore, say the Astellas Defendants, their only duty was a narrow one, to monitor Aon's performance, and none of plaintiffs' allegations permit a reasonable inference that they breached that duty.[4]

Under ERISA, if a plan provides for a procedure pursuant to which named fiduciaries may designate persons other than named fiduciaries to carry out fiduciary responsibilities, and pursuant to such procedure such responsibilities are designated, as is alleged they were to Aon here, such named fiduciary is not liable for an act or omission of such person in carrying out such responsibility, except to the extent that

> (A) the named fiduciary violated section 1104(a)(1) of this title--
>> (i) with respect to such allocation or designation,
>> (ii) with respect to the establishment or implementation of the procedure under paragraph (1), or
>> (iii) in continuing the allocation or designation; or
>
> (B) the named fiduciary would otherwise be liable in accordance with subsection (a).

29 U.S.C. § 1105(c)(1), (2).

Subsection (a), in turn, provides for liability under the following circumstances:

> (1) if [the named fiduciary] participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by [the named fiduciary's] failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if [the named fiduciary] has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

---

[4] The Astellas Defendants also contend that Count I should be dismissed as against them because plaintiffs do not state a plausible underlying fiduciary-breach claim against Aon. The Court has found, however, that plaintiffs state a claim against Aon in Count I for breach of the fiduciary duties of prudence and loyalty.

9

In response to the Astellas Defendants' motion, plaintiffs argue that defendants "cannot escape liability by passing the buck to another person and then turning a blind eye," quoting *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011). (ECF No. 56, Pls.' Mem. Opp'n Astellas's Mot. at 5-6.) In *Howell*, the Seventh Circuit addressed the duty of appointing fiduciaries to monitor their appointees. To the extent that Count I is based on the Astellas Defendants' duty to monitor, it is duplicative of Count IV, and the Court will analyze the allegations pertaining to the duty to monitor in its discussion of Count IV. Excluding the duplicative allegations, Count I is based on the selection and retention of the Aon CITs, duties that were delegated to Aon, according to the complaint.

Plaintiffs argue that the Astellas Defendants "may also be liable for Aon's breach as a co-fiduciary," based on the § 1105(a) exceptions, on the theory that the Astellas Defendants "knowingly participated in Aon's breach" by "partnering with Aon to overhaul the Plan's lineup," enabling Aon to commit a breach by failing to monitor it, and/or failing to remedy Aon's breach by "either preventing" the Aon CITs from being added to the Plan or by replacing Aon as the investment manager. (Pls.' Mem. Opp'n Astellas's Mot. at 9-10 (internal punctuation omitted).) Plaintiffs say that they have set out a plausible basis for such a co-fiduciary claim because the Astellas Defendants "knew" several things: "Aon was unsuccessful over its limited experience as an investment manager"; "the Aon funds had insufficient performance histories and performed poorly during their short existence"; "Aon materially benefitted from its decisions"; Aon "failed to screen investment alternatives to ensure that imprudent investments were not offered to plan participants"; and Aon failed to "conduct an independent investigation" into the merits of Aon CITs versus alternatives. (*Id.*) The Court disagrees. Plaintiffs cite to several paragraphs of the complaint, none of which allege any such knowledge, or any knowledge whatsoever, by the Astellas Defendants. Nor do plaintiffs allege conduct by the Astellas Defendants that fits within the § 1105 exceptions. The allegation that the Astellas Defendants "partnered" with Aon to overhaul the Plan's investment options, (Compl. ¶ 43), is far too vague to permit an inference of such conduct.

Count I will be dismissed without prejudice with respect to the Astellas Defendants.

C.  **Count II - Breach of Fiduciary Duties - Higher-Cost Share Classes**

Count II is a claim against the Astellas Defendants only for breach of the fiduciary duties of prudence and loyalty, based on the selection and retention of "Plan investment options [with] higher-cost shares of mutual funds and collective investment trusts that charged unreasonable investment management fees relative to other investment options that were available to the Plan at all relevant times, including separately managed accounts, collective investment trusts, and lower-cost share classes for the Plan's mutual fund and collective investment trust investments with the identical investment manager and investments." (*Id.* ¶ 115.) Plaintiffs allege that the Astellas Defendants retained (1) T shares of the BlackRock Equity Index Fund from 2014 through October 2016, when lower-cost M shares were available for 33 percent less; (2) M shares of the BlackRock MSCI ACWI Ex-U.S. Index Fund, when lower-cost F shares were available since 2003 for 82 percent less; (3) CF10 shares of the J.P. Morgan SmartRetirement Passive Blend target-date funds since 2014, when lower-cost CF shares were available for 29 percent less; (4) Class 1 shares of the Aon CITs, when lower-cost Class I shares were available

10

for 0.1 percent less; and (5) higher-cost shares of the T. Rowe Price Health Sciences Fund since March 2016, when lower-cost Class I shares were available for 10 percent less. (*Id.* ¶¶ 97, 99.) According to plaintiffs, "the only difference between the share classes is fees," and the selection and retention of the higher-cost share classes caused them to lose millions of dollars of their retirement savings. (*Id.* ¶¶ 93, 100.)

Defendants maintain that Count II is foreclosed by three Seventh Circuit decisions, *Divane*, 953 F.3d at 988-92; *Hecker*, 556 F.3d at 585-87; and *Loomis v. Exelon Corp.*, 658 F.3d 667, 671-73 (7th Cir. 2011), which, according to defendants, stand for the proposition that "offering some more expensive share-class mutual funds . . . does not suggest fiduciary neglect, particularly when part of a diversified range of choices that includes at least some institutional options and low-cost index funds." (ECF No. 39, Astellas's Mem. Supp. Mot. at 8-10.) *Divane*, *Hecker*, and *Loomis* are distinguishable, however, and cannot be read as broadly as defendants suggest. In *Divane*, plaintiffs alleged that Northwestern University breached its fiduciary duties "by providing investment options that were too numerous, too expensive, or underperforming," including retail funds with retail fees. 953 F.3d at 991. While the Seventh Circuit noted that there is no "blanket prohibition" on retail share class funds, its holding that plaintiffs failed to state a claim was based on several factors: the Plan offered over 400 investment options; the types of low-cost funds that plaintiffs wanted were available to them; and plaintiffs failed to allege that Northwestern "did not make their preferred offerings available to them." *Id*. Similarly, *Hecker* and *Loomis* are inapposite because there, "plaintiffs generally asserted that defendants violated their fiduciary duty by not offering certain investment options and selecting investment options with excessive fees," and neither decision "addressed whether a defendant violates their fiduciary duty in selecting high-cost investment options where *identical* investment options are available" at a lower cost. *Bell v. Pension Comm. of ATH Holding Co.*, No. 1:15-cv-02062-TWP-MPB, 2017 WL 1091248, at *4 (S.D. Ind. Mar. 23, 2017). Here, plaintiffs complain that lower-cost shares *of the same funds* were not made available to them, and there is a limited menu of investment options (a total of 13). The Astellas Defendants' motion to dismiss is denied as to Count II.

### D. Count III - Prohibited Transactions

In Count III, plaintiffs allege that Aon engaged in transactions prohibited by 29 U.S.C. § 1106(b)(1)-(3) and that all defendants engaged in transactions prohibited by 29 U.S.C. § 1106(a)(1)(A), (C), and (D) by causing the Plan to (1) pay Plan assets to Aon and (2) use Aon CITs. Section 1106(a) pertains to transactions between a plan and a "party in interest" and provides that a plan fiduciary "shall not cause the plan to engage in" certain transactions. 29 U.S.C. § 1106(a)(1). Section 1106(b) prohibits certain transactions between a plan and a fiduciary. 29 U.S.C. § 1106(b).

#### 1. Aon's Motion

Aon argues that plaintiffs have failed to plausibly allege a prohibited transaction in violation of § 1106 under either theory. Aon first contends that it cannot be liable for causing the Plan to pay Plan assets to Aon because it was not the fiduciary that was responsible for approving Aon's compensation on the Plan's behalf, and, under ERISA, a person is a fiduciary

11

only to the extent that person performs fiduciary functions. (Aon's Mem. Supp. Mot. at 21 (citing 29 U.S.C. § 1002(21)(A)).) "The threshold question in all cases charging breach of fiduciary duty is whether the defendant was 'acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17 C 679, 2018 WL 1384300, at *3 (N.D. Ill. Mar. 19, 2018) (citing *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). In response, plaintiffs assert that "[a]lthough Aon seeks to differentiate the payment of 'Plan assets' to Aon from the Plan's investment in Aon trusts, the payments to Aon from its trusts *are* Plan assets." (Pls.' Mem. Opp'n Aon's Mot. at 20-21.) It is plaintiffs, however, who in the complaint draw a distinction between the payment of Plan assets to Aon and the decision to invest in Aon CITs. (Compl. ¶¶ 120-21 (alleging that defendants "caused the Plan to use Aon Hewitt collective investment trusts and to pay Plan assets to Aon Hewitt").) Because it is clear from plaintiffs' allegations that Aon did not act as a fiduciary when negotiating its own fees with the Plan, plaintiffs fail to state a prohibited-transactions claim against Aon to the extent the claim is premised on the payment of Plan assets. *See Turner*, 2021 WL 1178308, at *9 (dismissing identical claim against Aon).

Aon further asserts that plaintiffs fail to state a prohibited-transactions claim based on Aon's decision to invest Plan assets in the Aon CITs because the decision was "expressly permitted by the exemption in ERISA § 408(b)(8)." (Aon's Mem. Supp. Mot. at 21.) That provision exempts from the prohibitions of § 1106 any transaction between a plan and a collective trust fund maintained by a bank or trust company if the transaction is a sale or purchase of an interest in the fund; the bank or trust company receives not more than reasonable compensation; and the transaction is expressly permitted by the plan instrument or by a fiduciary (who is not the bank or trust company or an affiliate) with authority to manage and control the plan's assets. 29 U.S.C. § 1108(b)(8). Aon says that these conditions are satisfied because it is alleged that Aon Trust was a non-depository bank and that the Astellas Defendants expressly agreed to allow Aon to select investments for the Plan exclusively from Aon's proprietary CITs, and it is not alleged that Aon Trust received more than reasonable compensation. Plaintiffs, however, contend that the § 408 exemption is an affirmative defense that they need not plead around. The fact that the complaint omits an allegation about whether Aon Trust's compensation was reasonable, say plaintiffs, is not a basis for dismissing Count III. The Court agrees. The Seventh Circuit held "squarely" in *Allen* that "the section 408 exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them." 835 F.3d at 676. Aon does not acknowledge *Allen* or attempt to explain why this holding is not dispositive. It does contend, relying on its Exhibits 1, 5, and 6, that "the materials incorporated in the Complaint establish that the trustee fees were reasonable according to market standards." (Aon's Mem. Supp. Mot. at 22.) The Court will not consider Exhibit 6 for purposes of the instant motions because it was not incorporated in the complaint, see above, and Exhibits 1 and 5 do not assist Aon because they fail to "establish" that Aon Trust's fees were reasonable. Aon cites these documents for the propositions that Aon Trust's fees were disclosed to Astellas before it retained Aon as a delegated fiduciary and authorized Aon's use of the Aon CITs and that Aon Trust merely retained the same fees that had been negotiated in the market with the prior outside trustee. It does not necessarily flow from either proposition that Aon Trust's compensation was reasonable as a matter of law. Accordingly, Aon's motion to dismiss Count III is denied, to the extent Count III is premised on the selection of Aon CITs for the Plan.

### 2. The Astellas Defendants' Motion

The Astellas Defendants first argue that plaintiffs fail to a state a claim against them under § 1106(a) based on the selection of the Aon CITs because it is not alleged that the Astellas Defendants "caused" the selection of those funds. The Court agrees. In response, plaintiffs assert that the Astellas Defendants "expressly agreed to allow Aon to use Aon proprietary investments exclusively, and agreed that Aon need not consider non-proprietary investments," and that "[b]y doing so, the Astellas Defendants granted Aon the authority to select itself as the investment provider, thereby causing the Plan to invest in the Aon funds." (Pls.' Mem. Opp'n Astellas's Mot. at 12.) The Court is unpersuaded. Plaintiffs cite no authority that supports this attenuated theory of causation. The allegations of the complaint do not allow a reasonable inference that the Astellas Defendants "caused" the selection of the Aon CITs. Plaintiffs therefore fail to state a prohibited-transactions claim against the Astellas Defendants to the extent the claim is premised on the selection of the Aon CITs.

Next, the Astellas Defendants argue that they cannot be liable for using Plan assets to compensate Aon because Aon was not yet a "party in interest" under § 1106(a) when it was appointed as the Plan's investment manager. ERISA defines a "party in interest" as, in relevant part, "a person providing services to [a] plan." 29 U.S.C. § 1002(14)(B). The complaint alleges that Aon rendered fee-based investment advice to the Plan for several years immediately prior to Aon's appointment as the Plan's discretionary investment manager. (Compl. ¶ 25.) Therefore, plaintiffs plausibly allege that Aon was a party in interest at the relevant time for the purposes of § 1106(a). *See Turner*, 2021 WL 1178308, at *7. The Astellas Defendants also suggest that this claim fails because plaintiffs fail to plead that Aon's service fee was unreasonable. As explained above, plaintiffs are not required to negate affirmative defenses.

The Astellas Defendants' motion to dismiss is denied as to Count III, to the extent this claim is premised on the payment of Plan assets to Aon.

### E. Count IV - Failure to Monitor

In Count IV, plaintiffs allege that the Astellas Defendants violated their fiduciary duty to monitor Aon. Those who appoint plan administrators "have an ongoing fiduciary duty under ERISA to monitor the activities of their appointees." *Howell*, 633 F.3d at 573; *Godfrey v. GreatBanc Tr. Co.*, No. 18 C 7918, 2020 WL 4815906, at *10 (N.D. Ill. Aug. 19, 2020) ("A plan trustee's duty of prudence includes a continuing duty to monitor the plan's investments."). "The Department of Labor has explained that the duty requires reviewing 'the performance of trustees and other fiduciaries' at 'reasonable intervals' and 'in such [a] manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and the statutory standards, and satisfied the needs of the plan.'" *Bartnett v. Abbott Lab'ys*, No. 20 C 2127, 2021 WL 428820, at *5 (N.D. Ill. Feb. 8, 2021) (citing 29 C.F.R. § 2509.75–8 at FR–17 (Department of Labor questions and answers)).

The Astellas Defendants contend that nothing in the complaint permits a plausible inference that they breached the duty to monitor. Defendants say that plaintiffs "repurpos[e]" the same allegations that support their claims against Aon, which shed no light on their monitoring

13

process.[5] (Astellas's Mem. Supp. Mot. at 11-12.) The Court disagrees. Those "repurposed" allegations—that Aon selected its affiliated CITs, Aon was an inexperienced investment manager and its CITs had limited performance history, and the CITs had underperformed the investment options that they replaced—are sufficient to raise a plausible inference that the Astellas Defendants breached their duty to monitor Aon. In the Court's view, the allegation that "the process by which [Aon] selected investments for the Plan was tarnished by a desire to promote its new funds and to benefit itself," *Taylor*, 2021 WL 1178308, at \*3, nudges the parallel duty-to-monitor claim against the Astellas Defendants across the line from conceivable to plausible. *See id.* at \*4 (denying motion to dismiss similar claim for breach of fiduciary duty to monitor).

## CONCLUSION

The motion of defendant Aon Hewitt Investment Consulting, Inc. to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) [32] is denied as to Count I; denied as to Count III, to the extent that Count III as asserted against Aon is based on the selection of Aon CITs for the Plan; and granted as to Count III, to the extent that Count III as asserted against Aon is based on the payment of Plan assets to Aon. Count III is dismissed without prejudice as against Aon to the extent it is based on the payment of Plan assets to Aon.

The motion of defendants Astellas US LLC, the Board of Directors of Astellas US LLC, and the Astellas Retirement Plan Administrative Committee to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) [38] is granted as to Count I; denied as to Counts II and IV; denied as to Count III, to the extent that Count III as asserted against the Astellas Defendants is based on the payment of Plan assets to Aon; and granted as to Count III, to the extent that Count III as asserted against the Astellas Defendants is based on the selection of Aon CITs for the Plan. Count I and Count III, to the extent that Count III as asserted against the Astellas Defendants is based on the selection of Aon CITs for the Plan, are dismissed without prejudice as against the Astellas Defendants.

Defendants' motion for leave to file under seal Exhibit 1 to the Declaration of William D. Pollak in support of the motion to dismiss and to publicly file a redacted version of Aon's memorandum of law in support of Aon's motion to dismiss the complaint [36] is denied. Aon is directed to file on the docket as publicly-available documents the IMA and the entire memorandum in support of Aon's motion.

---

[5] The Astellas Defendants further complain that the complaint treats them collectively, and they assert that plaintiffs should have specified in their allegations which of the Astellas Defendants "had what delegated duties [to monitor]" and exactly how each defendant violated that duty. But this argument is raised for the first time in the Astellas Defendants' reply brief, (ECF No. 64, Astellas's Reply Supp. Mot. at 9 n.8), and is thus waived for purposes of the instant motion. *See Williams v. Bd. of Educ.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020).

14

**DATE:** April 13, 2021

**Hon. Ronald A. Guzmán**
**United States District Judge**