**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL WACHALA, et al.,

                 *Plaintiffs*,

v.

ASTELLAS US LLC, et al.,

                 *Defendants*.

Case No. 1:20-cv-03882

Hon. Ronald A. Guzman

Magistrate Judge Heather K. McShain

CLASS ACTION

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Jerome J. Schlichter
Troy A. Doles
Heather Lea
Sean E. Soyars
Kurt C. Struckhoff
SCHLICHTER BOGARD & DENTON LLP
100 South Fourth Street, Suite 1200
St. Louis, MO, 63102
(314) 621-6115
(314) 621-5934 (fax)
jschlichter@uselaws.com
tdoles@uselaws.com
hlea@uselaws.com
ssoyars@uselaws.com
kstruckhoff@uselaws.com

*Lead Counsel for Plaintiffs*

Luke DeGrand
DEGRAND LAW, P.C.
10 S. LaSalle Street, Ste. 3400
Chicago, IL 60603
(312) 236-9200
(312) 236-9201 (fax)
ldegrand@degrandlaw.com

*Local Counsel for Plaintiffs*

# TABLE OF CONTENTS

BACKGROUND ......................................................................................................................... 2

    I.    The Plan and Aon's proprietary investments ...................................................... 2

    II.   Plaintiffs' causes of action.................................................................................... 5

    III.  The proposed class definitions ............................................................................. 6

ARGUMENT ............................................................................................................................. 6

    I.    Standard for class certification ............................................................................ 6

    II.   The proposed classes satisfy all Rule 23(a) criteria ........................................... 8

        A.   The classes have proper temporal limitations and proper representatives ............... 8

        B.   Putative class members are too numerous to be joined (Rule 23(a)(1)) ................... 9

        C.   There are many questions of law or fact common to the class (Rule 23(a)(2)) ........ 9

        D.   Plaintiffs' claims are typical of the classes (Rule 23(a)(3)) .................................... 11

        E.   Plaintiffs and class counsel will adequately represent the classes (Rule 23(a)(4)) ...................................................................................................................... 13

    III.  The proposed classes satisfy Rule 23(b). ........................................................... 15

        A.   The classes satisfy Rule 23(b)(1)(A) or (B) ........................................................... 15

            1.   The proposed classes satisfy Rule 23(b)(1)(A). ............................................... 16

            2.   The proposed classes satisfy Rule 23(b)(1)(B). ............................................... 18

        B.   In the alternative, the classes should be certified under Rule 23(b)(3). ................. 19

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
286 F.R.D. 388 (S.D. Ill. 2012) ........................................................................ 15

*Abbott v. Lockheed Martin Corp.*,
725 F.3d 803 (7th Cir. 2013) ........................................... 2, 7, 12, 13, 14

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................... 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................... 13, 16, 20

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......................................................................................... 7

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ....................................................................... 11

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ........................................................................ 6

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
No. 15-2062, 2018 WL 4385025 (S.D. Ind. Sept. 14, 2018) ............................ 2

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011) ....................................................................... 11

*Clark v. Duke Univ.*,
No. 16-1044, 2019 WL 2588029 (M.D.N.C. June 24, 2019) ....................... 17

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) ........................................................................... 1

*Crabill v. Trans Union, L.L.C.*,
259 F.3d 662 (7th Cir. 2001) ....................................................................... 20

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ....................................................................... 19

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985) ................................................................. 10, 12

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*,
657 F.2d 890 (7th Cir. 1981) ....................................................................... 14

*Eliasen v. Green Bay & W. R. Co.*,
93 F.R.D. 408 (E.D. Wis. 1982) ................................................................... 19

*George v. Kraft Foods Global, Inc.*,
641 F.3d 786 (7th Cir. 2011) ....................................................................... 10

*Hale v. State Farm Mut. Auto. Ins. Co.*,
No. 12-660, 2016 WL 4992504 (S.D. Ill. Sep. 16, 2016) ........................... 13

*Harris v. Koenig*,
 271 F.R.D. 383 (D.D.C. 2010) ........................................................................ 18

*In re Citigroup Pension Plan ERISA Litig.*,
 241 F.R.D. 172 (S.D.N.Y. 2006) .................................................................... 16

*In re Mexico Money Transfer Litig.*,
 267 F.3d 743 (7th Cir. 2001) ......................................................................... 19

*In re Schering Plough Corp. ERISA Litig.*,
 589 F.3d 585 (3d Cir. 2009) ..................................................... 2, 10, 15, 18

*In re YRC Worldwide, Inc. ERISA Litig.*,
 No. 09-2593, 2011 WL 1303367 (D. Kan. Apr. 6, 2011) ............................. 18

*Johnson v. Rohr-Ville Motors, Inc.*,
 189 F.R.D. 363 (N.D. Ill. 1999) .................................................................... 14

*Kanawi v. Bechtel Corp.*,
 254 F.R.D. 102 (N.D. Cal. 2008) .................................................................. 18

*Krueger v. Ameriprise Fin., Inc.*,
 304 F.R.D. 559 (D. Minn. 2014) ................................................................... 18

*LaRue v. DeWolff, Boberg & Assocs.*,
 552 U.S. 248 (2008) ........................................................................................ 1

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
 323 F.R.D. 145 (S.D.N.Y. 2017) .............................................................. 18, 19

*Leigh v. Engle*,
 727 F.2d 113 (7th Cir. 1984) ........................................................................... 1

*Loomis v. Exelon Corp.*,
 No. 06-4900, 2007 WL 2060799 (N.D. Ill. June 26, 2007) ............................ 15

*Mace v. Van Ru Credit Corp.*,
 109 F.3d 338 (7th Cir. 1997) ......................................................................... 20

*Mass. Mut. Life Ins. Co. v. Russell*,
 473 U.S. 134 (1985) ................................................................................... 1, 13

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
 No. 15-9936, 2017 WL 3868803 (S.D.N.Y Sept. 5, 2017) ........................... 18

*Mulvania v. Sheriff of Rock Island Cnty.*,
 850 F.3d 849 (7th Cir. 2017) ........................................................................... 9

*Neil v. Zell*,
 275 F.R.D. 256 (N.D. Ill. 2011) .................................................................... 15

*Orr v. Shicker*,
 953 F.3d 490 (7th Cir. 2020) ........................................................................... 9

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999) ....................................................................................... 18

*Piazza v. Ebsco Indus., Inc.*,
 273 F.3d 1341 (11th Cir. 2001) ...................................................................... 18, 19

*Ramos v. Banner Health*,
 1 F.4th 769 (10th Cir. 2021) ................................................................................. 20

*Rogers v. Baxter Int'l Inc.*,
 No. 04-6476, 2006 WL 794734 (N.D. Ill. Mar. 22, 2006) .................................. 16

*Shanehchian v. Macy's, Inc.*,
 No. 07-828, 2011 WL 883659 (S.D. Ohio Mar. 10, 2011)................................... 17

*Spano v. Boeing Co.*,
 294 F.R.D. 114 (S.D. Ill. 2013), *Rule 23(f) pet. denied*, No. 13-8026 (7th Cir. Nov. 26,
 2013) ............................................................................................................ 2, 13, 15

*Spano v. Boeing Co.*,
 633 F.3d 574 (7th Cir. 2011) ...................................... 6, 7, 8, 9, 11, 12, 14, 15

*Stanford v. Foamex L.P.*,
 263 F.R.D. 156 (E.D. Pa. 2009)............................................................................ 18

*Surowitz v. Hilton Hotels Corp.*,
 383 U.S. 363 (1966)............................................................................................... 14

*Thole v. U.S. Bank N.A*,
 140 S. Ct. 1615 (2020)............................................................................................. 2

*Tibble v. Edison Int'l*,
 575 U.S. 523 (2015)..................................................................................... 2, 10, 20

*Tussey v. ABB, Inc.*,
 746 F.3d 327 (8th Cir. 2014) ................................................................................ 20

*Tussey v. ABB, Inc.*,
 850 F.3d 951 (8th Cir. 2017) ................................................................................ 17

*Tussey v. ABB, Inc.*,
 No. 06-4305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) ............................... 17

*Tussey v. ABB, Inc.*,
 No. 06-4305, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) ................................. 15

*Wagner v. NutraSweet Co.*,
 95 F.3d 527 (7th Cir. 1996) .................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011)............................................................................................... 10

**Statutes**

28 U.S.C. §2072(b) ...................................................................................................... 1

29 U.S.C. §1002(21)(A)(i)........................................................................................... 4

29 U.S.C. §1002(21)(A)(ii).......................................................................................... 3

29 U.S.C. §1002(38) .................................................................................................... 4

29 U.S.C. §1102(a) ............................................................................. 3

29 U.S.C. §1104(a)(1) ...................................................................... 16

29 U.S.C. §1105(a) ....................................................................... 4, 11

29 U.S.C. §1105(c)(2) .................................................................. 4, 11

29 U.S.C. §1106(a)(1)(D) ................................................................ 11

29 U.S.C. §1106(a)–(b) ................................................................... 11

29 U.S.C. §1108(b)(2)(A) .......................................................... 11, 13

29 U.S.C. §1108(b)(8) ..................................................................... 11

29 U.S.C. §1109(a) .................................................... 1, 10, 11, 13, 17

29 U.S.C. §1132(a)(2) ............................................................ 1, 7, 15

ERISA §409(a) .................................................................................... 1

ERISA §502(a)(2) ............................................................................... 1

**Rules**

Fed. R. Civ. P. 23(a)(1) ..................................................................... 9

Fed. R. Civ. P. 23(a)(2) ................................................................. 9, 11

Fed. R. Civ. P. 23(a)(3) .................................................................... 11

Fed. R. Civ. P. 23(a)(4) .................................................................... 13

Fed. R. Civ. P. 23(b)(1) .................................................................... 16

Fed. R. Civ. P. 23(b)(1)(A) ........................................................... 2, 16

Fed. R. Civ. P. 23(b)(1)(B) ........................................................... 2, 18

Fed. R. Civ. P. 23(b)(2) .................................................................... 19

Fed. R. Civ. P. 23(b)(3) .................................................................... 20

Fed. R. Civ. P. 23(c)(1) ...................................................................... 8

Fed. R. Civ. P. 23(g) ........................................................................ 15

Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amends ......................... 16, 18

**Other Authorities**

Restatement (Second) of Trusts (1959) ............................................ 12

Rubenstein, 3 *Newberg on Class Actions* (5th ed. 2017) ................. 9, 18

Wright, Miller, & Kane, 7AA FED. PRAC. & PROC. CIV. (3d ed. 2017) ..................................... 19

In October 2016, the fiduciaries of the Astellas US Retirement and Savings Plan (Plan) overhauled the Plan's investment lineup by replacing established and well-performing options with newly created funds managed by the Plan's new investment fiduciary, Aon Hewitt Investment Consulting, Inc. (Aon). Plaintiffs contend that Defendants made this momentous decision—which would profoundly affect (for better or worse) participants' retirement savings—without the thorough and independent investigation of the merits that ERISA demands and did so to advance Aon's corporate financial interests rather than acting with an "eye single" to the interests of participants. *Leigh v. Engle*, 727 F.2d 113, 125 (7th Cir. 1984). As a result, the Plan lost tens of millions of dollars.

Plaintiffs bring suit under ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), to obtain the plan's remedies under ERISA §409(a), 29 U.S.C. §1109(a). By their nature, such claims do not involve individual relief, but instead are "brought in a representative capacity on behalf of the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Because Congress expressly authorized plan participants to seek plan-wide relief, Plaintiffs have a substantive right to recover any and all "losses to the plan" regardless of class certification. 29 U.S.C. §1109(a); *see LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 261 (2008) (Thomas, J., concurring) ("On their face, §§409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach.") (emphasis original); 28 U.S.C. §2072(b) (procedural "rules shall not abridge, enlarge or modify and substantive right"). Nevertheless, it is appropriate to "employ procedures to protect effectively the interests" of other affected participants in §1132(a)(2) actions, usually through class certification under Rule 23. *Coan v. Kaufman*, 457 F.3d 250, 259–62 (2d Cir. 2006).

Accordingly, in light of the inherently representative nature of §1132(a)(2) claims, breach of fiduciary duty cases are "paradigmatic examples of claims appropriate for certification as a Rule

1

23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589

F.3d 585, 604 (3d Cir. 2009). This case is no exception. The Seventh Circuit has expressly

approved class certification of claims challenging 401(k) plan investment options, *Abbott v.*

*Lockheed Martin Corp.*, 725 F.3d 803, 813–14 (7th Cir. 2013), and lower courts have

overwhelmingly certified similar claims, *e.g.*, *Spano v. Boeing Co.*, 294 F.R.D. 114, 123–27

(S.D. Ill. 2013), *Rule 23(f) pet. denied*, No. 13-8026 (7th Cir. Nov. 26, 2013); *Bell v. Pension*

*Comm. of ATH Holding Co., LLC*, No. 15-2062, 2018 WL 4385025, at \*7–11 (S.D. Ind. Sept.

14, 2018). For the following reasons, the Court should certify this action as a class action under

Federal Rule of Civil Procedure 23(b)(1)(A) or (B).

## BACKGROUND

### I.     The Plan and Aon's proprietary investments

The Plan is a defined contribution plan (Doc. 108 ¶7; Doc. 109 ¶7), meaning participants'

retirement benefits are "limited to the value of their own individual investment accounts, which

is determined by the market performance of employee and employer contributions, less

expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). Because plan fiduciaries determine

the investment options made available to participants in a defined contribution plan, "the plan

fiduciaries' particular investment decisions" can dramatically affect participants' retirement

benefits. *Thole v. U.S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020).

The Astellas Plan is among the largest in the United States, with nearly $1.4 billion and over

4,000 participants with account balances as of year-end 2020. Ex. 1 at 2, 4.[1] The named plaintiffs

are six individuals who participated in the Plan during the proposed class period, which

commences on October 3, 2016. *See* Plaintiffs' Declarations, attached hereto, ¶1 of each.

---

[1] Cited exhibits are attached to the Declaration of Sean E. Soyars, filed herewith.

Until August 2016, Astellas,[2] the Plan's "named fiduciary," exercised authority over all aspects of the Plan, including determining the investment options available to participants. Doc. 109 ¶20; Ex. 2 at 3–6; *see* 29 U.S.C. §1102(a). Aon (formerly known as Aon Hewitt Investment Consulting, Inc.) provided investment advice to Astellas. Doc. 108 ¶25; Ex. 3; *see* 29 U.S.C. §1002(21)(A)(ii). The investment selection and monitoring process was governed by an Investment Policy Statement ("IPS"). Ex. 2. The IPS set forth objective quantitative and qualitative criteria for Plan investment options, including comparisons to benchmarks and peer groups and a "watch list" for underperforming funds. *Id*. at 4–6.

The Plan's investment options generally performed well during this time. *See e.g.*, Ex. 4 at 2–3. Occasionally, a fund on the watch list warranted replacement, and Aon recommended alternatives. Ex. 4 at 1, 7, 10–11. Aon was able to make objective recommendations during this time, as it had no financial interest in the Plan's investment options.



As of August 26, 2016, the Committee hired Aon as discretionary investment manager,

---

[2] For simplicity and unless otherwise indicated, references to "Astellas" are intended to include all Astellas-related Defendants. *See* Compl. ¶¶19–22 (Doc. 1).

thereby delegating to Aon the fiduciary responsibility to select and remove Plan investment options. Ex. 10; Doc. 108 ¶26; *see* 29 U.S.C. §§1002(21)(A)(i), (38). Astellas remained responsible for monitoring Aon's compliance with fiduciary duties in performing that role. 29 U.S.C. §§1105(a), (c)(2). The contract allowed Aon to exclusively select its proprietary funds for the Plan without considering non-proprietary alternatives. Ex. 10 at 7 (¶9(e)), 14 (¶2(c)). Through a conflicted governance structure, Aon used this new authority to immediately replace eight of the Plan's equity and fixed income investments with five Aon collective trusts: Aon Hewitt Large Cap Equity, Aon Hewitt Small & Mid Cap Equity, Aon Hewitt Non-U.S. Equity, Aon Hewitt Core Plus Bond, and Aon Hewitt Inflation Strategy (collectively, the "Aon Funds"). Ex. 11 at 3–4; Ex. 21 at 1–3. There is no evidence that Aon considered alternatives to its own funds. *See id*.



Aon's eagerness to select the Aon Funds and years-long delay in improving the Funds' performance severely harmed the Plan and participants' retirement savings. As shown by Plaintiffs' expert, with one limited exception, a prudent fiduciary without a conflict of interest would have had no reason to remove the legacy options which Aon jettisoned in favor of the Aon Funds. Pfeil Decl. ¶¶24–37. The proposed class lost a total of over $35 million compared to what it would have earned with prudent and loyal fiduciary oversight. O'Neal Decl. ¶16.

## II.  Plaintiffs' causes of action

Plaintiffs' complaint asserts in four counts that Aon and Astellas breached their fiduciary duties (Count I) and caused prohibited transactions (Count III) related to the Aon Funds, and that Astellas failed to monitor co-fiduciaries (Count IV). Doc. 1 at 50–57 (¶¶106–30).[3] Plaintiffs seek recovery of Plan losses and appropriate equitable relief. *Id.* at 2 (¶3), 43 (¶¶101–02), 57–58.

On April 13, 2021, the Court denied Defendants' Rule 12(b)(6) motions in substantial part. Doc. 99, Doc. 100 at 1. As to Astellas, the Court dismissed Count I and Count III to the extent it

---

[3] Based on information received in discovery, Plaintiffs will not further pursue Count II.

pertains to the selection of the Aon Funds. *Id.* As to Aon, the Court dismissed Count III to the extent it is based on payment of Plan assets to Aon. *Id.* The Court otherwise denied the motions.

### III. The proposed class definitions

As to the remaining Counts I, III, and IV, Plaintiffs seek certification of three classes:[4]

### Investment Loss Class

All participants in the Astellas US Retirement and Savings Plan whose Plan accounts invested in any of the Plan's five Aon Collective Investment Trusts at any time between October 3, 2016 and June 30, 2020 and whose investment in at least one of the Aon Collective Investment Trusts earned less as of June 30, 2020 than the account would have earned had it been invested in the corresponding Legacy Investment Option(s).*[5] Excluded are members of the Board of Directors of Astellas and the Astellas Retirement Plan Administrative Committee.

### Payment of Plan Assets Class

All participants in the Astellas US Retirement and Savings Plan whose Plan accounts invested in any of the Plan's five Aon Collective Investment Trusts at any time between October 3, 2016 and June 30, 2020. Excluded are members of the Board of Directors of Astellas and the Astellas Retirement Plan Administrative Committee.

### Equitable Relief Class

All participants in the Astellas US Retirement and Savings Plan with account balances as of the date of judgment.

## ARGUMENT

### I. Standard for class certification

To obtain certification, a class must satisfy Rule 23(a)(1)–(4) and one of three categories in Rule 23(b). *Spano v. Boeing Co.*, 633 F.3d 574, 582–83 (7th Cir. 2011). While Rule 23 demands

---

[4] With the benefit of discovery, the proposed class definitions use more precise criteria than those included in the complaint. *See* Doc. 1 at 44 (¶102). The Court has discretion to certify a class that differs from the complaint, particularly where, as here, the modified definition is "narrower" than the initial proposal. *Beaton v. SpeedyPC Software,* 907 F.3d 1018, 1023 (7th Cir. 2018). Should the Court find that an amendment is needed, Plaintiffs are prepared to promptly move for leave to amend to conform the complaint to the proposed definitions.

[5] The definition of "Legacy Investment Option(s)" is set forth in Plaintiffs' motion and the attached Declaration of Edward S. O'Neal, ¶12.

a rigorous analysis, a court may not "engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466.

*Spano* involved similar ERISA claims regarding 401(k) plan fees and investments. *Spano*, 633 F.3d at 576–77. The district court had certified "extraordinarily broad," plan-wide class definitions with no starting or ending date for all of the plaintiffs' claims, which "were somewhat vague." *Abbott*, 725 F.3d at 812–13 (citing *Spano*, 633 F.3d at 586). Because those factors "made it difficult to assess the district court's certification orders," the Seventh Circuit vacated the broad classes, but emphasized that "better-defined and more-targeted classes" could well satisfy Rule 23. *Id.* at 813 (citing *Spano*, 633 F.3d at 586, 588). On remand, the district court certified several better-defined classes under Rule 23(b)(1), including claims regarding fees and investments similar to the claims here. *Spano*, 294 F.R.D. at 119–127.

In *Abbott*, the Seventh Circuit clarified that the problem with the original *Spano* class was that "the breadth of the classes at issue … and the vagueness surrounding plaintiffs' claims" could lead to intra-class conflict that would undermine typicality and adequacy. 725 F.3d at 813. But the court made clear that it "has never held, and *Spano* did not imply, that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Id*. The court found that a claim challenging a plan investment that underperformed a prudent alternative satisfied the typicality and adequacy requirements. *Id.* at 813–14. Because a §1132(a)(2) action "seeks only to make the fiduciary refund to the Plan any *losses* caused by the breach," there was no risk than any participant "who benefited from [defendant's] imprudent management would have her Plan assets reduced as a

result of this lawsuit." *Id*. at 814. And in contrast to the broad *Spano* class, the *Abbott* plaintiffs took "care to limit the class to those Plan participants who invested in" the challenged option and further limited the class to the subset of participants whose investments underperformed the prudent alternative, which the Seventh Circuit found to be "one reasonable way to exclude from the class any persons who did not experience injury." *Id.* The court emphasized that after certification, the district court remained free to amend the class as needed "when it comes time to rule on the merits." *Id.* (citing Fed. R. Civ. P. 23(c)(1)).

## II.     The proposed classes satisfy all Rule 23(a) criteria

### A.     The classes have proper temporal limitations and proper representatives

*Spano* criticized a class period with no starting or ending date. 633 F.3d at 586, 591. Plaintiffs' proposed classes have reasonable temporal limitations. The Equitable Relief Class is limited to participants as of the date of judgment, as those participants will necessarily be affected by any such relief. The starting date for the Investment Loss and Payment of Plan Assets classes is October 3, 2016, when the Aon Funds were first included as Plan options. The ending date is June 30, 2020 because that is when Aon finally achieved the ability to improve the Aon Funds' performance through a larger asset base and implemented an enhanced, less-conflicted process for monitoring the Funds. *See supra*, p. 5.

*Spano* also requires an investment-claim class to have "a representative who personally held one or both of the allegedly imprudent funds[.]" 633 F.3d at 590. Plaintiffs Wachala, Preuss, Bickle, Adeneye, and Walsh are the proposed representatives of the two Aon Funds classes because they collectively invested in all five of the Aon Collective Investment Trusts during the class period and sustained losses relative to the Legacy Investment Option(s). *See infra*, Part. II.D–E. Plaintiffs Adeneye and Gough are proposed representatives of the Equitable Relief Class because they have active Plan accounts, and thus have a strong interest in ensuring Defendants'

future compliance with fiduciary obligations. Adeneye Decl. ¶¶1–2, 5; Ex. 24, Gough Tr. 172:6–14.

### B. Putative class members are too numerous to be joined (Rule 23(a)(1))

The class members are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (quoting *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017)); *see also* Rubenstein, *Newberg on Class Actions*, §3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

Here, 2,512 individual participants invested in one or more Aon Funds from October 3, 2016 through June 30, 2020. O'Neal Decl. ¶16. All of those participants are members of the Payment of Plan Assets Class. Among those participants, 2,281 participants (91%) are members of the Investment Loss Class, because they suffered a loss from investing in at least one Aon Trust relative to what their accounts would have earned by investing in the corresponding Legacy Investment Option(s). *Id.* At the fund level, at least 700 and as many as 1,600 participants suffered a loss attributable to each of the five Aon Funds. *Id.* ¶¶18–23. The Equitable Relief Class will have over 4,000 members as of the date of judgment. *See* Ex. 1 at 2. The classes satisfy Rule 23(a)(1).

### C. There are many questions of law or fact common to the class (Rule 23(a)(2))

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Rule 23(a)(2) does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact[.]" *Spano*, 633 F.3d at 585. In a defined contribution plan, "fund participants operate against a common background." *Id.* Assertions that a fiduciary "imposes excessive fees on all participants, as well as the assertion

that [Defendant] has failed to satisfy its fiduciary duties in its selection of investment options, both describe problems that would operate across the plan rather than at the individual level." *Id.* at 586; *see also id.* at 588–89 ("[T]he package of investment options offered by each plan was the same for every participant. The question whether that package was prudent, in light of ERISA's standards, is a common one."). Indeed, "commonality is quite likely to be satisfied" in an ERISA fiduciary breach case. *Schering*, 589 F.3d at 599 n.11.

As to Count I, the questions of whether Aon acted with prudence and loyalty in deciding to replace the Plan's prior investments with the Aon Funds, and whether the Aon Funds were prudent for the Plan, "in light of ERISA's standards," are common ones, just as in *Spano*. *Id.* at 588–89. Since all five Aon Funds were the subject of a single unified decision to overhaul the Plan and were included in the Plan on the same date, whether Aon used a prudent and loyal process to implement that decision is necessarily common for all participants. *See George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 796 (7th Cir. 2011) (holding that an ERISA fiduciary breaches its duty when it fails to "balance the relevant factors and make a reasoned decision"). Likewise, whether Aon used a prudent and loyal process to monitor the Aon Funds after October 2016 is another common question. *See Tibble*, 575 U.S. at 530 ("[T]he duty of prudence involves a continuing duty to monitor investments and remove imprudent ones."). If Aon breached its duty, determining whether the Plan suffered a loss, and the proper measure of those losses, are yet more common questions. *See Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985) (defining "loss" under §1109(a) and proper measure of losses). Whether "appropriate equitable relief" is needed to remedy any breach is a question common to the Equitable Relief Class. *See* 29 U.S.C. §1109(a). These questions will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Regarding Count III, common questions include whether Aon caused a prohibited transaction in selecting the Aon Funds and whether Aon qualifies for an exemption. Doc. 1 at 53–54 (¶¶120–21); Doc. 99 at 11–12; *see* 29 U.S.C. §1106(a)–(b); §1108(b)(8). As to Astellas, common questions include whether Astellas caused prohibited payments of Plan assets to Aon and whether the payments qualify for a "reasonableness" exemption. Doc. 1 at 54 (¶121); Doc. 99 at 13; *see* 29 U.S.C. §1106(a)(1)(D); §1108(b)(2)(A). A claim that a defendant "imposes excessive fees on all participants" presents common questions. *Spano*, 633 F.3d at 586. Common questions in resolving Count IV include whether Astellas prudently selected and monitored Aon as the Plan's delegated investment fiduciary, *see* 29 U.S.C. §§1105(a) & (c)(2), and whether any such monitoring failure caused a loss to the Plan under §1109(a).

Resolving these questions will determine liability to all class members and the measure of loss for the Plan and all class members. The classes thus satisfy Rule 23(a)(2).

### D.     Plaintiffs' claims are typical of the classes (Rule 23(a)(3))

The "claims ... of the representative parties" must be "typical of the claims ... of the class." Fed. R. Civ. P. 23(a)(3). Claims are typical when they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses [they] might have against certain class members[.]" *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (quoting *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996)). To satisfy typicality in an ERISA fiduciary breach case, "there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586.

Regarding the Investment Loss Class, "Plaintiffs have taken care to limit the class to those

11

Plan participants who invested in the [Aon Funds] during the class period." *Abbott*, 725 F.3d at 814. Plaintiffs Wachala, Preuss, Bickle, Adeneye, and Walsh "personally held … the allegedly imprudent funds." *Spano*, 633 F.3d at 590. Each of them invested in the Aon Funds and one or more of them suffered a loss attributable to each of the five Aon Funds. O'Neal Decl. ¶¶15–22. Because Aon's actions were directed to and affected the Plan as a whole, Plaintiffs' claims arise from the same course of conduct as all class members' claims—Aon's single unified decision to replace the Plan's prior investments with the Aon Funds in October 2016 and its conduct in monitoring the Funds on an ongoing basis after October 2016. *E.g.*, Ex. 11 at 2–3; Ex. 12 at 4–7. Thus, the proposed representatives' claims are perfectly congruent with and typical of the claims of all other Investment Loss Class members. *Abbott*, 725 F.3d at 814; *Spano*, 633 F.3d at 586.

Limiting the class to the subset of participants who suffered a loss relative to what they would have earned in the Legacy Investment Options perfectly aligns with Plaintiffs' theory of the case. A prudent, non-conflicted fiduciary acting in the best interests of Plan participants would have had no reason in October 2016 to remove the Plan's mutual funds which were generally performing well, especially in favor of worse-performing options from an inexperienced manager. Doc. 1 at 17–21, 24–25, 28–29, 31–32, 34–35, 37, 51 (¶¶43, 46, 48–51, 59–60, 67, 74, 80, 86, 109); Ex. 4 at 2–3. Accordingly, the performance of the Legacy Investment Options (as defined by Plaintiffs' experts) provides a reasonable estimate of what the Plan would have earned but for Aon's conflicted decision to grow its investment management business at the Plan's expense. *See Bierwirth*, 754 F.2d at 1056 (proper remedy is to restore "the trust beneficiaries to the position they would have occupied but for the breach of trust.") (citing Restatement (Second) of Trusts § 205(c) (1959)). Indeed, the Seventh Circuit expressly endorses

the use of such a benchmark as a "reasonable" means to limit a class to those participants who suffered the same injury. *Abbott*, 725 F.3d at 814.

The Payment of Plan Assets Class also satisfies Rule 23(a)(3). The Aon Funds charged asset-based fees to all investors. *E.g.*, Ex. 15 at 1. Accordingly, to the extent Astellas caused a non-exempt prohibited transaction allowing Aon to receive unreasonable compensation, *cf.* 29 U.S.C. §1108(b)(2)(A), every participant who invested in an Aon Trust bore a *pro rata* share of the excess. All participants who invested in the Aon Funds were thus harmed by Astellas' course of conduct in causing prohibited payments of Plan assets to Aon. Therefore, the claims of the named Plaintiffs who invested in the Aon Funds are typical, indeed identical, to the claims of all other participants who invested in the Funds.

If Defendants are found to have breached their duties by employing a flawed investment monitoring process for the Plan as a whole, that uniform course of conduct will give rise to the claims for equitable relief of Plaintiffs and all Plan participants as of the date of judgment.

### E. Plaintiffs and class counsel will adequately represent the classes (Rule 23(a)(4))

The named Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). They have no "conflicts of interest" with absent class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The named Plaintiffs' interests are aligned with the class members' interests. Plaintiffs are acting on behalf of their Plan, enforcing the fiduciary duties Defendants owed to the Plan, and seeking to obtain remedies due to the Plan. *See* 29 U.S.C. §1109(a); *Russell*, 473 U.S. at 142 n.9. The proposed representatives and all class members share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *Spano*, 294 F.R.D. at 125; *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2016 WL 4992504, at *7 (S.D. Ill. Sep. 16, 2016) (adequacy satisfied where "Plaintiffs are seeking the same relief and share the

13

same interest in establishing defendants' liability.").

Because the classes are limited to participants who suffered losses from investing in the Aon Funds, there is no risk of conflict among class members. Any participants "who have no complaint about [the Aon Funds], in light of the dates when they first invested and the date when they exited" are excluded from the class. *Spano*, 633 F.3d at 587. Limiting the class by comparison to a benchmark is "one reasonable way to exclude from the class any persons who did not experience injury." *Abbott*, 725 F.3d at 814.

Moreover, while class representatives must zealously advocate for the class, they need no more than "a marginal familiarity with the facts comprising the action" and a willingness to participate in discovery. *Johnson v. Rohr-Ville Motors, Inc*., 189 F.R.D. 363, 369–70 (N.D. Ill. 1999); *see also Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981); *Surowitz v. Hilton Hotels Corp*., 383 U.S. 363, 366 (1966).

The named Plaintiffs amply meet this standard. Each of them understands the nature of the claims and their duties to vigorously prosecute the case to conclusion. Wachala Decl. ¶¶2–6; Preuss Decl. ¶¶2–6; Bickle Decl. ¶¶2–6; Walsh Decl. ¶¶2–6; Adeneye Decl. ¶¶2–7. Plaintiffs have shown their commitment by reviewing pleadings, staying updated on the progress of the case, responding to discovery, and appearing for deposition. Wachala Decl. ¶¶7–8; Preuss Decl. ¶¶7–8; Bickle Decl. ¶¶7–8; Walsh Decl. ¶¶7–8; Adeneye Decl. ¶¶8–9; Ex. 24, Gough Tr. 173:18–176:17, 181:12–182:23. The depositions further demonstrate their adequacy as class representatives.[6]

---

[6] Bickle Tr. 250:19−24, 262:6−263:1, 263:13−19; Preuss Tr. 139:6−14, 168:23−169:4, 169:10:17, 179:17−24, 181:1−16, 188:7−17; Wachala Tr. 235:13−236:5, 241:5−14; 242:12−17.
Adeneye Tr. 62:7−10, 213:17−2, 214:6−216:3, 221:11−21, 222:10−19; Ex. 24, Gough Tr. 80:16−81:8, 82:6−18, 134:7−13, 172:7−14, 173:9−24, 176:3−8, 181:12−182:2.

Rule 23(a)(4) also considers the adequacy of proposed class counsel. *Spano*, 633 F.3d at 586. In appointing class counsel, courts consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Before filing this action, Plaintiffs' counsel thoroughly investigated potential claims and legal issues. Schlichter Decl. ¶¶20–21. Plaintiffs' counsel has extensive class action experience, having been appointed as class counsel in 34 large ERISA fiduciary breach class actions and achieving numerous favorable settlements and judgments. *Id.* ¶¶2–19, 22–31. The firm is recognized as a "pioneer and the leader in the field," *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, *1 (S.D. Ill. July 17, 2015), and "clearly experts in ERISA litigation," *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, *3 (W.D. Mo. Nov. 2, 2012). Plaintiffs' counsel will commit all necessary resources to representing the class. Schlichter Decl. ¶18. Counsel's credentials are described further in the attached biography. *Id.* ¶33. The Court should appoint Schlichter, Bogard & Denton LLP as class counsel.

## III. The proposed classes satisfy Rule 23(b).

### A. The classes satisfy Rule 23(b)(1)(A) or (B)

This ERISA fiduciary breach case is a "paradigmatic" Rule 23(b)(1) class action. *Schering*, 589 F.3d at 604. Indeed, courts have overwhelmingly certified §1132(a)(2) actions under Rule 23(b)(1)(A), (b)(1)(B), or both. *Neil v. Zell*, 275 F.R.D. 256, 267–68 (N.D. Ill. 2011); *Loomis v. Exelon Corp.*, No. 06-4900, 2007 WL 2060799, at *4–5 (N.D. Ill. June 26, 2007); *Spano*, 294 F.R.D. at 122–24; *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388, 405 (S.D. Ill. 2012).

15

Rule 23(b)(1) certification is proper if "prosecuting separate actions by or against individual class members would create a risk of:"

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members. *Rogers v. Baxter Int'l Inc.*, No. 04-6476, 2006 WL 794734, at *8 (N.D. Ill. Mar. 22, 2006). Both apply here.

### 1.    The proposed classes satisfy Rule 23(b)(1)(A).

Rule 23(b)(1)(A) "takes in cases where the [defendant] is obligated by law to treat the members of the class alike" or "must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614. "One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 amend., sub. (b)(1)(A).

Here, Defendants owed fiduciary duties to the Plan and hence all class members. *See* 29 U.S.C. §1104(a)(1). In discharging those duties, Defendants were obligated to treat all participants (and all class members) alike. *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding Fed. R. Civ. P. 23(b)(1)(A) satisfied "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'") (citation omitted).

If 2,000 individual class members each pursued a §1132(a)(2) action on behalf of the Plan, Defendants could be subject to varying adjudications as to whether they breached their duties to

the Plan, how to measure Plan losses, and whether equitable relief is warranted. Inconsistent adjudications on those issues in "thousands of separate individual actions" would put Defendants in the "untenable" position of being subject to "differing standards of duty and, thus, differing standards of conduct," thereby leaving them "in limbo" and "making compliance impossible." *Shanehchian v. Macy's, Inc*., No. 07-828, 2011 WL 883659, at *9 (S.D. Ohio Mar. 10, 2011).

Regarding Count I, the factfinder will determine whether Aon acted with loyalty and used appropriate methods to select and monitor the Aon Funds, whether the Aon Funds were prudent investments, and the proper benchmark alternative to measure Plan losses. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 959 (8th Cir. 2017) (court must determine losses resulting from breach of duty in replacing a prudent investment for disloyal reasons). Count III will require a determination of whether payments of Plan assets to Aon were reasonable or excessive. *See, e.g., Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291, *11–13 (W.D. Mo. Mar. 31, 2012) (calculating damages based on difference between fees paid by plan and the reasonable market rate). Equitable relief may also be appropriate, such as requiring Defendants to implement an enhanced investment-review process or to obtain an independent review by an unconflicted third party. *See, e.g., id.* at *39 (ordering breaching fiduciary to "utilize[] a competitive bidding process … to select a new recordkeeper"); *Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2588029, *3 (M.D.N.C. June 24, 2019) (approving settlement involving "considerable non-monetary relief" including the use of an independent consultant).

Separate individual adjudications to resolve any of those issues would create incompatible standards for Defendants as to the amount in losses they must restore to the Plan under §1109(a) and how to reform the Plan and otherwise remedy Defendants' breaches. As numerous courts have recognized, these claims are properly certified under Rule 23(b)(1)(A). *Piazza v. Ebsco*

17

*Indus., Inc.*, 273 F.3d 1341, 1352–53 (11th Cir. 2001); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576–77 (D. Minn. 2014); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008); *Harris v. Koenig*, 271 F.R.D. 383, 394–95 (D.D.C. 2010); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009).

### 2. The proposed classes satisfy Rule 23(b)(1)(B).

For similar reasons, any individual adjudication of these issues effectively "would be dispositive of the interests" of all other participants. Fed. R. Civ. P. 23(b)(1)(B). "Classic examples" of Rule 23(b)(1)(B) claims include "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which require an accounting or like measures to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (quoting Fed. R. Civ. P. 23, Adv. Comm. Notes, 1966 Amends., subd. (b)(1)(B)). In such cases, the "shared character of rights claimed or relief awarded entails the risk that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 834.

Because of the trust-like nature of a defined contribution plan, with fiduciary duties owed to the plan and not to particular individuals, courts have routinely certified similar claims as Rule 23(b)(1)(B) class actions. *Schering*, 589 F.3d at 604; *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 165 & n.17 (S.D.N.Y. 2017) ("Most courts that have certified ERISA class actions alleging breaches of fiduciary duties have done so under Rule 23(b)(1)(B)."); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15-9936, 2017 WL 3868803, *9 (S.D.N.Y Sept. 5, 2017) ("[C]ourts regularly certify 23(b)(1)(B) class actions ... in ERISA cases alleging breach of a fiduciary duty[.]") (quoting Rubenstein, 3 *Newberg on Class Actions* §4:20 (5th ed. 2017)); *Krueger*, 304 F.R.D. at 577–78; *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593, 2011 WL 1303367, *9 (D. Kan. Apr. 6, 2011); *Stanford*, 263 F.R.D. at 173–74; *Harris*, 271 F.R.D. at 394.

Even if absent participants were not barred by *res judicata* from litigating the same claims, as a "practical matter" a prior adjudication of whether Aon breached its duties to the Plan in selecting the Aon Funds would heavily influence a subsequent court's adjudication of the same issue. *Eliasen v. Green Bay & W. R. Co.*, 93 F.R.D. 408, 413 (E.D. Wis. 1982) (finding Rule 23(b)(1)(B) satisfied because "[o]ther courts could, as a matter of comity, give deference" to fiduciary breach and damages findings "as a determination of the identical factual questions presented in a subsequent suit."). Thus, Plaintiffs satisfy both Rule 23(b)(1)(A) and (b)(1)(B).

**B.** **In the alternative, the classes should be certified under Rule 23(b)(3).**

When a class satisfies both Rule 23(b)(1) and Rule 23(b)(3), Rule 23(b)(1) controls.[7] "To hold otherwise would 'directly contraven[e]' the stated purpose" of Rule 23(b)(1). *Leber*, 323 F.R.D. at 165 (quoting Wright, Miller, & Kane, 7AA FED. PRAC. & PROC. CIV. §1772 (3d ed. 2017)); *accord DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (Rule 23(b)(3) "should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation."). It is thus an abuse of discretion to certify an ERISA fiduciary breach action under Rule 23(b)(3) if the class also satisfies Rule 23(b)(1). *Piazza*, 273 F.3d at 1352. Nevertheless, the class also satisfies the "predominance" and "superiority" requirements of Rule 23(b)(3).

The predominance requirement is met when the issues "subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 746-47 (7th Cir. 2001). Here, for the same reasons that Rule 23(a)(2) commonality is met, there are many common issues of law and fact. Aon selected the Aon Funds for the entire Plan. The evidence that Aon breached its fiduciary duties in making that decision consists solely of Plan-level facts that are

---

[7] The Equitable Relief Class is also certifiable under Fed. R. Civ. P. 23(b)(2).

the same for all Plan participants. The evidence needed to calculate losses is also common proof: the performance of the Aon Funds relative to the legacy options during the relevant period.

A class action is "superior to other available methods" of adjudication, Fed. R. Civ. P. 23(b)(3), when it "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

Given the expense of federal court litigation and the need for expert testimony on these complicated financial issues, the losses suffered by individual class members are too small to feasibly pursue on an individualized basis. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 665 (7th Cir. 2001) (similar). Given the nature of the allegations seeking Plan-wide relief for the same Plan-level breaches of fiduciary duties, no class member has an interest in individually controlling the prosecution of this matter that seeks to recover losses on behalf of the Plan.

Concentrating all litigation concerning the Plan's fiduciaries in a single action would undeniably conserve party and judicial resources by resolving questions concerning the Plan in one proceeding, rather than sorting out the disparate effects of many and possibly contradictory orders in individual cases. Finally, Plaintiffs' counsel has litigated numerous 401(k) plan class action claims through trial with no apparent manageability issues. *See, e.g.*, *Tibble*, 575 U.S. at 526; *Tussey v. ABB, Inc*., 746 F.3d 327, 336 (8th Cir. 2014); *Ramos v. Banner Health*, 1 F.4th 769, 773–74 (10th Cir. 2021). Thus, Rule 23(b)(3) certification is proper.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification should be granted.

October 15, 2021                    Respectfully submitted,

                                   /s/ Sean E. Soyars
                                   SCHLICHTER BOGARD & DENTON LLP
                                   Jerome J. Schlichter
                                   Troy A. Doles
                                   Heather Lea
                                   Sean E. Soyars
                                   Kurt C. Struckhoff
                                   100 South Fourth Street, Suite 1200
                                   St. Louis, MO, 63102
                                   (314) 621-6115
                                   (314) 621-5934 (fax)
                                   jschlichter@uselaws.com
                                   tdoles@uselaws.com
                                   hlea@uselaws.com
                                   ssoyars@uselaws.com
                                   kstruckhoff@uselaws.com

                                   *Lead Counsel for Plaintiffs*

                                   DEGRAND LAW, P.C.
                                   Luke DeGrand
                                   10 S. LaSalle Street, Ste. 3400
                                   Chicago, IL 60603
                                   (312) 236-9200
                                   (312) 236-9201 (fax)
                                   ldegrand@degrandlaw.com

                                   *Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 15, 2021.

                                   /s/  Sean E. Soyars
                                   Sean E. Soyars