Page 1

** CONFIDENTIAL **

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
CASE NO. 1:20-cv-03882

MICHAEL WACHALA, et al.,                )
                                        )
        Plaintiffs,                     )
                                        )
                                        )
    -vs-                                )
                                        )
ASTELLAS US LLC, et al.,                )
                                        )
        Defendants.                     )

CONFIDENTIAL VIDEOTAPED ZOOM
DEPOSITION OF JACQUELINE GOUGH

The deposition upon oral examination of JACQUELINE GOUGH, a witness produced and sworn before me, Tracy Larimore, RPR, Notary Public in and for the County of Allen, State of Indiana, taken on behalf of the Defendants, conducted remotely via Zoom, on the 20th day of August, 2021, scheduled to commence at 8:00 a.m., CST pursuant to the Rule 30 of the Federal Rules of Civil Procedure with written notice as to time and place thereof.

Job No. CS4769178

** CONFIDENTIAL **

Page 80

```
1    A    I talked about what the lawsuit was about, and
2         what it might mean to, to participate in the
3         lawsuit, that the time and effort it would mean,
4         and whether it was a significant concern that --
5         significant enough concern that I would want to
6         participate.
7    Q    What do you recall telling your husband what the
8         lawsuit was about?
9    A    It was about whether the funds that had been
10        invested on the part of Astellas's current and
11        former employees who had participated in the
12        plan, and whether they had been handled well,
13        whether they had -- the choice of investments
14        was appropriate and whether the, the management
15        had been appropriate.
16   Q    And you also mentioned, you talked to him about
17        the time and effort.  What did you tell him
18        about, you know, your understanding of the time
19        and effort that it would take for you to be a
20        named plaintiff in the case?
21   A    That it would, it would be some effort.  There
22        would be some time commitment to, to do some
23        work, to participate.  And evaluating that
24        against the many things that we had ongoing at
25        the time.
```

** CONFIDENTIAL **

Page 81

```
 1    Q    And some work, you know, what, what does that
 2         mean to you, like ballpark in, in hours?
 3    A    In hours?  I, I didn't know in hours at the time
 4         what it would take, but I understood it was
 5         going to be several conversations with the legal
 6         team and potential for this deposition, as well
 7         as some effort to produce documents and answer
 8         questions.
 9    Q    Did you, did you -- was it your understanding
10         that it would be a significant amount of time?
11    A    It was not my understanding that it would be a
12         significant amount of time, but that it would
13         not be -- it would not be trivial.
14    Q    And was it your understanding that there would
15         be some reward for the time you spent?
16    A    There -- that is entirely up to the Court.  I
17         was -- no expectation was created.
18    Q    Is it your understanding at the time, or now,
19         that if the Court grants in your favor, you will
20         be compensated beyond just -- beyond as just a
21         member of the class?
22    A    My understanding is that there is a potential
23         for that, but no guarantee.  And it, and it, it
24         is not -- I'm not relying on that.
25    Q    You're say -- you're -- just so I understand,
```

|   |   |   |
|---|---|---|
| 1 |   | when you say you're not relying, you would have |
| 2 |   | joined as a named plaintiff regardless of |
| 3 |   | whether, whether there would be any additional |
| 4 |   | compensation for being a named plaintiff? |
| 5 | A | Yes, that is true. |
| 6 | Q | So how did you reach the conclusion that it was |
| 7 |   | worth your time and effort, even if, you know, |
| 8 |   | there is uncertainty that you would get anything |
| 9 |   | monetarily extra out of that time and effort? |
| 10 | A | When, when there's the potential for people to |
| 11 |   | not be good conservators of money, people invest |
| 12 |   | for retirement, I -- I'm -- that concerns me. |
| 13 |   | Like many others, I don't spend a lot of time |
| 14 |   | watching what happens with my retirement funds. |
| 15 |   | I rely on the people who are hired to do that to |
| 16 |   | do a good job.  And so if they aren't living up |
| 17 |   | to their obligations, then that's a concern. |
| 18 |   | And so I feel that that should be called out. |
| 19 | Q | So it's your position that the individuals with |
| 20 |   | responsibility to manage the Astellas 401(k) |
| 21 |   | plans were not good conservators of that |
| 22 |   | retirement plan? |
| 23 | A | I believe that's what the lawsuit alleges, yes. |
| 24 | Q | Did you believe that though, yourself? |
| 25 | A | Yes. |

| | | |
|---|---|---|
| 1 | A | I do not recall. |
| 2 | Q | Do you recall if you were invested in any of the |
| 3 | | funds that are being challenged in this case? |
| 4 | A | I don't believe I am, I did -- to the best of my |
| 5 | | recollection, I am not involved in those |
| 6 | | specific funds. |
| 7 | Q | Do you think it's important as a named plaintiff |
| 8 | | to be invested in one of the funds that's being |
| 9 | | challenged in the case? |
| 10 | | MR. BUMB: Objection. |
| 11 | A | I think it's important to be invested in the |
| 12 | | plan, because it's the plan as a whole that |
| 13 | | matters. |
| 14 | Q | And if, if you were not invested in any of the |
| 15 | | funds that's being challenged in the Complaint, |
| 16 | | what's your understanding to how the outcome of |
| 17 | | this -- this lawsuit could affect you |
| 18 | | personally? |
| 19 | A | If I'm not part of those specific funds, I still |
| 20 | | believe that there's a management fee component |
| 21 | | to this, but, ultimately, I am not in this for |
| 22 | | great monetary gain, I'm in this because it's |
| 23 | | the right thing to do. |
| 24 | Q | And what do you mean by a "management fee"? |
| 25 | A | The, the cost of managing the funds represented. |

** CONFIDENTIAL **

Page 172

1     this marks the beginning of Media Unit Number 4.
2        You may proceed.  Thank you.
3 BY MR. BLOCK:
4 Q  Let's shift now to talking about sort of your
5    adequacy as a class representative.
6       So first question, sort of following up on
7    what we just discussed is:  Why do you think
8    that you're in a good position to represent the
9    class in this case?
10 A  I am a plan participant.  I have been a plan
11    participant since 2018.  I remain a plan
12    participant, and so I'm still impacted by
13    decisions that the defendants make about the
14    plan.
15 Q  Do you think that you can adequately represent
16    people who invest in the Aon Funds when you,
17    yourself, never invested in the Aon Fund?
18       MR. BUMB:  Objection.
19 A  I think I can adequately represent employees and
20    former employees who have invested in the plan
21    as a whole, whether it was with an Aon Fund or a
22    non-Aon Fund.
23 Q  Do you think that you can adequately represent
24    people who allege to be in the higher-cost share
25    class, if it is true that you, yourself, was

| | | |
|---|---|---|
| 1 | | never in a fund that was in a supposedly |
| 2 | | higher-cost share class? |
| 3 | A | So -- |
| 4 | | MR. BUMB:  Objection. |
| 5 | A | -- again, I'm, I'm representing the totality of |
| 6 | | investors.  That, that is my role as a class |
| 7 | | representative.  It's not just people who match |
| 8 | | my particular investment experience. |
| 9 | Q | And why do you think it is that, you know, you |
| 10 | | can represent someone who, who was, you know, |
| 11 | | affected by allegations in the Complaint that |
| 12 | | you weren't affected by? |
| 13 | A | I -- I'm -- I remain affected by the, the |
| 14 | | decisions and the -- the management decisions, |
| 15 | | the oversight decisions made about the plan as a |
| 16 | | whole.  And so I, I am still part of the class |
| 17 | | of affected individuals. |
| 18 | Q | Okay.  So what do you understand your duties as |
| 19 | | a class representative to be? |
| 20 | A | My duties are to be available to answer |
| 21 | | questions, to answer the interrogatories, to |
| 22 | | provide documents as required, to participate in |
| 23 | | this deposition, and if required, should it go |
| 24 | | to trial, to participate in the trial. |
| 25 | Q | I think the first thing you said was answer |

** CONFIDENTIAL **

Page 176

1 that?
2 A Correct.
3 Q Is it one of your duties to stay apprised of the
4 litigation?
5 A Yes, which I would rely on my attorneys to keep
6 me apprised.
7 Q So have you stayed apprised of the litigation?
8 A To the best of my ability, yes.
9 Q And how have you done so?
10 A Through routine conversations with my lawyer.
11 Q Do you think it's important for you to stay
12 apprised of what's happening in the litigation?
13 A I think it's important to know if anything
14 further is required of me, but I, I don't think
15 the case is going to hinge on whether or not I'm
16 aware of anything associated with the
17 litigation.
18 Q Because your job is to -- as a class
19 representative, is to monitor your lawyers, not
20 run the case; is that right?
21      MR. BUMB:  Objection.
22 A Say that again?
23 Q Yeah.
24      Because your job, as class representative,
25 is to monitor the lawyers on behalf of the

** CONFIDENTIAL **

Page 181

```
 1        someone who's monitoring to understand, you
 2        know, the main takeaways from that [inaudible]
 3        document?
 4   A    I'm, I'm understanding the main takeaways from
 5        the document when I review it, but I usually
 6        have follow-up questions to my legal team to, to
 7        understand what the document is saying and
 8        making sure that I understand what the intent
 9        is.
10   Q    So, so when you're monitoring your
11        lawyers -- strike that.
12             When you're monitoring someone like your
13        lawyers, who are working in a fiduciary
14        capacity, your obligation is not to recreate the
15        work that the fiduciary has done, but just to,
16        you know, understand it and check that the
17        process makes sense?
18             MR. BUMB:  Objection.
19   A    The intent is to understand that thought went
20        into the, the decisions about how to move
21        forward; that, that options were considered;
22        that, that they did the, the work to make a good
23        decision.  It's not important that I understand
24        everything about the content of the work, but
25        that I have done -- that I've asked the right
```

** CONFIDENTIAL **

Page 182

```
 1        questions to make sure that they have done the
 2        work appropriately.
 3   Q    All right.  Because if you were going to do the
 4        work yourself, there would be no reason to
 5        hire --
 6   A    No.
 7   Q    Speaking of hiring, before you hired Schlichter
 8        Bogard & Denton, did you evaluate any other
 9        lawyers to represent you in this matter?
10   A    I did not.
11   Q    Why not?
12   A    The -- because I joined the lawsuit already in
13        progress.  They were already the lawyers of
14        record for the lawsuit, and they have a
15        excellent reputation in this arena.
16   Q    How do you know if you have adequate repris- --
17        representation without comparing the lawyers to
18        other lawyers?
19   A    It is based on experience.  It's based on
20        answers to my questions, about how this works,
21        and how to proceed.  It's, it's based on
22        ascertaining if they understand how to do a good
23        job.
24   Q    And you mentioned one of the things that you
25        relied on was the reputation of your lawyers.
```

** CONFIDENTIAL **

Page 214

```
 1    STATE OF INDIANA   )
                         ) SS:
 2    COUNTY OF ALLEN    )
 3              I, Tracy L. Larimore, a Registered
      Professional Reporter and Notary Public in and for
 4    the County of Allen, State of Indiana at large, do
      hereby certify that JACQUELINE GOUGH, the deponent
 5    herein, was by me first duly sworn to tell the
      truth, the whole truth, and nothing but the truth in
 6    the aforementioned matter;
 7              That the foregoing deposition was taken on
      behalf of the Defendants, taken remotely via Zoom,
 8    on the 20th day of August, 2021, commencing at the
      hour of 8:00 a.m. CST, pursuant to the Rules;
 9
                That said deposition was taken down
10    stenographically and transcribed under my direction,
      and that the typewritten transcript is a true record
11    of the testimony given by the said deponent; and
      thereafter presented to said deponent for her
12    signature;
13              That the parties were represented by their
      counsel as aforementioned.
14
                I do further certify that I am a
15    disinterested person in this cause of action; that I
      am not a relative or attorney of any party, or
16    otherwise interested in the event of this action,
      and am not in the employ of the attorneys for any
17    party.
                IN WITNESS WHEREOF, I have hereunto set my
18    hand and affixed my notarial seal this 2nd day of
      September, 2021.
19
20
21
                          Tracy L. Larimore
22                             Seal
                     Notary Public, State of Indiana
23                     Commission No. 657233
                My Commission Expires August 21, 2022
24
25
```