# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSAN WOERTH MILLER, FAURUM SANKARI, ANGELA HEIMGARTNER, MICHAEL WACHALA, MARY BETH PREUSS, ERIC TERHAERDT, PATRICIA WALSH, AND SHEILA EARLY, individually and as representatives of classes of participants and beneficiaries on behalf of the Astellas US Retirement and Savings Plan, | |
| Plaintiffs, | Civil Action No. 1:20-cv-03882 |
| v. | Honorable Ronald A. Guzman |
| ASTELLAS US LLC, THE BOARD OF DIRECTORS OF ASTELLAS US LLC, THE ASTELLAS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE, AON HEWITT INVESTMENT CONSULTING, INC. (NKA AON INVESTMENTS USA, INC.), AND JOHN DOES 1–14, | CLASS ACTION |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 4

LEGAL STANDARD.............................................................................................................. 8

ARGUMENT .......................................................................................................................... 10

I.     The Members of Plaintiffs' Proposed "Investment Loss Class" Have Directly Conflicting Interests Concerning Which Aon Trust Funds to Challenge, Precluding Certification of That Proposed Class.............................. 10

     A.     Plaintiffs' Choice to Pursue a Broad Challenge to All of the Aon Trust Funds Would Deprive Many Putative Class Members of an Ability to Assert Any Investment Loss and Would Diminish the Asserted Losses of Many More. ............................................................. 10

     B.     The Direct Conflict Between Plaintiffs' Broad Attack on the Aon Trust Funds and the Interests of Numerous Class Members Exemplifies Broader Conflicts Within the Proposed Investment Loss Class. ................................................................................... 15

II.     A Central Conflict Divides Plaintiffs' Proposed Equitable Relief Class............. 18

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
    725 F.3d 803 (7th Cir. 2013) ................................................................. 15, 17

*Adams v. S. Farm Bureau Life Ins. Co.*,
    493 F.3d 1276 (11th Cir. 2007) .................................................................. 13

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................................... 9

*Bieneman v. City of Chicago*,
    864 F.2d 463 (7th Cir. 1988) ..................................................................... 15

*Brown v. Bartholomew Consol. Sch. Corp.*,
    442 F.3d 588 (7th Cir. 2006) ....................................................................... 4

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ......................................................................................... 9

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................... 9

*In re Ready-Mixed Concrete Antitrust Litig.*,
    261 F.R.D. 154 (S.D. Ind. 2009) .................................................................. 9

*Jamie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ........................................................................ 9

*Loren v. Blue Cross & Blue Shield of Mich.*,
    505 F.3d 598 (6th Cir. 2007) ..................................................................... 12

*O'Neill v. Gourmet Systems of Minnesota, Inc.*,
    219 F.R.D. 445 (W.D. Wis. 2002) ............................................................... 9

*Okoro v. Bohman*,
    164 F.3d 1059 (7th Cir. 1999) .................................................................... 13

*Reetz v. Lowe's Cos.*,
    No. 18-CV-75, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021)........................ 14

*Riffey v. Rauner*,
    873 F.3d 558 (7th Cir. 2017), *rev'd on other grounds*, 138 S.Ct. 2708 (2018).......... 10, 16

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) .................................................................... 16

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Sec'y of Lab. v. Fitzsimmons*,
805 F.2d 682 (7th Cir. 1986) ........................................................................ 16

*Shields v. Loc. 705, Int'l. Bhd. of Teamsters*,
No. 96 C 1928, 1996 WL 616548 (N.D. Ill. Oct. 23, 1996) ............................ 10

*Sierakowski v. Ryan*,
223 F.3d 440 (7th Cir. 2000) ........................................................................... 4

*Spano v. Boeing Co.*,
633 F.3d 574 (7th Cir. 2011) ............................................................. 10, 13, 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ........................................... 12

*Susman v. Lincoln Am. Corp.*,
561 F.2d 86 (7th Cir. 1977) ........................................................................... 17

*Taylor v. KeyCorp*,
680 F.3d 609 (6th Cir. 2012) ......................................................................... 11

*Thole v. U. S. Bank N.A*,
140 S. Ct. 1615 (2020) ............................................................................ 12, 19

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
843 F.3d 561 (2d Cir. 2016) .......................................................................... 1, 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................................... 8, 9

**Statutes**

29 U.S.C. § 1009(a) ............................................................................................. 2

29 U.S.C. §1109(a) ............................................................................................. 2

29 U.S.C. §1132(a)(2) .......................................................................................... 1

ERISA § 409(a) ..................................................................................................... 2

ERISA § 502(a)(2) ................................................................................................ 1

**Other Authorities**

Restatement (Third) of Trusts § 101 (2012) ................................................... 1, 11

## INTRODUCTION[1]

Plaintiffs' attempts to manufacture plausible claims and losses in this case have created intractable conflicts among the members of their purported "Investment Loss" and "Equitable Relief" classes. These conflicts disable plaintiffs from meeting the requirements of typicality and adequate representation under Federal Rule of Civil Procedure 23.

Plaintiffs' claims face a fundamental problem—the Aon Trust Funds that they challenge as imprudent have largely outperformed[2] their market benchmarks and have performed in line with the funds they replaced. To suggest otherwise (and to manufacture significant alleged losses), plaintiffs arbitrarily cut off their loss calculation period as of June 2020. Then they instruct their expert irrationally to tally only those instances where a participant's investment in an Aon Trust Fund underperformed one of the funds it replaced while entirely ignoring the numerous instances where *the same Aon Trust Fund* outperformed other predecessors. Declaration of W. Pollak ("Pollak Decl."), Ex. C, Deposition of Edward O'Neal ("O'Neal Dep.") at 29:6–16. Needless to say, the law does not permit this kind of cherry-picking.[3] Because plaintiffs are challenging a "single unified decision" to include all five Aon Trust Funds in place of prior options, the Plan's alleged loss must be measured as the net effect of that decision across all participants' account allocations—factoring in both purported losses and gains relative to replaced funds. Plaintiffs'

---

[1] Unless stated otherwise herein, internal citations have been omitted and all emphasis is supplied.

[2] The terms "overperform" and "underperform" are used colloquially herein in the same manner that plaintiffs use them, i.e., to refer to generating greater or lower absolute returns than a stated benchmark.

[3] *See, e.g., Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 570 (2d Cir. 2016) (explaining that where there is a single alleged breach of trust or closely related series of them, a fiduciary is "chargeable only with the net loss resulting."); *see also* Restatement (Third) of Trusts § 101 (2012).

Motion for Class Certification, ECF No. 141 ("Pls' Mem.") at 10. And they should be measured across the entire Plan on whose behalf plaintiffs purport to assert their claims.[4]

In addition to creating a huge hurdle for plaintiffs on the merits, the principle requiring losses and gains from "single" fiduciary decisions to be netted creates irreconcilable conflicts among the members of plaintiffs' classes. This is because many of the members of plaintiffs' putative class had only net economic gains across their cumulative investments in the five Aon Trust Funds. According to plaintiffs' expert's own calculations, the outsized returns that fully 504 putative class members experienced on some Aon Trust Funds outstripped any "losses" they purportedly experienced on others. Declaration of Professor John Chalmers ("Chalmers Decl.") ¶¶ 34, 44. Under plaintiffs' "single unified decision" litigation theory, these 504 putative class members are not properly entitled to any damages, as they suffered none. And if they are herded into plaintiffs' proposed class, they will lose their ability to pursue individualized theories of breach limited to particular Aon Trust Funds as to which they could at least conceivably allege personal losses.[5] To be sure, any such narrower theories of breach would be no more plausible than the more sweeping theory of breach plaintiffs have manufactured for their litigation here. But a narrower tack would offer these participants at least some opportunity to meet their threshold burden of identifying a cognizable harm.

These conflicts preclude certification. Plaintiffs' insistence upon pursuing a "single unified decision" theory of breach would essentially require numerous putative class members to surrender

---

[4] *See* Pls' Mem. at 1 (asserting that "plaintiffs' claims do not involve individual relief" but that plaintiffs are instead bringing claims "on behalf of the plan" under ERISA § 502(a)(2), 29 U.S.C. §1132(a)(2) for remedies under ERISA § 409(a), 29 U.S.C. § 1009(a)); 29 U.S.C. §1109(a) (providing that a breaching fiduciary is liable for losses "to the plan").

[5] In addition to those individuals who have no losses under plaintiffs' "single unified decision" challenge, at least 1,091 out of 2,281 additional putative class members would have their potential recoveries diminished as the result of plaintiffs' decision to frame the alleged breach as a single decision to incorporate all five Aon Trust Funds, as plaintiffs' expert's calculations reflect. *See* Chalmers Decl. ¶¶ 43–45.

their litigation rights for exactly nothing. Plaintiffs' claims cannot be considered typical under such circumstances. Nor can plaintiffs be considered adequate representatives of individuals that the "single unified decision" theory of breach could only harm. For this reason, plaintiffs' request to certify an "Investment Loss Class" must be denied.

Conflicts also prevent certification of plaintiffs' "Equitable Relief Class," which plaintiffs describe as consisting of all participants in the Plan "with account balances as of the date of judgment." Pls.' Mem. at 6. Plaintiffs contend in support of this class that "equitable relief may also be appropriate, such as requiring Defendants to implement an enhanced investment-review process or to obtain an independent review by an unconflicted third party." Pls.' Mem. at 17. But plaintiffs have arbitrarily cut off their proposed "Investment Loss" class period at June 2020, breezily asserting that defendants' investment review process became sufficiently "enhanced" and devoid of conflicts as of that date. Pls.' Mem. at 8. (In fact, plaintiffs' likely motivation for truncating their loss period is that, as defendants' expert Professor John Chalmers explains, the Aon Trust Funds have subsequently largely outperformed the Legacy Options, diminishing any case for losses. Chalmers Decl. ¶ 56, Chalmers Ex. 8.)[6] Yet while plaintiffs' made-up assertion that defendants' processes fundamentally changed in June 2020 may serve the interests of Plan participants who are included in the Investment Loss Class, it harms the rest of the Equitable Relief Class—i.e., those for whom equitable relief represents the only potential relief in the lawsuit— because it eliminates any basis for equitable relief. If, as plaintiffs now contend, defendants have

---

[6] As Chalmers reports, as of May 31, 2021—the last date for which Dr. O'Neal had participant-level investment data—the Plan had experienced an overall **gain** on its investment in the Aon Trust Funds since the addition of those funds to the Plan's investment lineup relative to what it would have received had the same assets been invested in the Legacy Funds. Chalmers Decl. ¶ 56–57. As the result of subsequent market fluctuations, the Plan's returns on the Aon Trust Funds through October 31, 2021, have been slightly less than the Legacy Funds would have provided, but the resulting relative Plan "loss" is a fraction of the Plan "loss" generated using plaintiffs' arbitrary June 30, 2020 endpoint and a small fraction of the losses claimed in plaintiffs' brief. *Id.*

already taken sufficient steps to discontinue both the existence and effects of their only wrongdoing, no equitable relief is necessary or warranted to redress that purported past breach.[7] Thus, an unavoidable conflict exists between those putative Equitable Relief Class members who are also putative Investment Loss Class members and those who are not, precluding certification of the Equitable Relief Class.

For these reasons, the Court should deny plaintiffs' motion for class certification, and require plaintiffs' claims to be tried individually.

## FACTUAL BACKGROUND

Astellas US LLC ("Astellas") sponsors the Astellas US LLC Retirement & Savings Plan (the "Plan"), a 401(k) plan that allows employees to invest for retirement. Compl. ¶¶ 7–9. Aon Hewitt Investment Consulting Inc. ("AHIC") is a registered investment advisor that, prior to August 26, 2016, provided investment consulting services to the Astellas Administrative Committee. *Id.* ¶¶ 22, 25, 41. During that time, the Plan's investment menu provided participants with a choice among approximately 17 investment options, including target-date, bond, and equity funds covering a range of market capitalizations and "growth" and "value" investment styles.

On August 31, 2016, Astellas entered into an Investment Management Agreement ("IMA") delegating discretionary responsibility to AHIC for, among other things, selecting investment options for the Plan's investment lineup. *Id.* ¶¶ 22, 41–42; *see also* ECF 37–1, IMA. On October 3, 2016, pursuant to a revised investment policy statement approved by Astellas that called for a somewhat simpler Plan investment menu, AHIC exercised its delegated fiduciary discretion to make changes to the Plan's investment lineup. ECF 37–2, 2016 IPS at 4. It removed

---

[7] *See Sierakowski v. Ryan*, 223 F.3d 440, 442–43 (7th Cir. 2000) ("a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury"); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006) (same).

eight single-strategy mutual funds (the "Legacy Investment Options" or "Legacy Funds") and replaced them with the Aon Hewitt Large Cap Equity Fund ("Aon Large Cap Fund"), Aon Hewitt Small & Mid Cap Equity Fund ("SMID Fund"), Aon Hewitt Non-U.S. Equity Fund, Aon Hewitt Core Plus Bond Fund, and Aon Hewitt Inflation Strategy Fund (collectively, the "Aon Trust Funds"). Compl. ¶ 43. In particular, the Aon Large Cap Equity Fund replaced the MFS Large Cap Value and the T. Rowe Price Large Cap Growth funds; the Aon Small and Mid Cap Equity Fund replaced the Touchstone Mid Cap Value, AMG TimesSquare Mid Cap Growth, and DFA Small Cap funds; the Aon Hewitt Non-U.S. Equity fund replaced the American EuroPacific Growth Fund; the Aon Hewitt Core Plus Bond fund replaced the PIMCO Total Return Fund; and the Aon Hewitt Inflation Strategy Fund replaced the PIMCO Real Return Fund. *See* Declaration of Edward O'Neal ("O'Neal Decl.") at ¶ 12. The Aon Trust Funds remain investment options in the Plan's lineup. *See* Chalmers Decl. ¶ 56. Plaintiffs contend that the defendants breached their fiduciary duties of prudence and loyalty when they made the "single unified decision" to replace the Legacy Investment Options with the Aon Trust Funds. Pls.' Mem. at 1, 10, 12. On October 15, 2021, plaintiffs filed their motion for class certification seeking to certify an "Investment Loss Class;" a "Payment of Plan Assets Class;" and an "Equitable Relief Class." *Id.* at 6.

To identify the members of the "Investment Loss Class" and calculate their supposed losses, plaintiffs' expert, O'Neal, purported to "compare[] the actual investment results the participant experienced while invested in the Aon Trust [Funds] to the investment results the participant would have experienced if he or she [had remained] invested in [the Legacy Investment Options]" with the same percentage allocated to each of the Legacy Investment Options. O'Neal Decl. at ¶ 11; *see also* Chalmers Decl. at ¶ 24. There are at least two crucial respects, however, in which Dr. O'Neal's work fell short of his purported objective.

5

First, although the Aon Trust Funds remain investment options in the Plan today, ███████

████████████████████████████████████████████████████████. *See* O'Neal Dep. at

10:4–20. By arbitrarily cutting off his calculations at that point, O'Neal was able to inflate losses

on plaintiffs' theory of breach—as most of the Aon Trust Funds have strongly outperformed the

Legacy Funds since June 2020. *See* Chalmers Decl. ¶ 56, Chalmers Ex. 8.

Second, plaintiffs purport to "compare[] the actual investment results the participant

experienced while invested in the Aon Trusts to the investment results the participant would have

experienced if he or she [had remained] invested in [the Legacy Investment Options]." O'Neal

Decl. at ¶ 11. ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ *See* O'Neal Dep. at 29:13–16

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[8] Exhibit A to the Pollak Decl. is a copy of O'Neal's damages spreadsheet, as produced to defendants. In order to avoid identifying the names of putative class members along with their personal financial information in its brief, AHIC and Professor Chalmers have also had prepared an anonymized version of O'Neal's damages spreadsheet, Exhibit B to the Pollak Decl., that removes social security numbers and replaces the names of each non-plaintiff participants with a "Participant Number" and refers to non-named plaintiffs using their Participant Number in this memorandum.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ *See* O'Neal Dep. at 35:7–10; Pls.' Mem. at 8; Chalmers Decl. ¶

34, Chalmers Ex. 1.[9]

 In determining whether individual participants incurred a share of the Plan's purported

losses, O'Neal in many instances did not even measure the full effects of a participant's investment

in a particular Aon Trust Fund. ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[9] *See also* O'Neal Dep. at 45:17–47:16 ██████████████████████

████████████████████████████████████████████████████████



; Chalmers Decl. ¶¶ 35, 51, Chalmers Ex. 1.[10]

In total, over 500 of the individuals that plaintiffs identify as having incurred losses, and as members of the proposed Investment *Loss* Class, in fact *experienced overall gains* in their investments from the decision to add the Aon Trust Funds to the Plan lineup, according to plaintiffs' expert's own calculations for plaintiffs' cherry-picked period. Chalmers Decl. ¶¶ 34, 44; *cf.* O'Neal Dep. at 62:12–20

.[11] Despite plaintiffs' assertions that they have brought this action as representatives of the Plan and that "whether the Plan suffered a loss" is a common question in this litigation, Pls.' Mem. at 1, 10, O'Neal did not opine that the total dollar figure derived from his method of counting participants losses—while inexplicably ignoring corresponding participant gains—represented a Plan loss. Indeed,

. O'Neal Dep. at 62:22–63:21.[12]

## LEGAL STANDARD

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Class certification is appropriate only if, after a rigorous analysis, the

---

[10] *See also* O'Neal Dep. at 51:6–55:16

.

[11] An additional 231 Plan participants who invested in the Aon Trust Funds during the period measured by O'Neal experienced no losses as they had gains relative to the Legacy Funds from every Aon Trust Fund in which they invested. Chalmers Decl. ¶ 33, Ex. 1.

[12] Dr. O'Neal also submitted an expert report on November 5, 2021 related to the merits of this litigation that included the same exact (flawed) damages calculations in his declaration in support of class certification. This is the only damages calculation submitted by plaintiffs in this action.

trial court is satisfied that the requirements of Rule 23 have been met." *Jamie S. v. Milwaukee Pub. Sch.,* 668 F.3d 481, 493 (7th Cir. 2012). The Court thus may need "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350. A party seeking certification "must affirmatively demonstrate his compliance" with Rule 23, *id.*, and "'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350).

Rule 23's bedrock requirements exist, in part, to ensure that class members' interests will be aligned and not in conflict. Apart from numerosity, Rule 23's substantive standards are designed to "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621 (1997). Rule 23's requirements are thus interrelated. As to commonality, "[d]issimilarities within the proposed class" preclude certification where they prevent consistent resolution of class members' claims. *Dukes*, 564 U.S. at 374. In much the same fashion, "[t]he typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009). Finally, when it comes to adequacy, "[t]he most commonly accepted guideposts are that the plaintiff must have no conflict with the class and will vigorously prosecute the litigation on behalf of the class." *O'Neill v. Gourmet Systems of Minnesota, Inc.,* 219 F.R.D. 445, 454 (W.D. Wis. 2002); *see also General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (noting that typicality and adequacy inquiries "tend to merge").

Applying these standards, courts have held that "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Riffey v. Rauner*, 873 F.3d 558, 563–64 (7th Cir. 2017), *rev'd on other grounds*, 138 S.Ct. 2708 (2018); *Spano v. Boeing Co.*, 633 F.3d 574, 591 (7th Cir. 2011) (denying certification where, if plaintiffs were placed in the same class, "a conflict [would] result and class treatment [would] become untenable."). Because adequacy requires that a putative representative "must not have interests antagonistic to those of the class," certification is precluded where a potential intra-class conflict exists. *Shields v. Loc. 705, Int'l. Bhd. of Teamsters*, No. 96 C 1928, 1996 WL 616548, at *4 (N.D. Ill. Oct. 23, 1996).

## ARGUMENT

**I.**     **THE MEMBERS OF PLAINTIFFS' PROPOSED "INVESTMENT LOSS CLASS" HAVE DIRECTLY CONFLICTING INTERESTS CONCERNING WHICH AON TRUST FUNDS TO CHALLENGE, PRECLUDING CERTIFICATION OF THAT PROPOSED CLASS.**

    **A.**     **Plaintiffs' Choice to Pursue a Broad Challenge to All of the Aon Trust Funds Would Deprive Many Putative Class Members of an Ability to Assert Any Investment Loss and Would Diminish the Asserted Losses of Many More.**

Through their purported "Investment Loss Class," plaintiffs seek to pursue on a classwide basis the recovery of investment losses supposedly incurred by the Plan and its participants as the result of the inclusion of five different Aon Trust Funds in the Plan's investment menu. Plaintiffs do so despite each of the Aon Trust Funds having its own distinct investment strategy, holdings and performance, and despite different putative class members allocating their accounts across different combinations of the funds over different time periods. In *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), the Seventh Circuit raised doubts about certifying a class composed of participants investing in different funds with distinct strategies, recognizing that a fiduciary who acts imprudently in selecting one investment option may not be imprudent in selecting another and that participants investing in different options could thus have materially different claims. *Id.* at

586 ("It is entirely possible, after all, that out of the 11 options a particular plan might offer, 10 were sound and one was ill-advised and should never have been offered.").

In an apparent effort to circumvent the Seventh Circuit's concerns, plaintiffs have staked a position that, "[s]ince all five Aon [Trust] Funds were the subject of a single unified decision to overhaul the Plan and were included in the Plan on that same date, [the question] whether Aon used a prudent and loyal process to implement that decision is necessarily common for all participants. . . .  Likewise, whether Aon used a prudent and loyal process to monitor the Aon Trust Funds after October 2016 is another common question."  Pls.' Mem. at 10; *see also id.* at 12 ("Because Aon's actions were directed to and affected the Plan as a whole, Plaintiffs' claims arise from the same course of conduct as all class members' claims—Aon's single unified decision to replace the Plan's prior investments with the Aon Funds in October 2016 and its conduct in monitoring the Funds on an ongoing basis after October 2016.").  Thus, according to plaintiffs, the inclusion of all five Aon Trust Funds as Plan investment options stemmed from the same alleged breach—a "single unified decision" to add the funds and a common effort to monitor them.

But having staked out this sweeping, categorical position, plaintiffs' "single unified decision" theory exposes more problems with class certification than it papers over.  As a matter of law, where there is a single alleged breach or a closely related series of them, a fiduciary is "chargeable only with the net loss resulting."  *Trs. of Upstate N.Y.*, 843 F.3d at 570; *see also* Restatement (Third) of Trusts § 101 (2012) ("[I]n circumstances in which it is appropriate to treat the misconduct as a single breach, it would be unduly harsh to hold a trustee liable for the loss without taking into account a related profit."); *Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012) ("The fiduciary duties outlined in ERISA draw upon the common law of trusts . . . [t]his common law supports the netting of gains and losses stemming from a single breach of fiduciary

11

duty.").   Thus, under plaintiffs' "single unified decision" theory of breach, whether or to what extent an individual participant incurred a share of the Plan's purported "loss" will depend on how that participant's investments in ***all*** of the challenged Aon Trust Funds performed, in the aggregate, including both those that generated "losses" and those that generated "gains."

For hundreds of members of the proposed "Investment Loss Class"—including for ██ of the named plaintiffs—this would mean that they would have no claim to a share of the Plan's purported damages at all under plaintiffs' theory of breach, even if they could potentially have claimed a loss under a different theory more narrowly tailored to specific Aon Trust Funds. ██



*Id.; see also* Damages Spreadsheet at 35, Row 2534; Chalmers Decl. ¶ 34, Ex. 1.  Thus, along with fellow named plaintiff ████████████, [13] ████████ unquestionably lacks Article III standing to pursue plaintiffs' chosen theory of breach, and so cannot represent the proposed class here. [14]

---

[13] *See also* O'Neal Dep. at 26:4–10, 35:11–17 ████████████████████████████
████████████████████████████; Damages Spreadsheet at 31, Row 2251.

[14] *See Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1620 (2020) (holding plan participants lacked standing to sue for plan losses because they suffered no injury and "in order to claim the interests of others, the litigants themselves still must have suffered an injury in fact"); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007) ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing."); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016), *as revised* (May 24, 2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class

██████████████████ are not alone in this regard: O'Neal's calculations reflect a total of 504 putative Investment Loss Class members who experienced a net gain on their investments in the Aon Trust Funds using plaintiffs' chosen benchmarks. *See* Chalmers Decl. ¶ 34. As such, none of those participants can assert a loss under plaintiffs' stated position that the inclusion of all the Aon Trust Funds was the result of a common breach. To the contrary, as O'Neal acknowledged

█████████████████████████ █ ███████████████████

█████████████████████████████. *Spano,* 633 F.3d at 588 ("A claim of imprudent management, for example, is not common if the alleged conduct harmed some participants and helped others, which appears to be the case.").

Not only does plaintiffs' proposed Investment Loss Class irrationally (and improperly) include individuals who in the aggregate benefitted from the very conduct that plaintiffs challenge, if certified it would also deny those individuals the ability to pursue more narrowly tailored claims through separate actions. For example, the 504 individuals who, according to O'Neal's calculations, incurred a gain on their investments across the challenged Aon Trust Funds overall but a loss on their investment in a particular Aon Trust Fund would lose their ability to assert theories of imprudence uniquely applicable to that particular fund. After all, a claim challenging the selection and monitoring of one Aon Trust Fund for the Plan would necessarily arise from the same nucleus of facts or circumstances as a claim broadly challenging the selection and retention of all of them. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007) ([c]laim preclusion applies . . . to all legal theories and claims arising out of the same operative

---

must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.").

[15] O'Neal Dep. at 26:4–10, 34:19–35:17; *id.* at 45:20–24 (████████████████████████████████

██████). 

13

nucleus of fact"); *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999) ("a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment.").

To be sure, any such narrower theories of breach would have their own infirmities. But that does not mean that the putative class members would not desire to bring them and so have an interest in retaining their right to do so. Indeed, participants in another AHIC-serviced plan recently proceeded to trial, albeit unsuccessfully, on claims challenging the inclusion of one of three Aon Trust Funds offered as options in that plan's investment lineup. *See Reetz v. Lowe's Cos.,* No. 18-CV-75, 2021 WL 4771535 (W.D.N.C. Oct. 12, 2021). In proposing their sweeping Investment Loss Class, plaintiffs are thus asking the Court to deprive numerous participants of at least the theoretical opportunity to pursue claims of breach on which they would have a chance of demonstrating loss by consigning them to an action in which they would not.

Nor are the 500-plus individuals described above the only proposed class members who could be adversely affected by plaintiffs' insistence on mounting a global challenge to the prudence of all Aon Trust Funds in the Plan and pursuing a single class on that basis. Many more putative class members would have their claimed losses (and so their potential damages) diminished by plaintiffs' "single breach" theory relative to what they could assert under more targeted claims. Indeed, applying O'Neal's loss methodology, defense expert Professor John Chalmers calculated that nearly half (1,091 out of 2,281 members) of the putative Investment Loss Class would have greater claimed losses under narrower theories of breach than under plaintiffs' "single unified decision" theory. *See* Chalmers Decl. ¶¶ 43–45; *id* at ¶ 19 (1,795 Proposed Class Members experienced a Relative Gain from at least one Aon Trust Fund relative to at least one of the Legacy Funds).

14

Plaintiffs cannot be said to adequately represent participants whose claims to a recovery would be diminished or destroyed by plaintiffs' litigation positions. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013) ("[C]ourts must take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative.").[16] For this reason alone, plaintiffs' Investment Loss Class should not be certified.

### B. The Direct Conflict Between Plaintiffs' Broad Attack on the Aon Trust Funds and the Interests of Numerous Class Members Exemplifies Broader Conflicts Within the Proposed Investment Loss Class.

The conflict between plaintiffs' "single unified decision" theory and the interests of Investment Loss Class members, however, is emblematic of numerous other conflicts within that proposed class. While hundreds of proposed class members share an interest in more narrowly crafted claims than the sweeping theory of breach that plaintiffs manufacture here, their interests sharply diverge when it comes to how those narrower claims should be directed.



For example, as discussed above, ▌▌▌▌▌▌ would maximize ▌ asserted losses through claims that challenge the selection of the ▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌, while treating the selection of the ▌▌▌▌▌▌ as unobjectionable. *See supra* at 6, 12. Such a course, however, would be deleterious to putative class member Participant 1648 who had a ***net gain*** under ▌▌▌ preferred theory and whose only claim of loss under O'Neal's model was through the ▌▌▌▌▌▌. *See* Chalmers Decl. ¶¶ 46–47, Chalmers Ex. 3; Damages Spreadsheet at 23, Row 1651.

For other proposed class members, even challenging a single Aon Trust Fund in its entirety would be problematic. For instance, ▌▌▌▌▌▌ loss under O'Neal's methodology

---

[16] *See also Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (affirming denial of certification of a class of all landowners in the vicinity of an airport because, while plaintiff claimed that the airport decreased the value of their land, other landowners benefitted from the proximity of the airport).

stemmed almost exclusively from a comparison between the ████████████████



████████████████████████████████████████. That position, however, would be fatal to

any assertion of loss by putative class member Participant 2570. ████████████████████,

Participant 2570's investment in the ██████ outperformed what he would have received under

the ███████████████████████ but not what he would have hypothetically received

from the ████████████. Damages Spreadsheet at 35, Row 2573. The only theory that

would offer Participant 2570 the ability to allege a purported investment loss is thus diametrically

opposed to the one that would offer that prospect to ██████. Chalmers Decl. ¶ 51.

As these examples show, there is no one theory of breach that unifies the proposed

Investment Loss Class. Rather, each participant has an interest in pursuing a theory of breach that,

if accepted on a classwide basis, would minimize or negate the claims of other proposed class

members. *Riffey*, 873 F.3d at 563–63 ("A class is not fairly and adequately represented if class

members have antagonistic or conflicting claims."); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th

Cir. 1992) (same); *Sec'y of Lab. v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) ("[T]he law is

clear that a single class cannot be fairly and adequately represented by the entirely different and

separate named plaintiffs if the members of that class have antagonistic or conflicting interests"); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977) (recognizing adequate representation requires that "the plaintiff must not have interests antagonistic to those of the class").

That unavoidable reality distinguishes this case from the Seventh Circuit decision in *Abbott*. Emphasizing that "the appropriateness of class treatment in a Section 502(a)(2) case (as in other class actions) depends on the claims for which certification is sought," the Seventh Circuit explained in *Abbott* that, "unlike many imprudent management claims," the claim that the plaintiffs were seeking to certify concerned a single "very low-risk fund" that was "by nature not subject to the wide swings in value that would enable some investors to reap a windfall from a fund's mismanagement." 725 F.3d at 813–14. The appellate court further added that because the challenged fund underperformed relative to the plaintiffs' benchmark "for all but a very brief portion of the class period reinforces the intuition that few, if any, [investing participants] profited from [defendant's] conduct." *Id.* at 814. None of those safeguards apply here. Not only have plaintiffs sought to lump investors in five distinct funds with fundamentally different strategies into their "Investment Loss Class," but those challenged funds have fluctuated in performance relative to plaintiffs' chosen Legacy Fund benchmarks such that, according to plaintiffs' own expert, ███████████████████████████████████████████████████████████ ███████████████████████████████████████. *See* O'Neal Dep. at 26:4–10, 35:11–37:22, 44:21–45:2, 47:10–16, 52:11–53:15, 60:22–61:7 (███████████████████████████████████ ███████████████████████████).

Finally, plaintiffs cannot resolve the conflicts that their "single unified decision" breach theory lays bare by suddenly retreating from that litigation position. As demonstrated above, prioritizing a challenge to a given Aon Trust Fund, or a comparison between an Aon Trust Fund

and a given Legacy Fund, as part of plaintiffs' attack would increase the asserted losses of some putative class members while reducing or eliminating the asserted losses of others. There is, in short, no one litigation position that would unify the interests of the proposed "Investment Loss Class" as that class is currently defined. Further, even if all of the putative class members shared a common interest in a more targeted claim, plaintiffs could not viably advocate that narrower claim at this stage of the litigation. Not only have plaintiffs already staked out the position that the inclusion of all five Aon Trust Funds stemmed from the same "unified decision"—thus requiring netting of the Plan's gains and losses across them—but fact discovery in the case has closed, and plaintiffs have already served their affirmative expert reports. *See* ECF 135. Consistent with plaintiffs' "single unified decision" assertion, those reports do nothing to support a challenge to any of the Aon Trust Funds that does not apply to the other four. Plaintiffs, in other words, have already compromised their ability to pursue a fund-specific approach.

For these reasons, the proposed "Investment Loss Class" is infected with insoluble conflicts that make that class unsuitable for class certification.[17]

## II. A CENTRAL CONFLICT DIVIDES PLAINTIFFS' PROPOSED EQUITABLE RELIEF CLASS.

The litigation positions taken by plaintiffs in support of their Motion for Class Certification similarly reveal a key conflict within their proposed "Equitable Relief Class." In arguing for an Equitable Relief Class, plaintiffs seek an order "requiring Defendants to implement an enhanced

---

[17] Plaintiffs also seek certification of a "Payment of Plan Assets Class." Pls' Mem. at 6. It does not appear that this class is intended to encompass claims against AHIC, as plaintiffs assert that their claims *against Astellas* are typical of members of the Payment of Plan Assets Class, Pls.' Mem. at 11, 13, and, as plaintiffs concede, the Court dismissed plaintiffs' prohibited transaction claim based on the payment of Plan assets to AHIC. Pls.' Mem. at 6 (citing April 13, 2021 Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, ECF 99, at 11–12.) In any event, to the extent this proposed class is intended to encompass claims for the recovery of purported investment losses, it suffers from the same flaws as the Investment Loss Class and the Court should deny certification of it for the same reasons. *See supra* 10–18.

investment-review process or to obtain an independent review by an unconflicted third party." Pls.' Mem. at 17. Elsewhere in their Memorandum, however, plaintiffs state that they have proposed an end date of June 30, 2020 for their proposed Investment Loss and Payment of Plan Assets Classes "because that is when Aon finally achieved the ability to improve the Aon Funds' performance through a larger asset base and implemented an enhanced, less-conflicted process for monitoring the Funds." *Id*. at 8. This latter assertion is critical to plaintiffs' ability to justify their already highly skewed loss calculation: Unless defendants' supposed breaches and the effects of those breaches ceased by June 30, 2020, there would be no reason to use that date as an endpoint for calculating losses. After all, all five of the Aon Trust Funds still remain in the Plan's lineup today. As Professor Chalmers has shown, extending the loss measurement beyond June 30, 2020 would dramatically reduce any Plan loss that plaintiffs could claim because the Aon Trust Funds have generally outperformed the Legacy Options since that date. *See* Chalmers Decl. ¶ 57.

Plaintiffs' assertion that any supposed breach ceased by June 30, 2020 greatly undermines plaintiffs' ability to obtain equitable relief, particularly in the form of an order that requires "Defendants to implement an enhanced investment-review process or to obtain an independent review by an unconflicted third party." Pls.' Mem. at 17. Indeed, it would presumably foreclose any claim that plaintiffs or the putative class members even have standing to pursue such relief. "To establish standing under Article III of the Constitution, a plaintiff must demonstrate" both "that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent" and "that the injury would likely be redressed by the requested judicial relief." *Thole*, 140 S. Ct. at 1618. Equitable relief concerning defendants' future fiduciary practices would do nothing to redress injuries from past allegedly violative practices that plaintiffs contend are no longer followed and whose effects they say ended more than a year ago. *See supra* n. 6. (This is

19

particularly so for those putative class members for whom O'Neal did not calculate a loss during the pre-June 30, 2020 period.)  And it is hard to imagine what imminent threat of injury plaintiffs could claim if, by their own assertion, AHIC has already taken sufficient measures of its own accord not only to avoid further breaches but also to end the effects of any previous breaches.

Plaintiffs' conflicting assertions thus create an immutable conflict among the proposed members of the Equitable Relief Class.  That class will presumably include some participants whom O'Neal has calculated as incurring losses as of June 30, 2020.[18]  Those class members would have an interest in pressing plaintiffs' cherry-picked cut-off date for loss calculation, however flimsy, because abandoning that position would gut their ability to allege potential damages.  But the class would presumably also include individuals who have no loss under O'Neal's model— including, among others, anyone who first invested in the Aon Trust Funds after June 30, 2020. Those individuals would have a contrary interest in retreating from that position to the fullest extent possible in order to preserve the only form of potential relief they would be able to seek in the litigation.  Like Plaintiffs' defective proposed Investment Loss Class, the Equitable Relief Class cannot be certified in the face of this insoluble conflict of plaintiffs' creation.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' Motion for Class Certification and plaintiffs' requests for the certification of an Investment Loss Class or Equitable Relief Class.

---

[18] Because plaintiffs have defined their proposed Equitable Relief Class as consisting of "[a]ll participants in the . . . Plan with account balances as of the date of judgment," Pls.' Mem. at 6, it is not clear precisely who would ultimately be part of that class.  Indeed, it is not even clear that any of the named plaintiffs themselves will be part of that proposed Equitable Relief Class.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See Spano*, 633 F.3d at 586 ("[W]e think that there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent.")

Dated:  December 13, 2021

Respectfully Submitted,

*/s/ Brian D. Boyle*
O'MELVENY & MYERS LLP
Brian D. Boyle
Shannon M. Barrett
1625 Eye Street, NW
Washington, DC 20006-4001
Telephone:  (213) 430–6000
Facsimile:  (213) 430–6407
bboyle@omm.com
sbarrett@omm.com

Stuart M. Sarnoff (*pro hac vice*)
William Pollak (*pro hac vice*)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326–2000
ssarnoff@omm.com
wpollak@omm.com

John R. Landis
Jeff Soble
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Tel:  (312) 832–4539

*Attorneys for Aon Hewitt Investment Consulting Inc. (NKA Aon Investments USA, Inc.)*

21

## CERTIFICATE OF SERVICE

I, Brian D. Boyle, hereby certify that on December 13, 2021, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** using the CM/ECF system, which will send notification of such filing to all registered participants.

*/s/ Brian D. Boyle*

Brian D. Boyle

*Attorneys for Aon Hewitt Investment Consulting Inc. (NKA Aon Investments USA, Inc.)*

22