IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WACHALA, PATRICIA WALSH, MARY BETH PREUSS, SADE ADENEYE, MIKE BICKLE, and JACQUELINE GOUGH, individually and as representatives of classes of participants and beneficiaries on behalf of the Astellas US Retirement and Savings Plan, <br><br> Plaintiffs, <br><br> v. <br><br> ASTELLAS US LLC, THE BOARD OF DIRECTORS OF ASTELLAS US LLC, THE ASTELLAS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE, AON HEWITT INVESTMENT CONSULTING, INC. (n/k/a AON INVESTMENTS USA, INC.), and JOHN DOES 1-14, <br><br> Defendants. | No. 20 C 3882 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons explained below, plaintiffs' motion for class certification is granted, and Aon Hewitt Investment Consulting Inc.'s motion for leave to file certain materials under seal is granted in part and denied in part.

### BACKGROUND

This is a putative class action under ERISA § 502(a)(2) brought by several participants in the retirement plan (the "Plan" or the "Astellas Plan") of Astellas US LLC ("Astellas") against Astellas; its Retirement Plan Administrative Committee ("the "Committee"); its Board of Directors (the "Board"); and the Plan's investment manager, Aon Hewitt Investment Consulting, Inc., now known as Aon Investments USA, Inc. ("Aon").[1] Plaintiffs allege in their remaining claims that Aon violated its fiduciary duties by investing in and retaining five Aon collective investment trusts ("CITs"); that the Astellas Defendants violated their fiduciary duties by failing

---

[1] Where appropriate, the Court will refer to Astellas, the Committee, and the Board collectively as the "Astellas Defendants."

to properly monitor the fiduciaries; and that the defendants engaged in prohibited transactions.[2] Plaintiffs assert that the defendants' conduct caused Plan participants to suffer millions of dollars of losses in their retirement savings. The primary allegations of the complaint are summarized in the Court's Memorandum Opinion and Order of April 13, 2021, (ECF No. 99), and will not be repeated here. Plaintiffs now move for class certification. Aon moves for leave to file certain materials under seal.

## DISCUSSION

### A. Aon's Motion for Leave to File Documents Under Seal

Along with its response to plaintiffs' motion for class certification, Aon filed an unopposed motion for leave to file or maintain[3] several items under seal. The first items are portions of defendants' memorandum in opposition to plaintiffs' motion and portions of the Declaration of John Chalmers, Ph.D., Aon's expert (the "Chalmers Declaration"). Aon has redacted the memorandum and the Chalmers Declaration to omit references to how plaintiffs' counsel instructed their expert, Edward S. O'Neal, Ph.D., to calculate losses; arguments about the experts' calculations; and, for the most part, references to certain named plaintiffs' and certain anonymized Plan participants' particular gains and losses on Plan investments. Citing Federal Rule of Civil Procedure 5.2, Aon submits that there is good cause for these proposed redactions because they "contain confidential personal information of plan participants." (ECF No. 149, Aon's Mot. Seal at 6.)

In the Seventh Circuit, documents that are placed in the court record "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002). Under Rule 5.2, certain personal identifying information, such as social-security numbers ("SSNs"), taxpayer-identification numbers, financial-account numbers, birth dates, and minors' names, receives privacy protection. Fed. R. Civ. P. 5.2. Courts have also found good cause to redact other personal identifying information such as addresses and telephone numbers. *See, e.g.*, *Smith v. Portwood*, No. 19 C 5329, 2021 WL 4318076, at *4 (N.D. Ill. Sept. 23, 2021). Neither defendants' memorandum nor the Chalmers Declaration, however, contains such personal identifying information. References to the methods by which experts performed calculations or the data upon which the calculations are based are not entitled to be kept secret. The references in these materials to putative class members' gains or losses do not merit protection because they are anonymized and thus contain

---

[2] Plaintiffs also assert a claim in Count II of the complaint that the Astellas Defendants breached their fiduciary duties by causing the Plan to pay unreasonably high investment management fees. Although Count II survived the Astellas Defendants' motion to dismiss, plaintiffs now state in a footnote in their memorandum in support of class certification that, based on information they received in discovery, they "will not further pursue Count II." (ECF No. 142, Pls.' Mem. Supp. Mot. Class Certification at 5 n.3.) Plaintiffs are directed to promptly file a motion to dismiss that count.

[3] Some of the items were previously provisionally filed under seal.

no personal identifying information. And there is no good cause to redact the named plaintiffs' names, because they are not proceeding anonymously; their identities are, properly, public information. It is also public information that the named plaintiffs allege that they suffered losses in their retirement savings as a result of defendants' conduct; the Court therefore sees no reason why references to particular losses or gains experienced by the named plaintiffs in certain investments (or their investment histories, insofar as they relate to the allegations in this action) are entitled to secrecy. Aon's motion is denied as to the proposed redactions to defendants' memorandum and the Chalmers Declaration.

Next, Aon contends that there is good cause to file under seal the entirety of Exhibits A, B, and C to the Declaration of William D. Pollak (one of Aon's attorneys). Exhibits A and B are PDF versions of the first tab of certain Excel spreadsheets. Exhibit A is a spreadsheet titled "Astellas Damages," which was created by O'Neal and produced by plaintiffs in discovery. (ECF No. 147-2, Pollak Decl. ¶ 3.) It lists the Plan participants, the dates of their first and last investments, and what plaintiffs calculate to be their losses in certain investments. Pollak states that Aon has "hidden the column containing Plan participants' social security numbers in order to protect their personal information." (*Id.*) In other words, even the version of Exhibit A that has been provisionally filed under seal does not contain SSNs. The only personal identifying information it contains are the Plan participants' (the putative class members') first and last names. There is no cause to seal the entirety of Exhibit A; with respect to the putative class members, the name columns can simply be redacted or removed in a publicly filed version of the document. In contrast with the named plaintiffs, the putative class members did not individually bring this action, and they did not put their personal investment losses and histories at issue for purposes of the instant motion for class certification. But any information about the named plaintiffs' investments is not properly maintained as confidential and must appear in the publicly filed version of Exhibit A. Aon's motion to seal Exhibit A to the Pollak Declaration thus will be granted as to the removal of the putative class members' names but denied as to the removal of the named plaintiffs' names and the remainder of the information in the spreadsheet. As for Exhibit B, it is an anonymized version of Exhibit A wherein the Plan participants' names have been replaced with a unique Participant Number. Exhibit B contains no personal identifying information whatsoever, and Aon's motion to seal is denied as to this document.

Exhibit C is the transcript from O'Neal's deposition. Instead of redacting the transcript, Aon proposes to seal it in its entirety. Aon says that O'Neal "testified regarding his calculations of purported damages for a number of specific Plan participants and his testimony includes detailed information regarding the amounts of these participants' investments, their allocation across investments, and the returns that they received during the purported class period." (Aon's Mot. Seal at 5.) Aon asserts that the testimony therefore contains "confidential personal information" of Plan participants, but simply deeming something "confidential" is insufficient to warrant keeping it from the public eye. *See, e.g.*, *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000). The Court has reviewed the transcript; the only portions that warrant sealing are the names of the putative class members, about six or seven of which are mentioned therein. If their names are redacted, the particulars of their investment histories that were discussed during the deposition cannot be connected to them, so the remainder of the discussion need not be redacted. Aon's motion to seal is therefore granted as to the redaction of the putative class

3

members' names but denied as to the remainder of the transcript and as to the discussions pertaining to the named plaintiffs.

The next batch of exhibits Aon seeks to seal are five exhibits to the Declaration of Sean Soyars (one of plaintiffs' attorneys). Plaintiffs filed these exhibits with their memorandum in support of class certification. Aon seeks to file them almost entirely under seal. The first, Exhibit 17, is a copy of a slide presentation given to Aon's "Delegated Portfolio Oversight Committee ('DPOC') seeking approval of proposed changes to certain [Aon]-sponsored equity funds." (Aon's Mot. Seal at 6.) Aon argues that the document contains "detailed analysis" regarding Aon's "proprietary investment strategies," including the incorporation of "active factors," as well as "strategic information, capital market assumptions, and sensitive proprietary analyses," and that the approach and ideas discussed in the presentation ultimately were not adopted and "remain confidential, and unavailable" to Aon's clients, competitors, and third parties in the marketplace. (*Id.* at 6-7.) Exhibit 18 to the Soyars Declaration consists of the minutes of the November 18, 2020 meeting of the Board of Directors of Aon Trust Company LLC ("Aon Trust"), the trustee of the Aon CITs. Aon seeks to file nearly the entire document under seal, except for the opening and closing sections indicating basic facts about the meeting such as when it began, when it ended, and who was present, and a brief section (cited by plaintiffs) discussing the effect of an influx of assets into, and changes to, the CITs. According to Aon, the remaining portion of the minutes contains material that is irrelevant to this litigation that pertains to Aon Trust's other clients and potential clients, as well as information on general revenue, working capital, and accounts receivable. Exhibits 19 and 20 to the Soyars Declaration are, respectively, the July 20, 2020 and June 2, 2020 materials packets for the meetings of Aon's U.S. Investment Management Committee, which Aon describes as one of its "most senior committees tasked with developing Aon's business strategies and thought leadership on a variety of topics." (*Id.* at 9.) The materials contain the draft minutes from the previous meeting and slide presentations for discussion. Aon says that the materials "contain confidential internal analyses, proprietary information regarding the construction of investments, and [Aon's] sales strategies." (*Id.* at 10.) Exhibit 21 to the Soyars Declaration consists of the minutes of the June 27, 2016 DPOC meeting, which Aon says "document the DPOC's confidential discussions regarding a number of other Aon clients and their investment plan lineups," "reflect[] information regarding Aon's confidential investment strategies," and "reflect the preferences and investment strategies of Aon's clients." (*Id.* at 11.)

Plaintiffs use Exhibits 17, 18, 19, 20, and 21 in an extremely limited fashion in conjunction with their motion for class certification. The exhibits are cited only in the background section of plaintiffs' memorandum and only for narrow factual propositions that plaintiffs say support their chosen ending date for the class period because they reflect Aon's views and decision-making about makeup and oversight of the Aon Funds. It was unnecessary for plaintiffs to have filed these exhibits in their entirety, especially considering that the documents contain a great deal of irrelevant information and financial information that pertains to third parties. The Court has not relied on the information that Aon proposes to redact in these five exhibits, and, in the Court's view, plaintiffs should not have submitted the extraneous material in the first place. Aon's motion to seal is therefore granted as to Exhibits 17, 18, 19, 20, and 21 to the Soyars Declaration.

The provisional seal is hereby removed as to the items that plaintiffs were previously granted leave to provisionally file under seal and that defendants have not sought to permanently seal. Plaintiffs are directed to publicly file an unredacted memorandum in support of their motion for class certification, and defendants are directed to publicly file an unredacted memorandum in opposition to the motion. As to the remaining exhibits, the parties are directed to confer to determine exactly which exhibits are no longer properly sealed or as to which the proposed redactions must be modified and whether plaintiffs or defendants will be responsible for filing these exhibits on the public docket. Those filings should be completed by February 25, 2022.

**B.      Plaintiffs' Motion for Class Certification**

Plaintiffs allege in Count I that Aon violated its fiduciary duties of prudence and loyalty by selecting and retaining the Aon CITs as investment options for the Plan; in Counts I and IV that the Astellas Defendants violated its fiduciary duties by failing to properly monitor Aon; and in Count III that defendants engaged in prohibited transactions, namely, that Aon selected its own CITs as investment options for the Plan and the Astellas Defendants caused the Plan to pay Plan assets to Aon.

Plaintiffs seek to represent and certify as to Counts I, III, and IV three classes, defined as follows:

> **Investment Loss Class:** All participants in the Astellas US Retirement and Savings Plan whose Plan accounts invested in any of the Plan's five Aon Collective Investment Trusts at any time between October 3, 2016 and June 30, 2020 and whose investment in at least one of the Aon Collective Investment Trusts earned less as of June 30, 2020 than the account would have earned had it been invested in the corresponding Legacy Investment Option(s).[4]
>
> **Payment of Plan Assets Class:** All participants in the Astellas US Retirement and Savings Plan whose Plan accounts invested in any of the Plan's five Aon Collective Investment Trusts at any time between October 3, 2016 and June 30, 2020.[5]
>
> **Equitable Relief Class:** All participants in the Astellas US Retirement and Savings Plan with account balances as of the date of judgment.

---

[4]      Excluded are Board and Committee members. Plaintiffs define the term "Legacy Investment Option(s)" to comprise eight options: MFS Large Cap Value R5 (MEIKX); T. Rowe Price Institutional Large Cap Core Growth (TPLGX); AMG TimesSquare Mid Cap Growth Institutional (TMDIX); Touchstone Mid Cap Value Fund Institutional (TCVIX): DFA Small Cap Fund I (DFSTX); American Funds Europacific Growth R6 (RERGX); PGIM Total Return Fund R6 (PTRQX); and PIMCO Real Return Institutional (PRRIX). (ECF No. 140, Pls.' Mot. Class Certification at 1-2.) The Court will refer to those options as the "Legacy Options."

[5]      Excluded are Board and Committee members.

5

(ECF No. 142, Pls.' Mem. Supp. Mot. Class Certification at 6.) Plaintiffs ask the Court to appoint named plaintiffs Michael Wachala, Patricia Walsh, Mary Beth Preuss, Mike Bickle, and Sade Adeneye as representatives of the Investment Loss Class and the Payment of Plan Assets Class and to appoint named plaintiffs Adeneye and Jacqueline Gough as representatives of the Equitable Relief Class.[6] Plaintiffs also ask the Court to appoint as class counsel their attorneys at Schlichter Bogard & Denton, LLP. Defendants do not oppose certification of the Payment of Plan Assets Class, which involves the claim in Count III against only the Astellas Defendants. (ECF No. 154, Pls.' Am. Reply at 1 n.1.)

To be certified, a proposed class must first satisfy all four requirements of Federal Rule of Civil Procedure 23(a). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Rule 23(a) requirements are numerosity, typicality, commonality, and adequacy of representation. *Id.* A proposed class must also satisfy one of the Rule 23(b) requirements. *Id.* Plaintiffs move under Rule 23(b)(1) and in the alternative under Rule 23(b)(3). There is also an implicit requirement under Rule 23 that a class must be defined clearly, with objective criteria, and in such a way that class membership does not depend on the defendant's liability. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Plaintiffs bear the burden of showing by a preponderance of the evidence that their proposed class satisfies Rule 23. *Messner*, 669 F.3d at 811. "Rule 23 is more than 'a mere pleading standard,' and the court must satisfy itself with a 'rigorous analysis' that the prerequisites of certification are met, even if that analysis has 'some overlap with the merits of the plaintiff's underlying claim.'" *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1005 (7th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). This analysis involves a "peek at the merits" that is "limited to those aspects of the merits that affect the decisions essential under Rule 23." *Id.* (citation and internal punctuation omitted). "The decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law or fact to the ultimate outcome." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018).

---

[6] Plaintiffs say that Wachala, Walsh, Preuss, Bickle, and Adeneye are the proposed representatives of the Investment Loss and Payment of Plan Assets Classes because they "collectively" invested in all five of the Aon CITs during the class period and sustained losses relative to the Legacy Options, and Adeneye and Gough are the proposed representatives of the Equitable Relief Class because they have active Plan accounts and thus a "strong interest in ensuring Defendants' future compliance with fiduciary obligations." (Pls.' Mem. Supp. Mot. Class Certification at 8-9.) In a footnote at the end of their opposition brief, defendants contend that "it is not even clear that any of the named plaintiffs themselves will be part of th[e] proposed Equitable Relief Class" because only Adeneye and Gough still have account balances and Gough has "never invested in any of the Aon Trust Funds or demonstrated an intent to do so." (ECF No. 148, Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 20 n.18.) But defendants do not dispute that both Adeneye and Gough *currently* have active Plan accounts, and the argument regarding Gough is off the mark because plaintiffs' definition of the Equitable Relief Class is not confined to participants who invested in the Aon CITs. Plaintiffs are pursuing equitable relief for all Plan participants, and it is conceivable that one or more forms of appropriate equitable relief could apply Plan-wide.

As an initial matter, plaintiffs' proposed classes satisfy Rule 23's implicit requirement of ascertainability, and defendants do not contend otherwise. The classes are not defined vaguely or in terms of success on the merits, nor are they based on subjective criteria.

Under Rule 23(a)'s numerosity criterion, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As long as it is reasonable to believe that the class is large enough to justify a class action suit, the Court need not determine its size precisely. *Orr v. Shicker*, 953 F.3d 490, 497-98 (7th Cir. 2020). A forty-member class is often regarded as sufficient. *Id.* at 498. Numerosity is satisfied here. According to plaintiffs, 2,512 participants invested in one or more of the Aon CITs from October 3, 2016 through June 30, 2020 (the "Class Period"), all of whom are members of the Payment of Plan Assets Class; 2,281 participants are members of the Investment Loss Class because they "suffered a loss from investing in at least one Aon Trust relative to what their accounts would have earned by investing in the corresponding Legacy Investment Option(s)"; and, as of the date of judgment, there will be more than 4,000 participants who are members of the Equitable Relief Class. (Pls.' Mem. Supp. Mot. Class Certification at 9.) While defendants dispute plaintiffs' loss calculations and consequently that the Investment Loss Class is as large as plaintiffs say, see below, they do not contest that numerosity exists.

Next, there must be "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), but "commonality as to every issue is not required," *Bell v. PNC Bank, National Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015). Plaintiffs contend that the commonality requirement is satisfied for each class and claim because assertions of a breach of fiduciary duty with respect to the selection of investment options and the selection and monitoring of Aon as a fiduciary operate across the Plan rather than at an individual level. They further contend that other common questions are the determination of whether the Plan suffered a loss and the proper measure of loss; whether equitable relief is needed to remedy any fiduciary breach; and whether defendants caused prohibited transactions in selecting the Aon Funds and causing the payment of Plan assets to Aon. Defendants do not respond to plaintiffs' commonality argument and thus waive the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). In any event, the requirement is easily satisfied. With respect to a defined-contribution plan like Astellas's, "fund participants operate against a common background," and allegations that a fiduciary has breached its duties in the selection of investment options describe a problem that operates across the plan rather than at the individual level. *See Spano v. Boeing Co.*, 633 F.3d 574, 585-86 (7th Cir. 2011). Similarly, allegations of fiduciary breach in monitoring and causing prohibited transactions under ERISA are capable of classwide resolution. Plaintiffs have demonstrated commonality.

The crux of the class-certification dispute lies with the next two Rule 23(a) elements, typicality and adequacy. Defendants contend that there are "intractable conflicts" among the members of the Investment Loss and Equitable Relief Classes that "disable plaintiffs from meeting the requirements of typicality and adequate representation." (ECF No. 148, Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 1.) These elements will be addressed together. *See Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 158 (N.D. Ill. 2020) (typicality and adequacy of class representatives are closely related inquiries). A plaintiff's claim is typical "if

it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021). The typicality requirement is meant to ensure that the class representative's claims have the same "essential characteristics" as those of the class at large, in that the plaintiff's pursuit of her own interest will necessarily also benefit the class. *Id.* Adequacy tests whether the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Factors in this analysis are whether the named plaintiffs have (1) claims that do not conflict with those of other class members; (2) sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who are able to conduct the litigation vigorously. *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2020 WL 635972, at *4 (N.D. Ill. Feb. 11, 2020).

Plaintiffs say that typicality is satisfied because their claims arise from "Aon's single unified decision to replace the Plan's prior investments with the Aon Funds in October 2016 and its conduct in monitoring the Funds on an ongoing basis after October 2016," as well as the Astellas Defendants' course of conduct in allegedly causing prohibited payments of Plan assets to Aon. (Pls.' Mem. Supp. Mot. Class Certification at 12-13.) But defendants argue that plaintiffs' framing of their claims as arising from a single decision and subsequent monitoring precludes certification for two reasons: (1) the Investment Loss Class includes 504 individuals (about 22 percent of the proposed class) who suffered no net loss if their claimed losses in one or more Aon CITs are offset by gains in other Aon CITs; and (2) some putative class members might prefer to raise a different theory of breach that would "maximize their asserted losses," (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 15). The Court will discuss defendants' arguments in turn.

In support of their assertion that the Investment Loss Class contains 2,281 participants who "suffered a loss from investing in at least one Aon Trust relative to what their accounts would have earned by investing in the corresponding Legacy Investment Option(s)," (Pls.' Mem. Supp. Mot. Class Certification at 9), plaintiffs rely on the declaration of their expert, O'Neal. O'Neal is a principal of the Securities Litigation and Consulting Group, Inc. and a former professor of finance. He states that the method he used to compute each participant's losses was comparing "the actual investment results the participant experienced while invested in the Aon Trusts to the investment results the participant would have experienced if he or she invested in a [Legacy Option]." (ECF No. 141-10, Decl. of Edward S. O'Neal ¶¶ 11-12.) Defendants contend that O'Neal "inflate[d] losses" because his calculations do not "take into account any instances in which a participant's investment in an Aon Trust Fund provided greater returns than its corresponding Legacy Option or Options." (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 6.) In other words, O'Neal tallied losses when comparing the investment in an Aon CIT with its corresponding Legacy Option, but he ignored any gains a participant may have had in another Aon CIT. Defendants submit the declaration of their own expert, Chalmers, a professor of finance. Chalmers states that O'Neal's calculations "completely ignore" relative gains from an investment in an Aon CIT and that "504 Proposed Class Members were not harmed" by the alleged breaches "because they had an Overall Relative Gain when considering their investment in all of the Aon Trust Funds." (ECF No. 148-1, Decl. of John Chalmers, Ph.D. ¶ 19, at 8-9.)

8

This battle of the experts is not about esoteric principles of finance or economics, nor does it shed much light on the propriety of class certification. The calculations themselves are not complex; they differ simply because each expert was instructed by counsel to calculate loss in a certain way, and the parties' approaches differ. The loss-calculation question is a legal one. Defendants maintain that, as a matter of law, when there is a single alleged breach of fiduciary duty or a closely related series of them, a fiduciary is chargeable only with the resulting net loss. In support, defendants cite the Restatement (Third) of Trusts § 101 and two out-of-circuit ERISA decisions that relied upon the predecessor to this section of the Restatement. (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 11-12 (citing *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 570 (2d Cir. 2016) and *Taylor v. KeyCorp*, 680 F.3d 609, 615 (6th Cir. 2012)).) The Restatement provides in pertinent part: "The amount of a trustee's liability for breach of trust may not be reduced by a profit resulting from other misconduct unless the acts of misconduct causing the loss and the profit constitute a single breach." Restatement (Third) of Trusts § 101 (2012). Defendants quote the following statement in the comments to this provision: "[I]n circumstances in which it is appropriate to treat the misconduct as a single breach, it would be unduly harsh to hold a trustee liable for the loss without taking into account a related profit." *Id.* cmt. a. The introductory phrase, however, begs the question: when is it appropriate to treat misconduct as a single breach? Comment c to § 101 includes a list of "factors to be weighed to determine whether the misconduct should be considered to be a single breach for purposes of this Section," including whether the improper acts are the result of a single decision and whether the trustee intended to commit a breach of trust or knew that the misconduct was a breach of trust. *Id.* cmt. c. Plaintiffs raise the latter consideration in their reply brief. They argue that *Ivy* and *Taylor* are inapposite because they involved alleged breaches of the duty of prudence premised on negligence, not intentional self-dealing, and that netting principles derived from the common law of trusts should not apply to ERISA claims based on an alleged violation of the duty of loyalty.

The parties have only scratched the surface of the loss-calculation issue (a "peek" at the merits, *see Dancel*, 949 F.3d at 1005), but the Court need not resolve it at this juncture. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013) (reversing order denying class certification on ERISA § 502(a)(2) claim challenging retirement savings plan options and explaining that the acceptance of a class definition that includes a particular method of measuring loss "in no way" binds a district court to use that method at the merits stage should plaintiffs prevail). The issue is something of a red herring when it comes to class certification. Defendants assert that it leads to irreconcilable conflict among class members, thus dooming typicality and adequacy, because the 504 members of the Investment Loss Class who had only net economic gains "are not properly entitled to any damages, as they suffered none," and "if they are herded into plaintiffs' proposed class, they will lose their ability to pursue individualized theories of breach limited to particular Aon Trust Funds as to which they could at least conceivably allege personal losses." (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 2.) But plaintiffs correctly identify two flaws in defendants' reasoning. First, despite the fact that plaintiffs premise their claim against Aon on a single decision to overhaul the Plan and substitute the Aon CITs for the Legacy Options, it is possible that Aon could be held liable for a breach of fiduciary duty with respect to only one or a subset of the five Aon CITs, and the only way plaintiffs can account for that possibility is to define the class to include all participants who suffered a loss in at least one of the funds during the Class Period. Second, assuming for the

sake of argument that netting would be the correct method to calculate any recovery, the rule would apply to the trustee's liability to the Plan as a whole. *See* Restatement (Third) of Trusts § 101 ("The rule of this Section applies only where the *trust estate* has experienced a profit as well as a loss from improper administration.") (emphasis added and omitted); *Ivy*, 843 F.3d at 570 (discussing whether plaintiff's alleged losses "exceed the profit that *the Plan* derived in excess of what it would have made from a prudent alternative investment") (emphasis added). As plaintiffs point out, defendants' focus on individual class members' potential recoveries under various theories is misplaced because it ignores their shared interest in establishing defendants' liability.[7]

Defendants cite *Spano*, 633 F.3d at 588, for the proposition that the inclusion of putative class members who "in the aggregate benefitted from the very conduct that plaintiffs challenge" prevents certification of the Investment Loss Class, (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 13), but in the Court's view, *Spano* does not set that high a hurdle. As the Seventh Circuit later explained in *Abbott*, 725 F.3d at 812-13, the class definitions in *Spano* were "extraordinarily broad"—so broad that it appeared that some class members would be *harmed* by the relief sought—and vague as to what investment options plaintiffs challenged. The same cannot be said of the Investment Loss Class definition; like the definition that passed muster in *Abbott*, it is "considerably narrower" than the definitions in *Spano* and limited to Plan participants who suffered a loss in at least one of the Aon CITs. *See* 725 F.3d at 814. And, as in *Abbott*, there seems to be no risk that any participant who had gains from the alleged breaches would have his Plan assets reduced as a result of this lawsuit. *See id.*; *Neil v. Zell*, 275 F.R.D. 256, 266 (N.D. Ill. 2011) ("[T]he question is not whether some might have benefitted from parts of the occurrence now being challenged, but whether, going forward, some members of the Plaintiff class would be harmed by the relief being sought. . . . There are no members of the proposed class who would, for any reason, prefer that Defendants not pay damages.").

Defendants further contend that defining the Investment Loss Class to include participants in all five Aon CITs creates a conflict among class members because some of them

---

[7] Defendants' related argument that named plaintiffs Wachala and Walsh "unquestionably" lack Article III standing because they had "an overall gain" on their investments in the Aon CITs relative to their investments in the Legacy Options, (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 12), is similarly misplaced, for the reasons explained in *Abbott*. In *Abbott*, the Seventh Circuit rejected the defendant's contention that one of the named plaintiffs, Lloyd DeMartini, lacked Article III standing because he did not appear to have suffered damages if damages were measured exclusively by the method plaintiffs proposed and incorporated into their class definition. 725 F.3d at 808-09. The court explained that plaintiffs' proposal was merely a "provisional estimate" of damages, "useful only as a mechanism to ensure that the class meets the requirements of Rule 23," and that "by the time all [was] said and done," it was possible that DeMartini would be entitled to damages under whatever measure was ultimately used. *Id.* at 808. The Court also noted that the fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed, and that "[t]his is just one of many instances in which we must resist the urge to make a preliminary question depend on the final resolution of the merits." *Id.*

might prefer to assert "theories of imprudence uniquely applicable" to one or more particular funds and thus possibly obtain a greater recovery for themselves. (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 13-14.) According to defendants, plaintiffs' "sweeping" class definition "deprive[s] numerous participants of at least the theoretical opportunity to pursue claims of breach on which they would have a chance of demonstrating loss." (*Id.* at 14.) Again, the participants in the class as defined have "a chance" of demonstrating loss, because it is not clear that defendants' position on calculation will carry the day.[8] And the Seventh Circuit has rejected similar arguments about "theoretical" opportunities. In *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 372 (7th Cir. 2012), the defendant retirement plan identified two conflicts of interest it said created an issue of adequacy of representation: one, that some plan participants would prefer benefits calculated with a fixed index rate while others might prefer a variable rate based on the date of retirement; and two, some participants would benefit by proving that certain plan amendments had never been formally adopted, and others might be harmed. The Court of Appeals dismissed defendant's concerns as "too hypothetical to bar class certification," noting that the contention that some class members would be hurt by class treatment "r[ang] hollow" where the defendant knew the names of all the class members and "could have found one—if there is one—who if informed of the class action would express concern that it might harm him," but "either didn't look for such a class member, which would be inexcusable, or it looked but didn't find one, which would probably mean that there isn't any such class member." *Id.* Aon took the same approach, so the Court is unpersuaded. Plaintiffs quote the Eighth Circuit's sensible observation that "even if there are slightly divergent theories that maximize damages for certain members of the class, this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 768 (8th Cir. 2020) (citation and internal punctuation omitted) (also citing 1 William B. Rubenstein, *Newberg on Class Actions* § 3:62 (5th ed. 2019) ("Courts generally reject the argument that an intra-class conflict exists when divergent theories of liability would benefit different groups within the class. Courts have thus rejected challenges to the class representatives' adequacy that were based . . . on different class members desiring different methods of calculating damages[.]")), *cert. denied*, 141 S. Ct. 2551 (2021).

The law on loss calculation for plaintiffs' ERISA claims appears scant; if defendants are correct about the proper method of calculating plaintiffs' losses, it may be that the definition of the Investment Loss Class may have to be refashioned down the road, or subclasses created. *See Abbott*, 725 F.3d at 813-14 (concluding that *Spano* did not impede certification of plaintiffs' class and that if the court's observations about the unlikelihood of substantial intra-class conflicts "turn out to be wrong, the district court can make further adjustments to the class definition later"); *Meriter*, 702 F.3d at 372 (explaining that differences in entitlements are distinct from conflicts of interest); *see also Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (stating that the fact that a class may include some participants who were not injured by a

---

[8] Plaintiffs make an excellent point in this regard: if plaintiffs had proposed five separate "single-fund" classes with distinct damages, Aon likely would have presented the same argument for offsetting losses with gains by pointing to evidence that Aon added all five of its CITs to the Plan on the same date; thus, "the proposed class members would end up in the same position regardless of whether they are all members of a single five-fund class or split between five single-fund classes." (Pls.' Am. Reply at 12.)

defendant's conduct, as opposed to those who could not have been injured, does not preclude class certification). Nonetheless, the Court concludes that plaintiffs have established typicality and adequacy. The named plaintiffs were subject to the same course of conduct that gives rise to the claims of other members of the Investment Loss Class, and their claims are based on the same legal theory, that Aon breached its fiduciary duties in replacing the Plan's Legacy Options with Aon CITs. In addition, there is a "congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586. There is also typicality and adequacy with respect to the Payment of Plan Assets Class; all class members were allegedly harmed by the Astellas Defendants' conduct in causing prohibited payment of Plan assets to Aon. Furthermore, there is no dispute that class counsel is well qualified to conduct this litigation. *See, e.g.*, *Abbott v. Lockheed Martin Corp.*, No. 06-CV-701-MJR-DGW, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015) (describing plaintiffs' counsel as "a pioneer and the leader in the field of retirement plan litigation").

For the same reasons discussed above, plaintiffs' proposed Equitable Relief Class meets the requirements of Rule 23(a)(1). Plaintiffs suggest that appropriate equitable relief might involve "requiring Defendants to implement an enhanced investment-review process or to obtain an independent review by an unconflicted third party." (Pls.' Mem. Supp. Mot. Class Certification at 17.) Defendants assert that another "immutable" conflict exists among the members of the Equitable Relief Class, though, due to the June 30, 2020 end date plaintiffs chose for the Investment Loss and Payment of Plan Assets Classes. (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 20.) Plaintiffs say that this date "is when Aon finally achieved the ability to improve the Aon Funds' performance through a larger asset base and implemented an enhanced, less-conflicted process for monitoring the Funds," (Pls.' Mem. Supp. Mot. Class Certification at 8)), but in defendants' view, this position "greatly undermines" the ability of the Equitable Relief Class to obtain relief. (Defs.' Mem. Opp'n Pls.' Mot. Class Certification at 19.) Defendants assert, without citation to authority, that plaintiffs' choice of the June 2020 end date "would presumably foreclose any claim that plaintiffs or the putative class members even have standing to pursue [equitable] relief" in that such relief "would do nothing to redress injuries from past allegedly violative practices that plaintiffs contend are no longer followed and whose effects they say ended more than a year ago." (*Id.*) The Court disagrees. Defendants again conflate standing and the merits; as the Seventh Circuit advised in *Abbott*, using hindsight acquired during the evolution of class-action claims "to find that there was never jurisdiction over the case to begin with" is an "unworkable view of Article III standing." 725 F.3d at 808-09. That plaintiffs may have difficulty proving that they are entitled to equitable relief, or that there may be tension between their theories of relief, does not implicate standing, nor does it prevent certification of the Equitable Relief Class.

Having found that the prerequisites of Rule 23(a) are met, the Court turns to Rule 23(b)(1), which permits class certification when individual suits would create a risk of (1) "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for defendants or (2) "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)-(B). Plaintiffs maintain that the proposed classes satisfy subsection (A) because the issues are whether Aon

acted with loyalty and used proper methods to select and monitor the Aon CITs, whether the Aon CITs were prudent investments, what is the proper way to measure Plan losses, whether payments of Plan assets to Aon were reasonable or excessive, and whether equitable relief is appropriate, and separate individual adjudications to resolve any of these issues would create incompatible standards for defendants. Plaintiffs say that subsection (B) is also satisfied due to the trust-like nature of a defined-contribution plan like the Astellas Plan, with fiduciary duties owed to the plan and not particular individuals. Defendants do not dispute that both subsections of Rule 23(b)(1) are satisfied, and the Court agrees with plaintiffs. "[N]umerous courts have held" that claims for breach of fiduciary under ERISA § 502(a)(2) are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class," in light of their derivative nature. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (citing cases); *Neil*, 275 F.R.D. at 267 ("ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole . . . , a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs."). In light of this conclusion, the Court need not reach plaintiffs' alternative argument that certification is proper under Rule 23(b)(3). Accordingly, certification of plaintiffs' proposed classes is appropriate under Rule 23(b)(1)(A) and (B).

## CONCLUSION

Plaintiffs' motion for class certification [140] is granted. Aon Hewitt Investment Consulting Inc.'s motion for leave to file certain materials under seal [149] is granted in part and denied in part, and the parties are directed to publicly file documents as directed by the Court no later than February 25, 2022. The parties should be prepared to discuss the next steps in the litigation at the telephonic status hearing on March 3, 2022.

**DATE:** February 10, 2022

**Hon. Ronald A. Guzmán**
**United States District Judge**