## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| MICHAEL WACHALA, MARY BETH PREUSS, PATRICIA WALSH, SADE ADENEYE, MIKE BICKLE, AND JACQUELINE GOUGH, individually and as representatives of classes of participants and beneficiaries on behalf of the Astellas US Retirement and Savings Plan, |  |
| Plaintiffs, | Civil Action No. 1:20-cv-03882 |
| v. | Honorable Ronald A. Guzman |
| ASTELLAS US LLC, THE BOARD OF DIRECTORS OF ASTELLAS US LLC, THE ASTELLAS RETIREMENT PLAN ADMINISTRATIVE COMMITTEE, AON HEWITT INVESTMENT CONSULTING, INC. (NKA AON INVESTMENTS USA, INC.), AND JOHN DOES 1–14, | CLASS ACTION<br><br>**ORAL ARGUMENT REQUESTED** |
| Defendants. |  |

## MEMORANDUM OF LAW IN SUPPORT OF AON HEWITT INVESTMENT CONSULTING, INC.'S MOTION FOR SUMMARY JUDGMENT

Brian D. Boyle
Shannon M. Barrett
Stuart M. Sarnoff
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Tel:  (202) 383-5300

John R. Landis
Jeffrey A. Sable
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Tel:  (312) 832-4539

*Attorneys for Aon Hewitt Investment Consulting, Inc.*

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........................................................................................... 1

    A.    The Plan and AHIC's Selection of the Aon Trust Funds........................... 1

    B.    Performance of the Challenged Aon Trust Funds...................................... 3

SUMMARY JUDGMENT STANDARD........................................................................ 3

ARGUMENT ................................................................................................................ 4

    I.    AHIC IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I
BECAUSE THE ALLEGED BREACH LED TO PLAN GAINS, NOT
LOSSES. ......................................................................................................... 4

    A.    The Aon Trust Funds Have Generated Substantial Gains for Plan
Participants Relative Even to Plaintiffs' Own Comparators..................... 4

    B.    Plaintiffs' Efforts to Split Their Claims of Breach in Order to
Show A Loss Fail as a Matter of Law....................................................... 5

        i.    There Is No Legitimate Basis for Prematurely Cutting Off
the Calculation of Losses to the Plan as of June 30, 2020. ............ 5

        ii.    Nor Can Plaintiffs Manufacture a Plan Loss By Singling
Out Specific Aon Trust Funds or Participant Accounts................ 7

    C.    Plaintiffs Cannot Establish a Right to Any Other Remedy..................... 12

    II.    AHIC IS ENTITLED TO JUDGMENT ON COUNT III FOR THE
ADDITIONAL REASON THAT THE PLAN'S INVESTMENT IN THE
AON TRUST FUNDS IS EXEMPT FROM ERISA'S PROHIBITED
TRANSACTION PROVISIONS........................................................................ 14

CONCLUSION............................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1989)..............................................................................................3

*Brock v. Robbins*,
830 F.2d 640 (7th Cir. 1987)..............................................................................4

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018).................................................................................4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1989)..............................................................................................4

*DiFelice v. U.S. Airways, Inc.*,
235 F.R.D. 70 (E.D. Va. 2006)......................................................................6, 10

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985)..............................................................................6

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009)............................................................................15

*Int'l Ass'n of Heat & Frost Insulators Local 17 Pension Fund v. Am. Nat'l Bank & Tr. Co. of Chi.*,
13 F. Supp. 2d 753 (N.D. Ill. 1998)...................................................................5

*King v. Nat'l Hum. Res. Comm., Inc.*,
218 F.3d 719 (7th Cir. 2000).............................................................................5

*Larson v. United Healthcare Ins. Co.*,
723 F.3d 905 (7th Cir. 2013).............................................................................8

*Mira v. Nuclear Measurements Corp.*,
107 F.3d 466 (7th Cir. 1997).............................................................................3

*Munro v. Univ. of S. Cal.*,
896 F.3d 1088 (9th Cir. 2018)............................................................................4

*Peabody v. Davis*,
636 F.3d 368 (7th Cir. 2011)............................................................................11

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021).........................................................................10, 11

*Ramos v. Banner Health*,
461 F. Supp. 3d 1067 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021)......................13, 14

**TABLE OF AUTHORITIES**

*(continued)*

**Pages**

*Smith v. Greatbanc Tr. Co.*,
  2020 WL 4926560 (N.D. Ill. Aug. 21, 2020), *aff'd sub nom. Smith v. Bd. Of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021) ................................................................. 12

*Tracey v. MIT*,
  404 F. Supp. 3d 356 (D. Mass. 2019) ................................................................. 15

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
  843 F.3d 561 (2d Cir. 2016) ................................................................. 8, 9

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014) ................................................................. 5

*Wsol v. Fiduciary Mgmt. Assocs., Inc.*,
  266 F.3d 654 (7th Cir. 2001) ................................................................. 13

**Statutes**

29 U.S.C. § 1109(a) ................................................................. 4, 11

**Other Authorities**

Restatement (Third) of Trusts § 101 ................................................................. 8

Restatement (Third) of Trusts § 101 cmt. a ................................................................. 8

Restatement (Third) of Trusts § 101 cmt. c ................................................................. 9

**Rules**

Fed. R. Civ. P. 56(c) ................................................................. 3

Fed. R. Civ. P. 56(e) ................................................................. 4

Plaintiffs seek to recover supposed losses to the Astellas U.S. Retirement & Savings Plan (the "Plan") allegedly stemming from the decision by Aon Hewitt Investment Consulting, Inc. ("AHIC") to use funds within the Aon Hewitt Collective Investment Trust (the "Aon Trust Funds") as options in the Plan's investment lineup. AHIC disputes that it acted imprudently or disloyally or otherwise violated any legal duty in selecting those funds. There is no need to consider the issue of breach, however, because it is indisputable that the Plan has not incurred any losses as the result of its investment in the Aon Trust Funds. To the contrary, the Plan has reaped substantial gains relative to the returns it would have received had AHIC instead selected plaintiffs' chosen alternatives, which serve as their stated barometer for damages. The other equitable remedies plaintiffs purport to seek, in turn, are not available given that AHIC has not profited from the alleged breach and plaintiffs do not appear to be challenging AHIC's current or recent conduct. Because plaintiffs cannot establish a right to any cognizable remedy, no trial involving AHIC is necessary and summary judgment as to both of plaintiffs' claims against AHIC should be granted in AHIC's favor. Moreover, AHIC is entitled to summary judgment on Count III for the additional reason that the Plan's investment in the Aon Trust Funds is exempt from the prohibited transaction provisions on which that count is based.

## FACTUAL BACKGROUND

### A.    The Plan and AHIC's Selection of the Aon Trust Funds

Astellas US LLC ("Astellas") sponsors a 401(k) plan that allows employees to invest pre-tax contributions to save for retirement. SUMF ¶ 1. AHIC is a registered investment advisor that provides investment advisory services. SUMF ¶ 2. Following a competitive request for proposal process involving multiple candidates, in August 2016, Astellas and AHIC entered into an investment management agreement (the "IMA"), pursuant to which Astellas retained AHIC as the delegated fiduciary or outsourced chief investment officer ("OCIO") to the Plan. SUMF ¶¶

1

3–5. Under the IMA, the Astellas Retirement Plan Administrative Committee (the "Committee") retained responsibility for establishing the structure of the Plan's investment menu, while AHIC, as the Plan's OCIO, was responsible for selecting and monitoring the specific funds that would be used within that structure. SUMF ¶ 6.

After it hired AHIC, the Committee approved a streamlined Plan investment structure, consisting of mandates for target date funds, asset class funds (including both active and passive investment options), and a self-directed brokerage window. SUMF ¶ 26. In accordance with the new investment structure, AHIC selected five of the Aon Trust Funds, five passive index funds managed by State Street, the T. Rowe Price Health Sciences fund, the Invesco Stable Value Fund, and the JP Morgan SmartRetirement target date funds. SUMF ¶¶ 28–29. On October 3, 2016, the following funds (the "Legacy Funds") were replaced by the Aon Trust Funds:

| Legacy Funds | Challenged Aon Trust Funds |
|---|---|
| MFS Large Cap Value | Aon Hewitt Large Cap Equity Fund |
| T. Rowe Price Inst'l Large Cap Core Growth Fund | |
| Touchstone Mid Cap Value Fund | Aon Hewitt Small & Mid Cap Equity Fund |
| AMG TimesSquare Mid Cap Growth Fund | |
| DFA Small Cap Fund | |
| American Funds Europacific Growth | Aon Hewitt Non-U.S. Equity Fund |
| PIMCO Total Return Fund | Aon Hewitt Core Plus Bond Fund |
| PIMCO Real Return | Aon Hewitt Inflation Strategy Fund |

*Id*. Under the IMA, AHIC receives a fee for acting as the OCIO based on the total assets in the Plan. SUMF ¶ 7. AHIC's fee does not vary based on the precise investment options it chooses to fulfill the Plan's investment mandates, whether those options consist of the Aon Trust Funds or other alternatives. SUMF ¶ 9. A different entity, Aon Trust Company ("ATC") earns a fee of 0.005% to 0.02% for acting as trustee to the Aon Trust Funds. SUMF ¶¶ 20–21. This trustee fee was established in 2012, with an independent, third-party trustee, Reliance Trust Company,

following a competitive Request for Information process.  SUMF ¶¶ 18–19.  When ATC replaced Reliance Trust as the trustee in 2015, it maintained the same trustee fee structure utilized by Reliance Trust.  SUMF ¶ 21.  This structure is in line with fees charged by other financial institutions providing trustee services to collective investment trusts.  SUMF ¶¶ 22–23.

## B.  Performance of the Challenged Aon Trust Funds

Plaintiffs' expert calculated purported losses by comparing the performance of each of the challenged Aon Trust Funds to the Legacy Funds (with one notable exception)[1] from October 3, 2016 (the date the funds were added to the Plan) through June 30, 2020.  SUMF ¶¶ 57–61.  Using the latest available data as of October 31, 2022, the Aon Trust Funds generated over $14 million in returns ***above*** what the Plan would have earned in the Comparator Funds.  SUMF ¶ 73.

## SUMMARY JUDGMENT STANDARD

The Court must grant summary judgment when the movant shows "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997) (quoting Fed. R. Civ. P. 56(c) (1997)) (granting summary judgment to defendant on plaintiff's ERISA breach-of-fiduciary duty claim).  A dispute is "genuine" only "if a reasonable [factfinder] could return a verdict for the nonmoving party," and a fact is material only if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1989).  A mere "scintilla of evidence" does not create a genuine factual dispute, *id.* at 252, nor may the non-movant rely upon "mere allegations or denials" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 n.3 (1989) (quoting Fed. R. Civ. P. 56(e)).

---

[1] Instead of comparing the returns of the Aon Hewitt Core Plus Bond Fund to the PIMCO Total Return Bond Fund—which had previously been an investment option in the Plan—O'Neal used the PGIM Total Return Fund R6 Fund because he had been instructed to do so by plaintiffs' counsel (the Legacy Funds with the PGIM Total Return Fund are referred to herein as the "Comparator Funds").  SUMF ¶ 60.

**ARGUMENT**

I. **AHIC IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE THE ALLEGED BREACH LED TO PLAN GAINS, NOT LOSSES.**

Count I of the complaint alleges that AHIC violated its fiduciary duties of prudence and loyalty under ERISA "by selecting and retaining the [Aon Trust Funds] in the Plan" and is liable under 29 U.S.C. § 1109(a) for resulting "Plan losses." ECF 173 ("Am. Compl.") ¶¶ 105–07. The Plan, however, has not suffered any losses as the result of the inclusion of the Aon Trust Funds in the Plan's lineup, but rather has obtained substantial gains even relative to plaintiffs' own chosen comparators.[2] And, while ERISA authorizes other possible remedies, none of those other remedies is available here. In the absence of any provable loss or other available remedy, plaintiffs' claims against AHIC fail, and summary judgment in AHIC's favor is warranted.

A. **The Aon Trust Funds Have Generated Substantial Gains for Plan Participants Relative Even to Plaintiffs' Own Comparators.**

The only measure of loss that plaintiffs have offered on their investment claims is based on a purported comparison of the actual returns experienced on the Plan assets invested in the Aon Trust Funds to the returns that the Plan would have obtained had those assets instead been invested in the Comparator Funds. *See* SUMF ¶¶ 58–60.[3] But comparing the Plan's investment

---

[2] *See* 29 U.S.C. § 1109(a) (fiduciary must "make good" only those "losses to the plan resulting from" a fiduciary "breach"); *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir. 1987) ("[N]o court has held trustees liable in money damages for imprudent conduct which resulted in no loss or damages to the ERISA plan[.]"); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 39 (1st Cir. 2018) (requiring plaintiffs to show a "loss to the Plan"); *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092–93 (9th Cir. 2018) ("[A] plaintiff bringing a suit for breach of fiduciary duty similarly seeks recovery only for injury done to the plan.")).

[3] This comparison is at the threshold inapt because AHIC could not have chosen to retain the full slate of Comparator Funds without running afoul of the decision by the Astellas Committee—which retained authority for determining the Plan's investment structure—to move to a more streamlined menu, as reflected in the Committee's adoption of a new IPS. SUMF ¶¶ 6, 26–27; *see Tussey v. ABB, Inc.*, 746 F.3d 327, 339 (8th Cir. 2014) (comparison to replaced fund was inappropriate in light of requirements enumerated in the plan's IPS). The returns on the Comparator Funds thus do not reflect the returns that the Plan could have expected to receive had AHIC chosen off-the-shelf alternatives to fulfill the Plan's IPS rather than the Aon Trust Funds. An appropriate measure that would respect the Astellas

returns to those of the Comparator Funds through October 31, 2022—the latest data available as of the filing of this motion—shows that the Plan experienced a ***gain*** of over $14 million.  SUMF ¶¶ 71, 73; *see King v. Nat'l Hum. Res. Comm., Inc.*, 218 F.3d 719, 722–24 (7th Cir. 2000) (affirming summary judgment because plaintiffs suffered no damages from plan's investment in money market funds where "the participants fared better in the money market funds than they would have in the individual investments they had previously chosen").

In short, whether the Plan's returns through the Aon Trust Funds are compared to the returns of their benchmarks, or—as plaintiffs prefer—to the returns of the Comparator Funds that populated a materially different investment structure, plaintiffs cannot show that the Plan experienced any economic loss through their collective Aon Trust Fund investments.

### B. Plaintiffs' Efforts to Split Their Claims of Breach in Order to Show A Loss Fail as a Matter of Law

To manufacture the appearance of a loss, plaintiffs have tried to obscure the full effects of the Plans' investments in the Aon Trust Funds.  None of those efforts withstands scrutiny.

### i. There Is No Legitimate Basis for Prematurely Cutting Off the Calculation of Losses to the Plan as of June 30, 2020.

First, despite the fact that, as a result of AHIC's continued exercise of delegated fiduciary authority over the Plan's investments, the Plan has remained invested in the challenged Aon Trust Funds through today, plaintiffs instructed their expert to cut off his calculation of alleged

---

Committee's independent judgment as to the narrower range of menu options they wanted for the Plan (as reflected in the revised IPS) would be a comparison of the returns on the Plan's investments in the Aon Trust Funds against the funds' respective benchmarks, with an adjustment to reflect that those benchmarks do not include the fees that would be charged with any actual investment product. *See Int'l Ass'n of Heat & Frost Insulators Local 17 Pension Fund v. Am. Nat'l Bank & Tr. Co. of Chi.*, 13 F. Supp. 2d 753, 755 (N.D. Ill. 1998) ("A benchmark is an appropriate way to judge prudent performance[.]").  Far from indicating a loss, however, that comparison confirms that the Plan obtained investment gains from the Aon Trust Funds of approximately $6.2 million through October 31, 2022 (not including an adjustment for the fees that would be charged with an actual investment product).  SUMF ¶ 74.

5

losses as of June 30, 2020. SUMF ¶¶ 32, 61, 64. In so doing, plaintiffs conveniently eliminated from the comparison the recent period of market turbulence in which more diversified strategies, like the Aon Trust Funds, have outperformed more concentrated investments, such as the Comparator Funds. SUMF ¶¶ 63, 71–74. Plaintiffs have attempted to justify this artificial shortening of the loss calculation period by vaguely suggesting Aon's alleged breach had at least partially abated by that point. *See* ECF No. 141 at 5, 8.[4] But plaintiffs plainly confuse the existence of an alleged continuing breach of duty with the ***consequences*** of a prior alleged breach—which, of course, may continue long after the breach takes place. *See, e.g., DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 82 (E.D. Va. 2006) (recognizing that plan could "continue[] to suffer damages" after the defendant was no longer acting as fiduciary "as a result of" a breach that occurred during its fiduciary tenure). Plaintiffs and their experts have offered no coherent basis for concluding that the effects of AHIC's supposed breach of duty in selecting the Aon Trust Funds for the Plan suddenly ended on June 30, 2020. Nor could they: The Aon Trust Funds remain in the Plan[5] and AHIC remains the fiduciary responsible for their continued inclusion. SUMF ¶ 32. And plaintiffs' experts have offered no theory under which a fiduciary who deemed the Aon Trust Funds inappropriate investment options before June 30, 2020 would have found them to be appropriate additions to the Plan's lineup after that date.

Indeed, any such theory would be at odds with the opinions of plaintiffs' own expert, Marek Pfeil. Pfeil opined that because AHIC had made changes to the underlying third-party portfolio managers within the Large Cap Equity and Small & Mid Cap Funds less than a year

---

[4] *See, e.g.,* ECF No. 141 at 5 (asserting that AHIC "partially neutralized the conflict of interest that had tainted the initial selection of the Aon Funds . . .").

[5] *See Donovan v. Bierwirth*, 754 F.2d 1049, 1056–57 (2d Cir. 1985) (holding that, in determining whether trustees' purchase of employer stock caused a loss to a plan, court should consider the performance of the stock through the date it was ultimately sold by the plan).

before they were selected for the Plan, those funds should have been viewed as having less than a one-year performance history at that point—a disability that he insists should have disqualified the funds from consideration for the Plan's menu. SUMF ¶¶ 79–80; Declaration of W. Pollak, Ex. 34, Pfeil Rpt. ¶ 73.[6] But the undisputed record reflects that, as of June 2020, *all* of the Aon Trust Funds either had recently undergone, or were in the process of undergoing, another round of significant changes in their slates of underlying third-party portfolio managers. SUMF ¶¶ 34–40. Thus, by the logic of plaintiffs' own expert, as of the date that plaintiffs insist the Aon Trust Funds became appropriate for the Plan, they once again had too brief a performance history with their underlying managers to be prudently considered. Plaintiffs cannot assert a disqualifying infirmity in the Aon Trust Funds and then arbitrarily cut off the continuing effects of AHIC's alleged breach in selecting those funds at a point when the conditions giving rise to that purported infirmity still existed.

> ## ii. Nor Can Plaintiffs Manufacture a Plan Loss By Singling Out Specific Aon Trust Funds or Participant Accounts.

Second, plaintiffs ask the Court to ignore the collective economic gains that the Plan achieved through the Aon Trust Funds by focusing their expert's loss calculations solely on those Aon Trust Funds that tracked slightly lower than plaintiffs' comparators. Even more absurdly, they seek a Plan recovery that is calculated exclusively from the experience of the fraction of Plan participants whose investments in any given Aon Trust Fund generated losses, while ignoring the larger body of participants who had gains under plaintiffs' expert's loss

---

[6] Pfeil opined that, to warrant consideration for inclusion in a plan's lineup, a fund must have a performance history of at least three to five years. SUMF ¶¶ 77–80; Pollak Decl. Ex. 34, Pfeil Rpt. ¶ 145 ("Applying industry standards, knowledgeable and diligent investment professionals would not have considered actively managed investment vehicles for a defined contribution plan that did not have at least three to five years of performance history at the time they considered that investment for inclusion in the plan.").

methodology. SUMF ¶¶ 65–69. These attempts to manipulate the economic loss element on their claims, too, are legally baseless.

Plaintiffs' bid to have the Court apply the economic loss element of their claims by looking solely at the subset of Aon Trust Funds that tracked slightly lower than plaintiffs' comparators runs directly counter to their theory of breach. Plaintiffs have insisted that their claims as to all five Aon Trust Funds resulted from a singular course of misconduct by AHIC. "Because Aon's actions were directed to and affected the Plan as a whole," plaintiffs urged in support of class certification, "Plaintiffs' claims arise from the same course of conduct as all class members' claims—Aon's *single unified decision* to replace the Plan's prior investments with the Aon Funds in October and its conduct in monitoring the Funds on an ongoing bases after October 2016." ECF 141 at 12 (emphasis added). Under trust law principles, which serve as the backbone of ERISA's remedial structure, *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 914 (7th Cir. 2013), the recoverable loss on such a theory of breach is the *net loss* across all investments that resulted from the single course of misconduct. Restatement (Third) of Trusts § 101. As the authors of the Restatement counsel, "it would be unduly harsh to hold a trustee liable for the loss without taking into account a related profit" when all portions of the trust portfolio were invested pursuant to a single fiduciary decision, and are challenged on the same factual and legal basis. *Id.* cmt. a.; *see Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.,* 843 F.3d 561, 570 (2d Cir. 2016) (dismissing ERISA claim where alleged losses from investment did not "exceed the profit that the Plan derived in excess of what it would have made from a prudent alternative investment").

While comments to the Restatement explain that there is "[n]o bright-line rule" for determining "whether misconduct resulting in a profit and misconduct resulting in a loss should

be treated as constituting a single breach," they point to factors that courts consider—including "[w]hether the improper acts are the result of a single strategy or policy, a single decision or judgment, or a single set of interrelated decisions," "[t]he amount of time between the instances of misconduct and whether the trustee was aware of the earlier misconduct and its resulting loss or profit," "[w]hether the trustee intended to commit a breach of trust or knew the misconduct was a breach," and "[w]hether the profit and loss can be offset without inequitable consequences, for example to beneficiaries having different beneficial interests in the trust."  Restatement (Third) of Trusts § 101 cmt. c.  The comments explain that "no single factor or combination of factors is necessarily determinative of whether offset is appropriate."  Nevertheless, the commentators urge that the first factor "is likely to be of particular significance."  *Id.*

That overriding factor clearly requires losses to be netted across the Plan's Aon Trust Fund investments in this case.  After all, plaintiffs themselves have described the challenged breaches as stemming from a "single unified decision."  ECF 141 at 10, 12.  This candid self-appraisal came at a time before the record established that the Plan had enjoyed overall economic gains from the Aon Trusts, and so is particularly credible.  The same is true for the Restatement's second factor—the amount of time between the instances of misconduct.  Restatement (Third) of Trusts § 101 cmt. c.  Again, plaintiffs have themselves emphasized that "all five Aon Funds were the subject of a single unified decision to overhaul the Plan and were included in the Plan on the same date" (ECF No. 141 at 10) and they (improperly) seek to cut off loss calculations for all the funds on the same date of June 30, 2020, *supra* at 5–7.  SUMF ¶ 64.

Nevertheless, at the class certification stage, plaintiffs ignored the factor "of particular significance" and argued that netting was inappropriate because they have alleged that AHIC engaged in self-dealing or other intentional breaches.  ECF No. 154 at 5.  In fact, their

allegations of self-dealing have always been tissue-thin. AHIC's compensation was exactly the same no matter whether the Aon Trust Funds were chosen for the Plan. SUMF ¶¶ 9–10. Although it is true that an affiliated entity receives small trustee fees from assets invested in the Aon Trust Funds, SUMF ¶ 21, AHIC provided an offering statement to Astellas before the Plan's delegation to AHIC that detailed this affiliated relationship and disclosed the trustee fees (and Astellas represented in the IMA that it was aware that an AHIC affiliate was trustee of the funds)—allowing an independent fiduciary to judge whether that compensation stream was reasonable. SUMF ¶¶ 11–13. Regardless, the cases suggest that where the other Restatement factors point toward a single breach or interrelated set of breaches, the fact that the fiduciary's actions were intentional—or even allegedly disloyal—will not allow a litigating plan to avoid the net loss principle. For example, in *Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021), the Fourth Circuit held—affirming a summary judgment ruling in relevant respects—that gains and losses stemming from defendants' handling of different medical claims over multiple years should be treated as a single breach despite evidence that defendants intentionally "circumvented] the Plan terms" by "devis[ing]" a "cost-shifting scheme to avoid having to pay" subcontractor expenses that the claims administrator had agreed to cover out of its own account, and made misrepresentations regarding its conduct by "burying" the improper administrative fee in medical claim payments. *Id*. at 234–35. The Court of Appeals credited the Restatement's first factor— "[w]hether the improper acts are the result of a single strategy or policy, a single decision or judgment, or a single set of interrelated decisions"—as sufficiently important to merit summary judgment against the plan. *Peters*, 2 F.4th at 224–25 ("[T]he evidence before [the court of appeals] only permits the conclusion that Appellees' actions constituted a single breach primarily

under the first factor of the Restatement."). By the measure of plaintiffs' own descriptions of their theory of breach, that factor unquestionably favors netting here.

Plaintiffs also insisted in class briefing that they could predicate a Plan-wide recovery solely on the experience of the subset of participants whose investments in the Aon Trust Funds tracked below plaintiffs' damages comparators, but this is even less plausible. Plaintiffs seek to hold AHIC liable under 29 U.S.C. § 1109(a), *see* Am. Compl. ¶ 107, which by its terms establishes liability for losses to the ***Plan*** as a whole. 29 U.S.C. § 1109(a); *see Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) ("The remedy in an action for breach of fiduciary duty [under § 502(a)(2)] is for the fiduciary to 'make good' the loss ***to the plan***." (emphasis added)). Plaintiffs have repeatedly acknowledged this well-established legal principle, including, ironically, in their class papers. *See, e.g.*, ECF 141 at 1 (stating that claims under ERISA § 409(a), 29 U.S.C. § 1109(a), "[b]y their nature," "do not involve individual relief, but instead are brought in a representative capacity on behalf of the plan"), 10 ("If Aon breached its duty, determining whether *the Plan* suffered a loss, and the proper measure of those losses, are yet more common questions." (emphasis added)). It follows that, in determining whether the Plan suffered a loss from AHIC's decision to include the Aon Trust Funds as investment options, the Court must evaluate the Plan's experience in those Aon Trust Funds across ***all*** participants— including the large number of participants who did better by virtue of their investment in the Aon Trust Funds than they would have if invested in the alternative investments plaintiffs propose.

That the Court has allowed plaintiffs to limit their class definition just to those participants who ostensibly incurred losses in at least one of the Aon Trust Funds does not alter that conclusion. As plaintiffs asserted at the class certification stage, "[t]he certification decision does not affect Aon's monetary liability to the Plan." ECF No. 154 at 15. Regardless of the

contours of the class plaintiffs are allowed to represent, plaintiffs' section 502(a)(2) claims remain claims for *Plan* losses. *See Smith v. Greatbanc Tr. Co.*, 2020 WL 4926560, at *4 (N.D. Ill. Aug. 21, 2020) ("The Supreme Court did not indicate in *LaRue* that § 502(a)(2) claims are 'inherently individualized,' nor did it suggest that an individual plan participant's claim can somehow be split from a claim seeking plan-wide relief."), *aff'd sub nom. Smith v. Bd. Of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021). Indeed, according to plaintiffs, they did not even need to obtain a certified class in order to seek Plan-wide relief. *See* ECF No. 154 at 15. The relevant question thus remains whether *the Plan as a whole* suffered a loss—not whether a subset of class members may have experienced losses in their individual accounts.[7]

## C. Plaintiffs Cannot Establish a Right to Any Other Remedy.

Plaintiffs cannot salvage Count I by claiming a right to some remedy other than Plan losses. Although ERISA § 409(a) provides for disgorgement of profits stemming from a fiduciary breach, plaintiffs do not seek disgorgement under Count I. Am. Compl. at 46–47 (Prayer for Relief). Even if they had, there are no such profits for AHIC to disgorge. As explained, AHIC received no additional compensation at all—much less profit—as a result of its decision to invest Plan assets in the Aon Trust Funds. SUMF ¶¶ 7–10. Rather, since being retained as delegated fiduciary, the only compensation AHIC has received in connection with the Plan or its investments is AHIC's delegated fiduciary fee. SUMF ¶ 7. And under the IMA,

---

[7] Even if plaintiffs could properly exclude non-class member participant accounts from their loss calculations, that would not fully explain their failure to net across one single participant's accounts. In calculating the Plan's losses in a given AHCIT, plaintiffs' expert also excluded *class members* who experienced gains from their investments in that particular AHCIT. SUMF ¶¶ 67–68.

AHIC is entitled to that same delegated fiduciary fee regardless of whether AHIC selects the

Aon Trust Funds or other funds for the Plan's investment lineup. SUMF ¶¶ 9–10.[8]

Nor can plaintiffs establish a right to any equitable relief that would be appropriate under

the circumstances. While plaintiffs' demand in their Prayer for Relief for the Court to order

defendants to "provide all accountings necessary to determine the amounts Defendants must

make good to the Plan under § 1109(a)," and request a surcharge, Am. Compl. pp. 46–47, these

requests go nowhere because AHIC's alleged breaches did not generate either a Plan loss or an

AHIC profit. Further, plaintiffs' request to "reform the Plan," *id*. at p. 47, has no application to

AHIC, because AHIC is not the Plan's sponsor and has no authority to set Plan terms.

Finally, plaintiffs request that the Court "remove the fiduciaries who have breached their

fiduciary duties and enjoin them from future ERISA violations." Am. Compl. p. 47. But such

forward-looking injunctive relief is "appropriate" only where the record contains evidence

suggesting that a fiduciary "will likely in the future violate ERISA in the same manner." *Ramos*

*v. Banner Health*, 461 F. Supp. 3d 1067, 1142–43 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir.

2021). Plaintiffs have offered no theory (let alone evidence) of such a likelihood. To the

contrary, in attempting to manufacture the appearance of a loss by cutting off loss calculations as

of June 30, 2020, plaintiffs necessarily press the position that any supposed violation ended more

than two years ago.[9] That position is untenable for the reasons discussed above. But, having

committed to it as their theory of the case, plaintiffs have no basis to claim a likely risk of future

---

[8] To be sure, a different entity—ATC—has received trustee fees from the Aon Trust Funds. SUMF ¶ 21. But AHIC cannot be required to disgorge assets that AHIC did not itself receive. *See, e.g., Wsol v. Fiduciary Mgmt. Assocs., Inc.*, 266 F.3d 654, 656 (7th Cir. 2001) (explaining that plaintiffs could not prevail on a claim for disgorgement "unless the breach of fiduciary duty . . . generated a profit for [defendant] through use of assets of the plan by [defendant]").

[9] Cessation of a breach is a necessary though not sufficient condition for ending loss calculations. As discussed above, breaches can, and often do, have consequences well after they have occurred.

violations. Moreover, plaintiffs' proposed injunction from "future [ERISA] violations" is nothing more than "an impermissibly vague obey-the-law injunction," *Ramos*, 461 F. Supp. 3d at 1143 (quotation omitted), and, therefore, is insufficient to keep the case alive.[10]

## II. AHIC IS ENTITLED TO JUDGMENT ON COUNT III FOR THE ADDITIONAL REASON THAT THE PLAN'S INVESTMENT IN THE AON TRUST FUNDS IS EXEMPT FROM ERISA'S PROHIBITED TRANSACTION PROVISIONS.

Count III seeks to hold AHIC liable under ERISA § 409(a) for allegedly causing the Plan to engage in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106, when it caused the Plan to invest in the Aon Trust Funds. This claim fails for the same reason as Count I—plaintiffs cannot show that the Plan suffered any loss as a result of the Plan's investment in the Aon Trust Funds, nor can plaintiffs establish a right to any other remedy.

AHIC is also entitled to summary judgment on Count III because the Plan's investment in the Aon Trust Funds is exempt from ERISA's prohibited transaction rules under ERISA § 408(b)(8), 29 U.S.C. § 1108(b)(8). Section 408(b)(8) exempts "[a]ny transaction between a plan and a collective trust fund maintained by a bank or trust company," "[1] if the transaction is a sale or purchase of an interest in the fund; [2] the bank or trust company receives not more than reasonable compensation; and [3] the transaction is expressly permitted by the plan instrument or by a fiduciary (who is not the bank or trust company or an affiliate)." ECF No. 99 at 12.

The undisputed facts establish that the Plan's investment in the Aon Trust Funds satisfied all of the conditions for the section 408(b)(8) exemption. The first prong of the test is satisfied because the Plan's investment in the Aon Trust Funds involved the purchase of units in the Aon Hewitt Collective Investment Trust, a collective trust fund maintained by ATC, an Illinois-

---

[10] Even if plaintiffs could establish a right to some form of equitable relief, that would logically only preserve claims on behalf of the Equitable Relief Class and not the separately certified Investment Loss Class. *See* ECF No. 169 at 5, 13.

chartered bank.  SUMF ¶¶ 15, 20.  The third prong of the test is satisfied because, as plaintiffs conceded in the complaint, the Plan's investment in the Aon Trust Funds was expressly approved by Astellas—a Plan "fiduciary" who is not the "trust company … or an affiliate thereof."  29 U.S.C. § 1108(b)(8)(C); SUMF ¶¶ 11–13; *see* Am. Compl. ¶¶ 18, 20, 39 (acknowledging that Astellas "expressly agreed to allow [AHIC] to select [investments] for the Plan exclusively from its proprietary Aon [] CITs").  And the second prong of the test is satisfied because the uncontroverted evidence shows that the compensation received by the ATC, the trust company that maintains the AHCIT, is reasonable.  SUMF ¶¶ 21–22.

In particular, the undisputed facts establish that ATC adopted the same trustee fee structure used by the prior AHCIT trustee, Reliance Trust Company, which is not affiliated with AHIC in any way and whose trustee fees were set through a competitive process.  SUMF ¶¶ 18–21; *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (fees were reasonable where they were "set against the backdrop of market competition").  ATC's trustee fees, moreover, have been comparable to or lower than those charged by the trustees of other collective trust funds.  SUMF ¶¶ 21–23; *see, e.g., Tracey v. MIT,* 404 F. Supp. 3d 356, 364 (D. Mass. 2019) (holding that fees were reasonable based on expert testimony that the fees "were comparable" "or less expensive than fees of similar investments during the class period").  Plaintiffs have offered no evidence or expert opinion indicating that ATC's compensation was unreasonable.[11] SUMF ¶ 23.

## CONCLUSION

The Court should enter summary judgment for AHIC on Counts I and III.

---

[11] In the absence of a separately delineated trustee fee, some courts have assessed ERISA § 408(b)(8) by reference to a collective fund's overall expense ratio.  Although the Court need not resort to that measure here, AHIC, through its expert Professor Chalmers, has shown that Aon Trust Funds' expense ratios compared favorably to the range of peer expense ratios, and thus were also reasonable, SUMF ¶¶ 24–25, and plaintiffs have offered no evidence or expert opinion that they were not.

Dated:  November 8, 2022               Respectfully Submitted,

*/s/ Brian D. Boyle*
O'MELVENY & MYERS LLP
Brian D. Boyle
Shannon M. Barrett
Deanna M. Rice (*pro hac vice*)
1625 Eye Street, N.W.
Washington, DC 20006
Telephone:  (202) 383-5300
bboyle@omm.com
sbarrett@omm.com
derice@omm.com

Stuart M. Sarnoff (*pro hac vice*)
William Pollak (*pro hac vice*)
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
ssarnoff@omm.com
wpollak@omm.com

John R. Landis
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
Telephone:  (312) 832-4539

*Attorneys for Aon Hewitt Investment Consulting Inc. (N/K/A Aon Investments USA, Inc.)*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Brian Boyle, hereby certify that on November 8, 2022, I electronically filed the foregoing *Memorandum of Law in Support of AHIC's Motion for Summary Judgment* using the CM/ECF system, which will send notification of such filing to all registered participants.

*/s/ Brian D. Boyle*
Brian D. Boyle

*Attorney for Aon Hewitt Investment Consulting, Inc.*
*(NKA Aon Investments USA, Inc.)*
